UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- X

DR. JUDY WOOD on behalf of the
UNITED STATES OF AMERICA,

                Plaintiff / Realtor,

        vs.

APPLIED RESEARCH ASSOCIATES, INC.;
SCIENCE APPLICATIONS INTERNATIONAL
CORP.; BOEING; NuSTATS; COMPUTER
AIDED ENGINEERING ASSOCIATES, INC.;
DATASOURCE, INC.; GEOSTAATS, INC.;
GILSANZ MURRAY STEFICEK LLP;
HUGHES ASSOCIATES, INC.; AJMAL
ABBASI; EDUARDO KAUSEL;
DAVID PARKS; DAVID SHARP; DANIELE
VENEZANO; JOSEF VAN DYCK, KASPAR
WILLIAM; ROLF JENSEN & ASSOCIATES,
INC.; ROSENWASSER/GROSSMAN CONSULTING
ENGINEERS, P.C.; SIMPSON GUMPERTZ &
HEGER, INC.; S.K. GHOSH ASSOCIATES,
INC.; SKIDMORE, OWINGS & MERRILL,
LLP; TENG & ASSOCIATES, INC.;
UNDERWRITERS LABORATORIES, INC.;
WISS, JANNEY, ELSTNER ASSOCIATES,
INC.; AMERICAN AIRLINES; SILVERSTEIN
PROPERTIES; and UNITED AIRLINES,

                Defendants.
------------------------------------------------------------------------------- X

Civil Action
No. 07 CV 3314 (GBD)

## MEMORANDUM OF LAW IN SUPPORT OF SKIDMORE, OWINGS & MERRILL LLP'S MOTION TO DISMISS THE COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

SUMMARY OF CLAIMS........................................................................................................ 1

SUMMARY OF ARGUMENT ............................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 2

ARGUMENT ............................................................................................................................ 6

POINT I

TH IS COURT LACKS SUBJECT MATTER JURISDICTION OVER RELATOR'S
FCA CLAIMS THAT ARE BASED ENTIRELY ON INFORMATION IN THE
PUBLIC DOMAIN .................................................................................................................. 6

    A. Relator's complaint relies entirely on information that was previously
       disclosed to the public......................................................................................... 6

    B. Relator is not an original source for any of the information alleged in
       her complaint ........................................................................................................ 7

    C. Relator's application of her own scientific knowledge to NIST's report
       does not make her an original source .................................................................. 9

POINT II

RE LATOR'S COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO MEET
THE HEIGHTENED PLEADING REQUIREMENTS OF FED. R. CIV. P. 9(b) .................. 10

    A. Claims under the False Claims Act are subject to a heightened
       pleading requirement disclosed to the public..................................................... 10

    B. Relator's complaint fails to meet the requirements of Rule 9(b) for
       allegations of fraud ........................................................................................... 11

POINT III

RELATOR AND HER COUNSEL SHOULD BE REQUIRED TO PAY ATTORNEYS'
FEES AND EXPENSES BECAUSE THE COMPLAINT IS FRIVOLOUS ........................... 13

CONCLUSION........................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Cosmas v. Hassett,*
  886 F.2d 8(2d Cir. 1989) ........................................................................................................... 11

*Gold v. Morrison-Knudsen Co.,*
  68 F.3d 1475 (2d Cir. 1995) ................................................................................................. 8, 11

*Hamdan v. Rumsfeld,*
  126 S. Ct. 2749, 165 L. Ed. 2d 723 (2006) ............................................................................... 2

*Indus. Risk Insurers v. Port Auth.,*
  493 F.3d 283, 2007 U.S. App. LEXIS 16601 (2d Cir. 2007) ...................................................... 2

*Luce v. Edelstein,*
  802 F.2d 49 (2d Cir. 1986) ...................................................................................................... 12

*Mills v. Polar Molecular Corporation,*
  12 F.3d 1170 (2d Cir. 1993) .............................................................................................. 11, 12

*Selzer v. Bank of Bermuda, Ltd.,*
  385 F. Supp. 415 (S.D.N.Y. 1974) ........................................................................................... 10

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC,*
  467 F.3d 107 (2d Cir. 2006) ...................................................................................................... 2

*United States v. Folding Admin. Comm.,*
  881 F.2d 494 (7th Cir. 1989) ................................................................................................... 10

*United States ex rel. Atkins v. McInteer,*
  470 F.3d 1350 (11th Cir. 2006) ............................................................................................... 13

*United States ex rel. Bain v. Ga. Gulf Corp.,*
  208 Fed. Appx. 280 (5th Cir. 2006) .................................................................................... 14-15

*United States ex rel. Dick Long Island Lighting Co.,*
  912 F.2d 13 (2d Cir. 1990) ........................................................................................................ 7

*United States ex rel. Huangyan Import & Export Corp. v. Nature's Farm Products, Inc.,*
  2004 U.S. Dist. LEXIS 600 (S.D.N.Y. 2004) ............................................................................. 9

*United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,*
  985 F.2d 1148 (2d Cir. 1993) ............................................................................................ 8, 9-10

*United States ex. rel. Mikes v. Straus,*
   274 F.3d 687 (2d Cir. 2001) ......................................................................................... 14

*United States ex rel. Sarafoglou v. Weill Medical College of Cornell University,*
   451 F. Supp. 2d 613 (S.D.N.Y. 2006) ........................................................... 11, 12-13

*United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,*
   944 F.2d 1149 (3d Cir. 1991) ....................................................................................... 10

**Statutes**

FED. R. CIV. P. 9(b)  ...................................................................................... 1, 10-13, 15

FED. R. CIV. P. 11 ................................................................................................... 1, 14

FED. R. CIV. P. 12(b)(1)................................................................................................. 1

FED. R. CIV. P. 12(b)(6)....................................................................................... 1, 6, 10

31 U.S.C. § 3729 et seq................................................................................................. 3

31 U.S.C. § 3730(d)(4) .......................................................................................... 1-2, 14

31 U.S.C. § 3730(e)(4)............................................................................................. 7, 10

31 U.S.C. § 3730(e)(4)(B) ....................................................................................... 1, 7-9

15 U.S.C. §§ 7301............................................................................................................ 2

15 U.S.C. §§ 7308............................................................................................................ 2

## MEMORANDUM OF LAW IN SUPPORT OF SKIDMORE, OWINGS & MERRILL LLP'S MOTION TO DISMISS THE COMPLAINT

Defendant Skidmore, Owings & Merrill LLP ("SOM") respectfully submits this memorandum of law in support of its motion, pursuant to FED. R. CIV. P. 12(b)(1) and (b)(6), to dismiss the complaint of Relator Judy Wood, together with attorneys' fees and expenses pursuant to 31 U.S.C. § 3730(d)(4), and for such other relief as deemed just.

## SUMMARY OF CLAIMS

Relator claims that the United States government used a secret "directed energy weapon" to destroy the World Trade Center on September 11, 2001. She also asserts that rogue elements of the United States military used highly classified psychological operations to deceive the American public into believing that terrorists destroyed the World Trade Center.

Relator's baseless whistleblower claims against SOM rest on her assertion that SOM hid or ignored the truth about September 11 after being retained as a consultant for a government report on the collapse of the Twin Towers.

As discussed more fully in footnote 5, infra, Relator's complaint is virtually identical to the complaint that Relator's counsel, Jerry Leaphart, filed on behalf of Relator Morgan Reynolds in case no. 07-CV-0612 GBD.

## SUMMARY OF ARGUMENT

This Court lacks subject matter jurisdiction over Relator's causes of action under the False Claims Act since Relator's complaint relies exclusively upon information in the public domain, and Relator cannot satisfy the original source requirement of 31 U.S.C. § 3730(e)(4)(B).

Relator's complaint against SOM must also be dismissed because it does not come remotely close to meeting the heightened pleading requirements for allegations of fraud as set forth in FED. R. CIV. P. 9(b). Finally, this Court should order Relator and her counsel to pay SOM attorneys' fees and expenses pursuant to 31 U.S.C. § 3730(d)(4), since the complaint lacks any legal merit and is clearly frivolous.

## STATEMENT OF FACTS

**September 11 Attacks**

On September 11, 2001, members of Al Qaeda flew hijacked airplanes into the north and south towers of the World Trade Center ("1 WTC" and "2 WTC"). *See Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2760, 165 L. Ed. 2d 723, 739 (2006); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 116 (2d Cir. 2006). This coordinated attack ultimately caused both buildings to collapse. The attack also caused the building called 7 World Trade Center ("7 WTC") to catch fire and seven hours later, to collapse. *See Indus. Risk Insurers v. Port Auth.*, 493 F.3d 283, 2007 U.S. App. LEXIS 16601, at *2-3 (2d Cir. 2007).

**NIST Investigation**

The United States Department of Commerce's National Institute of Standards and Technology ("NIST") subsequently conducted an extensive investigation into the collapses of 1 WTC, 2 WTC and 7 WTC.[1] (First Amended Qui Tam Complaint and Jury Demand, Exh. A to Sjoquist Decl., at ¶ 3, (hereinafter "the Complaint")).

During the course of that investigation, NIST made available to the public dozens

---

[1] In October of 2002, the President signed into law the National Construction Safety Team Act, 15 U.S.C. §§ 7301 et seq., which authorizes investigations into "events causing the failure of a building or buildings that has resulted in substantial loss of life or that posed significant potential for substantial loss of life." The Act also authorizes NIST

of documents that contain a prolific amount of information regarding NIST's investigation, findings, and recommendations.[2]  NIST also issued a draft report for public comment on the collapse of 1 WTC and 2 WTC[3] and subsequently issued its final report, which is known as NCSTAR 1. (Complaint, at ¶ 3).  A copy of the NCSTAR 1 report is attached to the Sjoquist Decl. as Exh. B.[4]  NIST has not issued a final report on the collapse of 7 WTC.

In addition to the dozens of NIST employees who participated in the investigation, NIST retained as consultants approximately 33 companies, universities and independent contractors, including SOM.  (Complaint, at Exh. E).  Several government agencies and other corporations also contributed to the investigation.  *Id.*

**Relator's Complaint**

On or about April 25, 2007, Relator filed a *qui tam* complaint under seal in the United States District Court for the Southern District of New York.  After the United States declined to intervene, Relator filed and served on SOM a First Amended Qui Tam Complaint and Jury Demand ("the Complaint") on or about January 2, 2008.[5]  The Complaint alleges three meritless claims against SOM for alleged violations of the False Claims Act, 31 U.S.C. §§ 3729 et seq.  With respect to each cause of action, Relator alleges that the United States, and not Relator, is the aggrieved party.  (Complaint, at ¶¶ 64, 67, 70).

Relator's Complaint is premised entirely on her unfounded assertion that "rogue

---

to further investigate such failures at its discretion. *See* 15 U.S.C. § 7308.

[2]  These documents include various interim and draft reports on virtually every aspect of the investigation, progress reports, reports to Congress, minutes from various meetings and speeches, transcripts of testimony at several hearings, copies of the contracts between NIST and the outside consultants that it retained for the investigation, and photographs and other media used during the investigation. They are all available at http://wtc.nist.gov/.

[3]  This report is available online at http://wtc.nist.gov/pubs/NISTNCSTAR1Draft.pdf.

[4]  This report is also available online at http://wtc.nist.gov/NISTNCSTAR1CollapseofTowers.pdf.

[5]  This Complaint is virtually identical to the complaint, dated May 31, 2007, that the same attorney filed on behalf of Morgan Reynolds against the same defendants. (07-CV-0612 GBD). **Only six of the seventy paragraphs in the Wood Complaint differ substantially from the Reynolds complaint**. The Wood Complaint did, however, omit

elements" of the United States armed forces utilized "exotic weaponry known as directed energy weapons . . . ." to destroy 1 WTC and 2 WTC.   (Complaint, at ¶¶ 5, 7, 10-11).  Relator further describes these as "High Energy Lasers and or other operational, but largely secret weapons." (Complaint, at ¶ 52).  Since NIST reached a contrary conclusion, Relator somehow argues that SOM must have withheld information from, or provided false information to, NIST regarding "the pattern of destruction of WTC 1, 2". (Complaint, at ¶ 37).

Relator's Complaint, however, **is completely devoid of any specific factual allegations against SOM.**  Relator refers to SOM only once in the entire Complaint:

> Defendant Skidmore, Owings & Merrill, LLP (SOM) was founded in 1936, and is one of the world's leading architecture, urban design, engineering and interior architecture firms.  Its New York Office is located at 14 Wall Street, 24th Floor, New York NY 10005.  That expertise could have been, but was not, used for the purposes of calling attention to the fact that the effects seen and left by the pattern of destruction of WTC 1, 2 was caused by [directed energy weapons].  Instead, defendant chose to use its expertise to commit fraud based on either withholding information or manipulating information and by then accepting payment improperly.

(Complaint, at ¶ 37).  The Complaint lacks any factual support for these conclusory allegations. This is not surprising, given that as an architecture firm, SOM is not in the business of studying "patterns of destruction."   Indeed, Relator repeated the last two sentences of this paragraph verbatim as against the majority of the defendants in the action.

Relator fails to allege any particular facts against SOM that support her conclusion, nor does she identify any information or even one statement that SOM provided to, or withheld from, NIST.  The Complaint also fails to specify where or when the allegedly fraudulent statements or information were conveyed or withheld, who from SOM purportedly

---

the meritless common law claims that were alleged in the Reynolds complaint.

made such statements or chose to withhold them, why such conduct was fraudulent, or how such information or the lack thereof contributed to NIST's conclusions. Simply put, Relator's allegations against SOM are conclusory, wholly unsupported, and factually baseless.

**Source of Relator's Allegations: Publicly Available Information**

Every allegation in Relator's Complaint is based on public information. Relator, by her own admission, does not possess any direct or inside information regarding the NIST investigations or the defendants' statements to NIST.

Relator's Complaint relies primarily on a letter, dated March 16, 2007, in which Relator requested that NIST "correct" the NCSTAR1 report. (Exhibit A to Complaint). That letter, and Relator's allegations of fraud, are based entirely on her argument, contained in that letter, that NIST's conclusions were incorrect and that WTC 1 and WTC 2 were destroyed by directed energy weapons.

Relator's letter fully establishes, however, that she is not the original source of any of the information upon which she relies to make that argument. Instead, every document that Relator cites was already in the public domain when she sent the letter to NIST. These include:

(i)    the NCSTAR1 report;

(ii)   various photographs from the World Trade Center site that Relator obtained from various sources such as Buildings.com and did not take herself (Exh. A to Complaint, at pp. 13-16, 18-41);

(iii)  satellite imagery provided by The National Oceanic and Atmospheric Administration (NOAA) (Exh. A to Complaint, at p. 17);

(iv)   video clips from September 11, 2001 that are available online (Exh. A to Complaint, at p. 14);

(v)    seismic records from the Columbia University Seismology
       Group (Exh. A to Complaint, at pp. 8-9); and

(vi)   statements of eyewitnesses (Exh. A to Complaint, at
       Supplement No. 2).

Relator also cites to a newsletter issued by the Directed Energy Professional Society (Exh. C to

Complaint), but concedes that her allegations regarding directed energy weapons are "[u]pon

information and belief." (Complaint, at ¶ 10).  Finally, Relator cites to, and relies on, certain

laws of physics, including the Laws of Conservation of Momentum and Conservation of Energy.

(Exh. A to Complaint, at pp. 2-3).  Since these laws appear to originate with Isaac Newton[6], it

does not appear that Relator can seriously claim that she is their original source.


## ARGUMENT

### POINT I

**THIS COURT LACKS SUBJECT MATTER JURISDICTION
OVER RELATOR'S FCA CLAIMS THAT ARE BASED
ENTIRELY ON INFORMATION IN THE PUBLIC DOMAIN**

Relator's own Complaint and appended documents prove that her claims are

based entirely on information that was publicly available when she filed the instant lawsuit.  She

simply is not an original source for any of that information.  As a result, this Court must dismiss

Relator's causes of action under the False Claims Act for lack of subject matter jurisdiction

pursuant to FED. R. CIV. P. 12(b)(1).


A.    **RELATOR'S COMPLAINT RELIES ENTIRELY ON INFORMATION THAT WAS PREVIOUSLY
      DISCLOSED TO THE PUBLIC.**

A district court's subject matter jurisdiction over suits brought under the False

6

Claims Act is limited as follows:

> (A) **No court shall have jurisdiction** over an action under this section **based upon the public disclosure of allegations** or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, **unless** the action is brought by the Attorney General or **the person bringing the action is an original source of the information.**

> (B) For purposes of this paragraph, **"original source" means an individual who has direct and independent knowledge of the information** on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4) (emphasis added).

By Relator's own admission, **all of the information in the Complaint is in the public record.** Relator's entire case is simple and inadequate: Relator read NIST's NCSTAR 1 report and disagrees with its findings. Indeed, her March 16, 2007 Request for Correction repeatedly quotes from NCSTAR 1 and then argues why its conclusions are incorrect. But neither that letter nor the Complaint provide any inside information regarding NIST's study or the circumstances surrounding September 11, 2001 to which Relator is uniquely privy. Instead, each of Relator's arguments relies on information, including photographs, videos, interviews and reports, that Relator herself obtained from the public domain. This is clearly not "direct and independent knowledge" as required by 31 U.S.C. § 3730(e)(4)(B).

**B.    RELATOR IS NOT AN ORIGINAL SOURCE FOR ANY OF THE INFORMATION ALLEGED IN HER COMPLAINT.**

Relator has no firsthand of the research, investigation, and correspondence that led to NIST's reports. Relator's knowledge is secondhand and is derived from the contents of

---

[6] *See, e.g.*, http://physics.about.com/od/physics101thebasics/p/PhysicsLaws.htm

those reports, which are available to the general public. Relator also clearly has no direct knowledge of SOM's correspondence with NIST. As such, she is not an original source of the information upon which she bases her lawsuit. Because the information on which her *qui tam* suit is premised is in the public domain and she is not an original source, her claims are barred by 31 U.S.C. § 3730(e)(4). *See United States ex rel. Dick Long Island Lighting Co.*, 912 F.2d 13, 18 (2d Cir. 1990). The original source requirement also bars FCA claims that are only partially based on publicly available information. *See United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1158 (2d Cir. 1993).

In order to be an original source, a relator must have "direct and independent knowledge" of that information. 31 U.S.C. § 3730(e)(4)(B). The relator must also have been a source to the entity that publicly disclosed the information in question. *See Kreindler*, 985 F.2d at 1185.

The relator in *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475 (2d Cir. 1995) lacked such inside information, and for that reason, his claim was dismissed. In *Gold*, the relator filed a *qui tam* lawsuit alleging that a contractor had defrauded the United States through cost overruns during the construction of housing at Fort Drum in upstate New York. 68 F.3d at 1476. The overruns about which the relator complained had already been made public through media coverage, reports to the Army Corps of Engineers, and through an arbitration proceeding between the government and the contractor. *Id.* The relator's lawsuit was based primarily on the information he had obtained from these sources, and not through any firsthand knowledge of the overruns. *Id.* at 1477. As a result, he was not an original source, and the Second Circuit affirmed the district court's dismissal of the lawsuit for lack of subject matter jurisdiction. *Id.*

Here, Relator has no firsthand knowledge of either the communications between

NIST and SOM or the process by which NIST created NCSTAR 1. She was not a source for the NCSTAR 1, since NIST's investigation and the report predated Relator's correspondence with NIST. She did not participate in the investigation, and her Complaint alleges no direct or independent knowledge of the investigative process that NIST undertook. The primary sources for her claim that NIST's findings are inaccurate are the report itself and information she obtained from others. Since NCSTAR1 does not attribute any fact or conclusion to SOM in particular, Relator's Complaint cannot, and does not, plead any specific statements that SOM made or withheld. This lack of independent or direct knowledge precludes any possibility that Relator is an original source, and she cannot sustain her burden under 31 U.S.C. § 3730(e)(4)(B). *See United States ex rel. Huangyan Import & Export Corp. v. Nature's Farm Products, Inc.*, 2004 U.S. Dist. LEXIS 600, at * 13-14 (S.D.N.Y. 2004) (dismissing FCA claims where Relator "did not have firsthand knowledge of the fraud").

**C.    RELATOR'S APPLICATION OF HER OWN SCIENTIFIC KNOWLEDGE TO NIST'S REPORT DOES NOT MAKE HER AN ORIGINAL SOURCE.**

It is clear from her Complaint and letter that Relator reviewed the NCSTAR 1 report and NIST documents and then applied her own purported scientific knowledge and/or expertise to reach conclusions that contradict NIST's findings. Relator's own analysis of a publicly available document does not even remotely qualify her as an original source. *See Huangyan*, 2004 U.S. Dist. LEXIS 600, at * 14 (finding that although "[relator] has apparently conducted significant research into the fraud alleged in the *qui tam* Complaint, that is also insufficient to establish its status as an original source when the information [is publicly available]."). As the Second Circuit explained in *Kreindler, supra*:

> The fact that [relator] conducted some collateral research and
> investigations regarding the [claim] as would be customary in such

> litigation, does not establish 'direct and independent knowledge of the information on which the allegations are based' within the meaning of § 3730(e)(4)(B); [Another entity] was clearly the source of the core information. Nor does the fact that [relator's] background knowledge enabled it to understand the significance of the information acquired . . . make its knowledge independent of the publicly disclosed information. If that were enough to qualify the relator as an original source, then a cryptographer who translated a ciphered document in a public court record would be an original source, an unlikely interpretation of the phrase.

985 F.2d at 1159 (internal quotations omitted) (*citing United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991)).

Simply put, a relator "who would not have learned of the information absent public disclosure does not have 'independent' information within the statutory definition of 'original source.'" *Prudential*, 944 F.2d at 1160 (*quoting United States v. Folding Admin. Comm.*, 881 F.2d 494, 505 (7th Cir. 1989)). Absent NIST's own publications, Relator would have no basis to even speculate that the information provided to NIST by its consultants was somehow inaccurate. Relator is not, therefore, an original source, and her Complaint must be dismissed for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) and 31 U.S.C. § 3730(e)(4).


## POINT II

### RELATOR'S COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO MEET THE HEIGHTENED PLEADING REQUIREMENTS OF FED. R. CIV. P. 9(b).

**A.    CLAIMS UNDER THE FALSE CLAIMS ACT ARE SUBJECT TO A HEIGHTENED PLEADING REQUIREMENT.**

There is no question that lawsuits that allege fraud can cause significant harm to a defendant's reputation and where a defendant is a commercial entity, to the defendant's business. As a result, Congress drafted Rule 9(b) of the Federal Rules of Civil Procedure, which explicitly

10

requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The statute was created to "protect defendants from the detrimental effects to their reputations that may result from fraud charges that cannot be supported by fact." *Selzer v. Bank of Bermuda, Ltd.*, 385 F. Supp. 415, 419 (S.D.N.Y. 1974). The instant matter is precisely the type of baseless lawsuit that Rule 9(b) was designed to eliminate.

It is well settled that Rule 9(b) applies to lawsuits brought under the False Claims Act, as the Act is clearly an antifraud statute. *See Gold, supra*, 68 F.3d at 1476-77; *United States ex rel. Sarafoglou v. Weill Medical College of Cornell University*, 451 F. Supp. 2d 613, 622-23 (S.D.N.Y. 2006). In order to satisfy this heightened pleading requirement, a complaint alleging violations of the False Claims Act must:

> (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.

*Mills v. Polar Molecular Corporation*, 12 F.3d 1170, 1175 (2d Cir. 1993) (*citing Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)). Relator's Complaint fails to meet even one of these requirements. Instead, Relator apparently expects this Court to excuse Relator's complete disregard for Rule 9(b) simply because Relator is insistent that the government destroyed the World Trade Center. The law does not permit such meritless claims to survive.

**B.    RELATOR'S COMPLAINT FAILS TO MEET THE REQUIREMENTS OF RULE 9(b) FOR ALLEGATIONS OF FRAUD.**

SOM is mentioned only once in Relator's Complaint, and the allegations contained therein are not pled with any particularity. Instead, they are vague, conclusory and entirely insufficient under Rule 9(b):

> [SOM's] individual and collective expertise, and that of their employers, could have been, but was not, used for the purposes of calling attention to the fact that the effects seen and left by the pattern of destruction of WTC1, 2 could not have been caused by jetliner impacts. Instead, defendant chose to use its expertise to commit fraud based on either withholding information or manipulating information and by then accepting payment improperly.

(Complaint, at ¶ 37).

## 1.    THE COMPLAINT DOES NOT PLEAD THE IDENTITY OF THE PERSON WHO COMMITTED FRAUD

It is well settled that a complaint alleging fraud by a corporate entity or partnership must specify which particular corporate director or directors actually made the statements at issue. *Mills*, 12 F.3d at 1175. Simply attributing such statements to a corporate defendant or its board of directors as a whole is insufficient. *Id.*; *see also Sarafoglou*, 451 F. Supp. 2d at 623 (dismissing a complaint under Rule 9(b) in part because complaint failed to specify which employees or directors of defendant hospital were involved with alleged fraud). Relator's Complaint attributes the unspecified fraud to SOM, without pleading the name or position of the person who committed that fraud.

Similarly, where a complaint alleging fraud is filed against multiple defendants, the Second Circuit has held that the complaint must clearly connect defined fraudulent statements to specific defendants. *See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986). A complaint that attributes statements in question to a group of defendants without more detail does not satisfy Rule 9(b). *Id.* Relator's Complaint simply lumps together a number of defendants, including SOM, without explaining which defendants purportedly made which statements. This is clearly insufficient under Rule 9(b).

**2.    THE COMPLAINT CONTAINS NO ALLEGATIONS REGARDING THE TIME, PLACE, OR SUBSTANCE OF THE ALLEGED FRAUDULENT CONDUCT**

A complaint must also be dismissed under Rule 9(b) when it fails to plead the location or date on which the fraudulent statement was allegedly made. *See Sarafoglou*, 451 F. Supp. 2d at 623. Relator's complaint provides no such information, and the fact that she cannot do so is simply more proof that she has no inside information regarding SOM's correspondence with NIST.

Finally, a complaint alleging fraud must specify the "substance" and "details" of the actual statements that gave rise to the claim. *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006). Relator's Complaint absolutely lacks any such detail. It does not specify even one statement that SOM fraudulently provided to, or withheld from, NIST. In the absence of any factual support, Relator's claims are entirely conclusory and must be dismissed as a matter of law.

As previously discussed, Relator assumes that because NIST's conclusions do not comport with Relator's farfetched explanation for the destruction of the World Trade Center, SOM must have somehow committed fraud. Such assumptions cannot form the basis of an action under the False Claims Act, and this is precisely the kind of baseless leap of faith that Rule 9(b) prohibits. Relator's position is speculative, inaccurate, and untenable. Even when read in a light most favorable to Relator, the Complaint is entirely devoid of facts that support Relator's causes of action against SOM. For this reason alone, this Court must dismiss the Complaint as a matter of law.

## POINT III

### RELATOR AND HER COUNSEL SHOULD BE REQUIRED TO PAY ATTORNEYS' FEES AND EXPENSES BECAUSE THE COMPLAINT IS FRIVOLOUS

As already discussed, Relator's Complaint is both legally and factually deficient, and it is clear that her claims have absolutely no chance of success. She has completely disregarded the substantive and procedural requirements of Rule 9(b), and her theories that SOM committed fraud and the United States government destroyed the World Trade Center are unfounded and preposterous. Relator's claim is at minimum frivolous, and at most an abuse of both the False Claims Act and the federal court system.

To discourage such abuse, Congress included in the False Claims Act a section that provides courts with the discretion to award costs to parties forced to defend themselves against these types of meritless and improper lawsuits:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses **if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous,** clearly vexatious, or brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4) (emphasis added). *See also* FED. R. CIV. P. 11(b)-(c) (authorizing sanctions for claims brought for an improper purpose or that are frivolous or lack evidentiary support). Under this statute, sanctions may be awarded if the complaint is frivolous, even if there is no showing that the action was vexatious or brought to harass the defendant. *See United States ex. rel. Mikes v. Straus*, 274 F.3d 687, 705-06 (2d Cir. 2001).

The Second Circuit has defined a frivolous claim as one that "[has] no reasonable chance of success, and present[s] no valid argument to modify present law." *Mikes*, 274 F.3d at

14

706; *see also United States ex rel. Bain v. Ga. Gulf Corp.*, 208 Fed. Appx. 280, 283 (5th Cir. 2006) (holding that "a claim is frivolous if it has no arguable support in existing law or any reasonably based suggestion for its extension."). Included in this category are complaints that are "bereft of any objective factual support", *see Mikes*, 274 F. 3d at 706, and complaints that do not satisfy the heightened pleading requirements of Rule 9(b). *See Bain*, 208 Fed. Appx. at 283-84. A relator's failure to demonstrate that he was an original source for publicly disseminated information may by itself support a finding that his complaint is frivolous. *See Bain*, 208 Fed. Appx. at 283.

Relator's Complaint is clearly frivolous as against SOM because as discussed in Points I and II above, not one of her claims has any chance of success. For example, Relator has made absolutely no effort to comply with the heightened pleading requirements of Rule 9(b), given that her Complaint fails to identify the substance, speaker, time or location of even one purportedly fraudulent statement by SOM.

Relator has also made no attempt to demonstrate this Court's subject matter jurisdiction over the instant action. The Complaint and its exhibits establish that Relator's sources are all in the public domain, and Relator is not an original source for any of that information. Simply put, the Complaint is so overwhelmingly factually and legally deficient that there can be no other conclusion but that it is frivolous. In order to discourage this kind of meritless litigation, this Court should award SOM the attorneys' fees and other costs that it expended to defend Relator's Complaint.

## CONCLUSION

Relator's baseless assertion that the United States government destroyed the World Trade Center with directed energy weapons provides no support for Relator's claims against SOM. The Complaint is entirely inadequate and is not close to meeting the requirements of Rule 9(b). Instead, it is clear that Relator commenced this action to promote her own absurd theories about September 11. For these reasons, the Complaint against SOM must be dismissed, and SOM should be awarded its legal fees and expenses.

Dated: New York, New York
       January 28, 2008

                              ZETLIN & DE CHIARA LLP

                              By:_____
                                 Chad E. Sjoquist (CS 0142)
                                 *Attorneys for Skidmore, Owings & Merrill LLP*
                                 801 Second Avenue
                                 New York, New York 10017
                                 (212) 682-6800
                                 csjoquist@zdlaw.com

16