## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DR. JUDY WOOD on behalf    §
of the UNITED STATES OF AMERICA    §
   §
              Plaintiff,    §
   §
vs.    §
   §
SCIENCE APPLICATIONS    §
INTERNATIONAL CORP.; APPLIED    §    Case No. 07CV3314 (GBD)
RESEARCH ASSOCIATES, INC.;    §
BOEING, NuSTATS; COMPUTER    §
AIDED ENGINEERING ASSOCIATES,    §
INC.; DATASOURCE, INC.;    §
GEOSTAATS, INC.; GILSANZ    §
MURRAY STEFICEK LLP; HUGHES    §**APPLIED RESEARCH ASSOCIATES, INC.'S**
ASSOCIATES, INC.; AJMAL ABBASI;    §    **MEMORANDUM IN SUPPORT OF**
EDUARDO KAUSEL; DAVID PARKS;    §    **MOTION TO DISMISS PURSUANT TO**
DAVID SHARP; DANIELE VENEZANO;    §    **FED. R. CIV. P. 12(b)(1), 12(b)(6), AND 9(b)**
JOSEF VAN DYCK; KASPAR WILLIAM;    §
ROLF JENSEN & ASSOCIATES, INC.;    §
ROSENWASSER/GROSSMAN    §
CONSULTING ENGINEERS, P.C.;    §
SIMPSON GUMPERTZ & HEGER, INC.;    §
S. K. GHOSH ASSOCIATES, INC.;    §
SKIDMORE, OWINGS & MERRILL,    §
LLP; TENG & ASSOCIATES, INC.;    §
UNDERWRITERS LABORATORIES,    §
INC.; WISS, JANNEY, ELSTNER    §
ASSOCIATES, INC.; AMERICAN    §
AIRLINES; SILVERSTEIN PROPERTIES; §
and UNITED AIRLINES,    §
   §
              Defendants.    §

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iv

INTRODUCTION.............................................................................................................. 1

I.     The NIST Investigation ................................................................................... 1

II.    Relator's Complaint......................................................................................... 2

ARGUMENT .................................................................................................................. 4

I.     False Claims Act, Section 3729 Claims .................................................... 4

II.    Relator's FCA Claims Must Be Dismissed Because This Court Lacks Subject Matter Jurisdiction ....................................................................... 4

      A.    The Standard For Dismissal For Lack of Subject Matter Jurisdiction Under Rule 12(b)(1) ............................................................................................ 5

      B.    The Court Lacks Subject Matter Jurisdiction Over Relator's FCA Claims Pursuant to the Public Disclosure Bar ................................................................. 5

           i.    Section 3730(e)(4) of the FCA Establishes a Public Disclosure Bar......... 6

           ii.   The Allegations in Relator's Complaint Have Been Publicly Disclosed ..... ......................................................................................................... 7

                1.   The Allegations and Transactions Underlying Relator's Complaint Were Publicly Disclosed During the NIST Investigation and in NCSTAR 1 ................................................................... 7

                2.   The Allegations Asserted in Relator's Complaint Were Publicly Disclosed in a Prior Civil Hearing ................................................. 9

                3.   The Allegations Underlying Relator's Complaint Were Publicly Disclosed by Various News Sources ........................................... 10

           iii.  These Publicly Disclosed Allegations and Transactions are Substantially Similar to the Allegations in Relator's Complaint ................................... 11

           iv.  Relator is Not an Original Source under Section 3730(e)(4) of the FCA.... ......................................................................................................... 12

i

1.  Relator Does Not Have Direct and Independent Knowledge of the Information Upon Which Her FCA Claims are Based ................ 13

2.  Relator's Compilation of Information in the Public Domain Does Not Qualify Her as an Original Source ........................................ 14

3.  Relator's Wildly Speculative Conspiracy Theory Cannot Qualify Her as an Original Source ........................................................... 15

**III.  Relator's Complaint Fails to State a Claim Upon Which Relief Can Be Granted ...... ..................................................................................................................................... 16**

A.  The Standard For Dismissal For Failure to State a Claim Upon Which Relief Can Be Granted Under Rule 12(b)(6) .......................................................... 16

B.  Relator Fails to Allege That Defendants Knowingly Made or Submitted a Claim Record or Statement That Was False .................................................... 19

C.  Relator Fails to Identify an Existing Obligation For Defendant to Transmit Money or Property to the Government ........................................................................ 23

D.  Relator Allegations Are Implausible ................................................................ 24

**IV.  Relator's Complaint Also Must Be Dismissed For Failure to Plead Fraud With Particularity ............................................................................................................. 25**

A.  Allegations Under the False Claims Act Must Satisfy the Requirements of Rule 9(b) ................................................................................................................... 25

B.  Relator's Complaint Should Be Dismissed For Failure to Plead Any Particulars Regarding a Single Fraudulent Claim ............................................................... 26

    i.  An FCA Complaint Must Allege Details Regarding Specific False Claims Submitted to the Government ................................................................ 26

    ii.  Relator's Complaint Does Not Identify a Single False Claim That Was Submitted to the Government ................................................................ 27

C.  Relator's Complaint Should Be Dismissed For Failure to Plead Any Particulars Regarding Defendants' Alleged Fraudulent Scheme That Resulted in the Submission of False Claims ............................................................................... 28

    i.  An FCA Complaint Must Allege Specific Details Regarding the Fraudulent Scheme That Allegedly Led to the Submission of False Claims ........................................................................................................ 28

{D0474881.1}

ii.     Relator's Complaint Fails to Plead Any Particulars Regarding Defendants' Alleged Fraudulent Scheme ................................................................. 28

1.     Relator Fails to Explain How the Defendants Contributed to the Alleged Fraudulent Nature of NCSTAR 1 .................................... 29

2.     Relator Fails to Attribute Specific Instances of Fraud to Specific Defendants ................................................................................. 30

3.     Relator Fails to Specify to What Extent NIST Was Complicit With the Defendants in the Alleged Fraud ......................................... 310

V.     **Relator's Claims are Frivolous and Should Be Dismissed** ........................................ 31

VI.     **ARA Should be Awarded Attorneys' Fees and Expenses Pursuant to 31 U.S.C. § 3730(d)(4)** ..................................................................................................... 33

**CONCLUSION** .............................................................................................................. 34

{D0474881.1}

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*United States ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., Inc.*, 186 F.Supp.2d 458 (S.D.N.Y. 2002)........................................................................ 4, 11, 12, 14, 15, 25

*Siteworks Contracting Corp. v. W. Sur. Co.*, 461 F.Supp.2d 205 (S.D.N.Y. 2006) ...................... 4

*Graubart v. Jazz Images, Inc*, No. 02-CV-4645(KMK) 2006 WL 1140724 (S.D.N.Y. Apr. 27, 2006) .............................................................................................................................................. 5

*United States ex rel. Smith v. Yale University*, 415 F.Supp.2d 58 (D.Conn. 2006)............ 5, 13, 14

*United States ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester County*, 495 F.Supp.2d 375 (S.D.N.Y. 2007)............................................................................................... 5

*United States ex rel. Mikes v. Straus*, 931 F.Supp. 248 (S.D.N.Y. 1996)................................. 6, 12

*United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148 (2d Cir. 1993) ..................................................................................................................... 6, 11, 13, 15, 22, 31

*United States ex rel. John Doe v. John Doe Corp.*, 960 F.2d 318 (2d Cir. 1992) ............ 6, 7, 8, 11

*United States ex rel. Herbert v. Nat'l Academy of Sciences*, Civil Action No. 90 2568, 1992 WL 247587 (D.D.C. Sept. 15, 1992) ........................................................................................ 6, 13, 20

*United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F.Supp.2d 443 (S.D.N.Y. 2001) .............................................................................................................................................. 6

*United States ex rel. Aflatooni v. Kitsap Physicians Servs.*, 163 F.3d 516 (9th Cir. 1999)......................................................................................................................................8, 15, 16

*Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475 (2d Cir. 1995)............................................ 8, 19, 25

*United States ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prods., Inc.*, No. 00 Civ. 6593(SHS), 2004 WL 74310 (S.D.N.Y. Jan. 15, 2004) ................................................................. 9

*Kevin Ryan v. Underwriters Labs., Inc.*, No. 1:06-cv-1770-JDT-TAB (S.D. Ind. filed Nov. 16, 2006) .............................................................................................................................................. 9

*United States ex rel. Woods v. Empire Blue Cross and Blue Shield*, No. 99 Civ. 4968(DC), 2002 WL 1905899 (S.D.N.Y. Aug. 19, 2002)........................................................................................ 11

*United States ex rel. Pentagen v. CACI Int'l*, No. 96 CIV. 7827(RWS), 1997 WL 473549 (S.D.N.Y. Aug. 18, 1997) ............................................................................................................. 11

iv

*United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13 (2d Cir. 1990) ............. 11, 19

*United States ex rel. Mistick PBT v. Hous. Auth.*, 186 F.3d 376 (3rd Cir. 1999) ........................ 11

*United States ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.*, 937 F.Supp. 1039 (S.D.N.Y. 1996)..... ...................................................................................................................................... 12, 13, 26, 27, 28

*Rockwell Int'l Corp. v. United States*, 127 S.Ct. 1397 (2007)................................................ 12, 13

*United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prud. Ins. Co.*, 944 F.2d 1149 (3d Cir. 1991)............................................................................................................................... 13

*United States v. New York Med. Coll.*, 252 F.3d 118 (2d Cir. 2001)) .......................................... 14

*United States ex rel. Pentagen Technologies Int'l Ltd v. CACI Int'l Inc.*, No. 94 Civ. 2925(RLC), 1996 WL 11299 (S.D.N.Y. Jan. 4, 1996) ................................................................................... 15

*Arista Records LLC v. Lime Group LLC,* No. 06 Civ. 5936 (GEL), 2007 WL 4267190 (S.D.N.Y. Dec. 3, 2007)....................................................................................................................... 16, 17, 18

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) .................................................. 16, 17, 24

*Iqbal v. Hasty,* 490 F.3d 143 (2d Cir. 2007) ................................................................................ 17

*In re Elevator Antitrust Litig.*, 502 F.3d. 47 (2d Cir. 2007) ........................................................ 17

*United States ex rel. Unite Here v. Cintas Corp.*, No. C06-2413(PJH), 2007 WL 4557788 (N.D.Cal. Dec. 21, 2007) ............................................................................................................. 17

*Bradley v. Phillips Petroleum Co.*, No. H-05-3912, 2007 WL 4443877 (S.D.Tex. Dec 18, 2007) ...................................................................................................................................................... 17

*Saidin v. New York City Dept. of Educ.*, 498 F.Supp.2d 683 (S.D.N.Y. 2007) ............................ 18

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)................................. 18

*Ello v. Singh*, No. 05 CV-9625(KMK), 2007 WL 3084979 (S.D.N.Y. Oct. 19, 2007)................ 18

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) .......................................... 18

*Robinson v. Mammoth Life and Accident Insur. Co.*, 454 F.2d 698 (7th Cir. 1971).................... 18

*Brass v. Am. Film Techs.*, 987 F.2d 142 (2d Cir. 1993) ............................................................... 18

*United States ex rel. Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001).............................................. 19

{D0474881.1}

*Boisjoly v. Morton Thoikol, Inc.*, 706 F.Supp. 795 (D. Utah 1988).................................. 19, 21, 22

*United States ex rel. Mikes v. Straus*, 98 F.Supp.2d 517 (S.D.N.Y. 2000)................................... 19

*United States ex rel. J. Cooper & Assocs. v. Bernard Hodes Group, Inc.*, 422 F.Supp.2d 225 (D.D.C. 2006) ...................................................................................................................... 19

*United States v. Fiske*, 968 F.Supp. 1347 (E.D.Ark. 1997) ......................................... 20, 21, 22, 23

*United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416 (9th Cir. 1991) ..... .................................................................................................................................................... 20

*United States v. Fox Lake State Bank*, 366 F.2d 962 (7th Cir. 1966) ........................................... 21

*Woodbury v. United States*, 232 F.Supp. 49 (D.Or. 1964) ........................................................... 21

*United States v. Schmidt*, 204 F.Supp. 540 (D.Wis. 1962) ........................................................... 21

*United States ex rel. Ervin & Assoc., Inc. v. Hamilton Secs. Group, Inc.*, 370 F.Supp.2d 18 (D.D.C. 2005) ...................................................................................................................... 23

*Taylor v. Gabelli*, 345 F.Supp.2d 313 (S.D.N.Y. 2004) ................................................................ 23

*Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F.Supp. 276 (S.D.N.Y. 1991) ...................................... 23

*United States ex rel. Capella v. Norden Sys., Inc.*, No. 3:94-CV-2063 (EBB), 2000 WL 1336487 (D.Conn. Aug. 24, 2000) ...................................................................................................... 24, 28

*Equitable Life Assur. Soc. of the United States v. Alexander Grant & Co.*, 627 F.Supp. 1023 (S.D.N.Y. 1985)...................................................................................................................... 24

*United States ex rel. Smith v. New York Presbyterian Hosp.*, No. 06 Civ. 4056(NRB), 2007 WL 2142312 (S.D.N.Y. July 18, 2007) ....................................................................................... 25, 26

*United States ex rel. Barmak v. Sutter Corp.*, No. 95 Civ. 7637(KTD), 2003 WL 21436213 (S.D.N.Y. June 20, 2003).................................................................................................. 25, 26, 27

*Devaney v. Chester*, 709 F.Supp. 1255 (S.D.N.Y. 1989) .............................................................. 26

*McFarland v. Memorex Corp.*, 493 F.Supp. 631 (N.D. Cal. 1980).............................................. 26

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) .............................................................. 26

*Wang v. FMC Corp.*, 975 F.2d 1412 (9th Cir. 1992)..................................................................... 26

{D0474881.1}

*United States ex rel. Monda v. Sikorsky Aircraft Corp.*, 2005 WL 1925903, No. Civ. 3:99CV1026(JBA) (D.Conn. Aug. 11, 2005) ................................................................................ 26

*United States ex rel. Karvelas v. Melrose–Wakefield Hosp.*, 360 F.3d 220 (1st Cir. 2004)) ........... .......................................................................................................................................... 26, 28

*In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318 (D.Conn. 2004) ................................ 27, 28

*United States ex rel. Clausen v. Lab. Corp. of America, Inc.*, 290 F.3d 1301 (11th Cir. 2002)....... ..................................................................................................................................................... 27

*United States ex rel. Vallejo v. Investronica, Inc.*, 2 F.Supp.2d 330 (W.D.N.Y. 1998) ......... 27, 28

*United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F.Supp.2d 141 (D.Mass 2000) ............... 27

*Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997 (2d Cir. 1988) ......................................................... 28

*O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674 (2d Cir.1991) ......................................... 30

*Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp. 213 (S.D.N.Y. 1992).... ..................................................................................................................................................... 30

*Luce v. Edelstein*, 802 F.2d 49, (2d Cir 1986) .............................................................................. 30

*Landy v. Mitchell Petroleum Tech. Corp.*, 734 F.Supp. 608 (S.D.N.Y. 1990) .............................. 30

*Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362 (2d Cir. 2000) ........................ 32

*Mallard v. United States District Court*, 490 U.S. 296 (1989) ...................................................... 32

*Tyler v. Carter*, 151 F.R.D. 537 (S.D.N.Y. 1993) ........................................................................ 32

*Tyler v. Carter*, 41 F.3d 1500 (2d Cir. 1994) ............................................................................... 32

*Bloom v. United States Government*, No. 02Civ.2352DABDF, 2003 WL 22327163 (S.D.N.Y. Oct. 10, 2003) ............................................................................................................................... 32

*Nance v. Kelly*, 912 F.2d 605 (2d Cir. 1990) ................................................................................ 32

*Ostrer v. Aronwald*, 567 F.2d 551 (2d Cir. 1977) ......................................................................... 32

*United States ex rel. Bain v. Georgia Gulf Corp.*, 208 Fed. Appx. 280 (5th Cir. 2006) .............. 33

{D0474881.1}

**Statutes**

National Construction Safety Team Act ("NCSTA"), 15 U.S.C. § 7301 *et seq.*............................ 2

False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3731 ............ ..2, 4, 6, 7, 8, 9, 10, 12, 13, 16, 23, 32

28 U.S.C. § 1331 ......................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................... 3, 7, 25, 26

Fed. R. Civ. P. 12(b)(1)....................................................................................................... 3, 5, 7

Fed. R. Civ. P. 12(b)(6)....................................................................................................... 3, 6, 7

**Pleadings**

Relator's Amended Complaint (Docket #8) ................................................. 8, 13, 15, 22, 27, 29, 31

**Websites**

Relator's personal website *available at* www.drjudywood.com...................................................... 1

Michael Shermer, *Fahrenheit 2777*, SCIENTIFIC AMERICAN, May 23, 2005, *available at*
http://www.sciam.com/article.cfm?chanID=sa006&articleID=000DA0E2-1E15-128A-
9E1583414B7F0000 .............................................................................................................. 10

Lev Grossman, *Why the 9/11 Conspiracy Theories Won't Go Away*, TIME, Sep. 03, 2006,
*available at* http://www.time.com/time/magazine/article/0,9171,1531304,00.html ................... 10

Benjamin Chertoff, et al., POPULAR MECHANICS, March 2005, *available at*
http://www.popularmechanics.com/technology/military_law/1227842.html ............................... 10

9/11 conspiracy theory website *available at* http://www.911closeup.com ................................... 15

9/11 conspiracy theory website *available at* http://www.media-criticism.com/911_video_fakes_
01_2004.html ......................................................................................................................... 15

9/11 conspiracy theory website *available at* http://www.thewebfairy.com/911 .......................... 15

9/11 conspiracy theory website *available at* http://www.911tvfakery.net; http://911hoax.com......
............................................................................................................................................. 15

{D0474881.1}

**Other**

Nat'l Inst. of Standards & Tech., U.S. Dep't of Commerce, Final Report on the Collapse of the World Trade Center Towers (2005), ("NCSTAR 1").................. 2,3, 7, 8, 9, 10, 12, 23, 28, 29, 30

Webster's Third New International Dictionary (1976)................................................................. 13

H.R. Rep. No. 660, 99th Cong., 2d Sess. 22 (1986) ..................................................................... 19

{D0474881.1}

## INTRODUCTION

The image of commercial aircraft colliding with the World Trade Center Towers on the morning of September 11, 2001 remains indelibly etched in the minds of every American. The immediate aftermath of the crashes was horrific, as fire and smoke billowed from the buildings, and within two hours, both buildings collapsed. All told, terrorists demolished a bold and enduring symbol of American freedom and murdered nearly 3,000 innocent men, women and children, both in the buildings and aboard the aircraft.

Relator believes that the events of September 11 were a hoax and that no aircraft struck the World Trade Center Towers. Relator is attempting to misuse the False Claims Act to profit from this tragedy in a most peculiar way. Relator alleges that the Defendants conspired with the United States Government to demolish the World Trade Center Towers using lasers orbiting in space and then created an elaborate cover story including the lie that aircraft struck the World Trade Center.[1] As part of this supposed conspiracy, Relator alleges that the Defendants submitted false claims for payment to the United States Government. Ignoring the absurd nature of Relator's allegations, Defendants Applied Research Associates, Inc. ("ARA" or "Defendants") hereby move the Court to dismiss Relator's Complaint for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted and failure to plead fraud with particularity.

## I.    The NIST Investigation

Immediately following the terrorist attacks of September 11, the United States Government began efforts to determine why the World Trade Center 1 and World Trade Center 2 buildings ("WTC 1" & "WTC 2," together "WTC Towers") collapsed. On August 21, 2002,

---

[1]    Relator maintains a website, www.drjudywood.com, detailing her conspiracy theories.

1

the National Institute of Standards and Technology ("NIST") announced its intent to conduct a building and fire safety investigation of the WTC disaster (the "NIST Investigation"). On October 1, 2002, the National Construction Safety Team Act ("NCSTA") was signed into law, 15 U.S.C. § 7301 *et seq.*, and the NIST Investigation was subsequently conducted under the NCSTA's authority. The NIST Investigation was funded through the Federal Emergency Management Agency ("FEMA"). The specific objectives of the NIST Investigation included, *inter alia*, to "[d]etermine why and how WTC 1 and WTC 2 collapsed <u>following the initial impacts of the aircraft</u> and why and how WTC 7 collapsed." Nat'l Inst. of Standards & Tech., U.S. Dep't of Commerce, Final Report on the Collapse of the World Trade Center Towers (2005), p. xxix (emphasis added) (hereinafter "NCSTAR 1"). On October 26, 2005, NIST released NCSTAR 1, which is at issue in this suit.

## II.    Relator's Complaint

On April 25, 2007, Relator filed this action under seal pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-3731 ("FCA"). Relator alleges that the WTC Towers were destroyed using "Directed Energy Weapons" ("DEW") and, therefore, any conclusion that aircraft impacts and subsequent jet fuel fires caused the collapse of the WTC Towers is not only wrong, but somehow fraudulent. Relator seems to allege that the Defendants are liable to the Government under the FCA for manipulating the NIST Investigation and providing false information to the Government. The United States investigated Relator's allegations for less than two months and, on June 22, 2007, declined intervention. On September 12, 2007, the Court ordered that Relator's Complaint be unsealed and served upon Defendants. On December 28, 2007, Relator served her Amended Complaint ("Complaint") upon Defendants. Relator's First, Second and Third Causes of Action allege violations of §§

2

3729(a)(1), (2), and (7) of the FCA, respectively.  All three claims are asserted against all 27 named Defendants.

Aside from the preposterous and offensive nature of Relator's allegations, Relator's Complaint is legally deficient and fails to support the relief sought.  First, this Court lacks subject matter jurisdiction over Relator's FCA claims because they are statutorily barred by the public disclosure bar, as Relator's allegations are based entirely on information in the public domain and Relator is not an original source.

Second, Relator's Complaint fails to state a claim upon which relief can be granted. Relator's allegation that Defendants conspired with the Government is fundamentally inconsistent with Relator's allegation that Defendants defrauded the Government or knowingly submitted false claims.  This flaw is fatal to all three of Relator's FCA claims.  In addition, Relator's Third Cause of Action fails to allege the essential elements of a § (a)(7) claim and, therefore, fails to state a valid claim.

Moreover, Relator's Complaint fails to allege fraud with the particularity required under Fed. R. Civ. P. 9(b).  Relator does not identify with particularity a single false claim that was allegedly submitted to the Government by any of the Defendants.  Relator further fails to provide any particulars regarding the underlying conduct that allegedly resulted in Defendants' submission of false claims for payment.  As Relator does not specify how the Defendants contributed to the fraudulent nature of NCSTAR 1, what fraudulent actions any Defendant engaged in, or the extent of Government complicity in any alleged fraud, her Complaint fails to satisfy the particularity requirements of Rule 9(b).

3

Finally, Relator's allegations are nothing more than a delusional conspiracy theory and are egregiously frivolous. This alone justifies dismissal of Relator's claims. For these reasons, Relator's Complaint must be dismissed under Rules 12(b)(1), 12(b)(6) and 9(b).

## ARGUMENT

### I.    False Claims Act, Section 3729 Claims

Relator alleges Defendants violated §§ 3729(a)(1), (2), and (7) of the FCA, which impose liability on any person who: "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1); "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. § 3729(a)(2); or "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government," 31 U.S.C. § 3729(a)(7). However, before a Court has jurisdiction to consider an action by an individual alleging violations of any of these sections, that individual must satisfy certain specific statutory criteria which Relator in this case fails to meet.

### II.    Relator's FCA Claims Must Be Dismissed Because This Court Lacks Subject Matter Jurisdiction

It is axiomatic that United States District Courts are courts of limited jurisdiction. *United States ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., Inc.*, 186 F.Supp.2d 458 (S.D.N.Y. 2002). Federal courts must have a valid basis to assert jurisdiction over the subject matter of a plaintiff's claims before adjudicating a case. *Siteworks Contracting Corp. v. W. Sur. Co.*, 461 F.Supp.2d 205, 207-208 (S.D.N.Y. 2006). Section 1331 of the United States Code grants federal courts jurisdiction over "all civil actions arising under the ... laws ... of the United

4

{D0474881.1}

States." 28 U.S.C. § 1331. Section 3730 of the FCA establishes the jurisdiction of federal

district courts over FCA claims. *See Alcohol Found.*, 186 F.Supp.2d at 461.

A.    **The Standard For Dismissal For Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a case when the court

lacks jurisdiction over the subject matter. *Graubart v. Jazz Images, Inc*, No. 02-CV-4645(KMK)

2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Plaintiffs bear the burden of proving that

subject matter jurisdiction exists by a preponderance of the evidence. *Id.* In ruling on a motion

to dismiss for lack of subject matter jurisdiction, the court "must accept as true all material

factual allegations in the Complaint," but cannot draw any inferences favorable to the plaintiff.

*Id.* (citations omitted). If the defendant presents a factual challenge to subject matter

jurisdiction, the court may "weigh and consider evidence outside the pleadings to determine

whether subject matter jurisdiction exists." *United States ex rel. Smith v. Yale University*, 415

F.Supp.2d 58, 69 (D.Conn. 2006) (citations omitted); *Graubart*, 2006 WL 1140724 at * 2. The

court must dismiss a case "for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks

the statutory or constitutional power to adjudicate it." *United States ex rel. Anti-Discrimination*

*Ctr. of Metro New York, Inc. v. Westchester County*, 495 F.Supp.2d 375, 379 (S.D.N.Y. 2007)

(citations omitted).

B.    **This Court Lacks Subject Matter Jurisdiction Over Relator's FCA Claims Pursuant to the Public Disclosure Bar**

The public disclosure bar precludes subject matter jurisdiction in an FCA action if (1)

there has been a prior public disclosure of the information on which the relator's claims are

based, and (2) the relator is not an original source of the information on which her claims are

based. Because Relator's FCA claims are based on publicly disclosed information and Relator is

5

not an original source, the Court lacks subject matter jurisdiction and Relator's claims must be dismissed.

     i.     **Section 3730(e)(4) of the FCA Establishes a Public Disclosure Bar**

Under § 3730(e)(4), federal courts lack subject matter jurisdiction over FCA actions based on allegations or transactions that have been publicly disclosed, unless the relator is an original source of the allegations in her complaint. *United States ex rel. Mikes v. Straus*, 931 F.Supp. 248, 252 (S.D.N.Y. 1996). "Section 3730(e)(4) is intended to bar 'parasitic lawsuits' based upon publicly disclosed information in which would-be relators seek remuneration although they contributed nothing to the exposure of the fraud." *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1157 (2d Cir. 1993) (internal quotations and citations omitted). The statutory bar "was designed to preclude *qui tam* suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it as it was to the relator." *Id.* (citing *United States ex rel. John Doe v. John Doe Corp.*, 960 F.2d 318, 322 (2d Cir. 1992)). Congress "wanted to avoid the situation of a person merely marshaling public information to bring a *qui tam* action." *United States ex rel. Herbert v. Nat'l Academy of Sciences*, No. 90-2568, 1992 WL 247587, at *4 (D.D.C. Sept. 15, 1992).

    Specifically, § 3730(e)(4)(A) of the FCA states:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

Under this Section, the court must first determine whether the "allegations or transactions" upon which the claims are based were "publicly disclosed" in one of the identified manners. *United*

*States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F.Supp.2d 443, 453 (S.D.N.Y. 2001). Then, if the Complaint is based on publicly disclosed information, the Court must determine if the relator is an original source. *Id.* If there was a public disclosure and the relator is not an original source, the case must be dismissed.

    ii.  **The Allegations in Relator's Complaint Have Been Publicly Disclosed**

   All of the "allegations or transactions" asserted in Relator's Complaint were publicly disclosed prior to her filing this suit. Relator's allegations are based entirely on information made available to the public through an administrative investigation and resulting report, prior civil actions and the news media. Because this information was equally available to any member of the public as it was to Relator, Relator's FCA claims are barred and this case must be dismissed.

    1.  **The Allegations and Transactions Underlying Relator's Complaint Were Publicly Disclosed During the NIST Investigation and in NCSTAR 1**

   The FCA claims asserted in Relator's Complaint are based on information disclosed during the NIST Investigation and in NCSTAR 1. Information disclosed pursuant to an administrative investigation or in an administrative report is publicly disclosed for the purposes of the public disclosure bar. § 3730(e)(4)(A); *John Doe*, 960 F.2d at 323-324.

   During NIST's Investigation, both Relator and Dr. Morgan Reynolds[2] submitted public Requests For Correction ("RFC") which disclosed the allegation that DEWs, rather than aircraft impacts, caused the collapse of the WTC Towers. Dr. Morgan Reynolds submitted his RFC on March 8, 2007 alleging that NCSTAR 1 was fraudulent because "NIST relied on obviously

---

[2]  Dr. Reynolds is the Relator in a nearly identical FCA suit, *United States ex rel. Dr. Morgan Reynolds v. SAIC, Inc.*, No. 07CV4612 (S.D.N.Y. filed May 31, 2007), currently pending before this Court (herinafter the "Reynolds Suit"). ARA is also named as a Defendant in the Reynolds Suit.

7

fraudulent data (e.g. faked videos)" depicting aircraft striking the WTC Towers. *See* Aff. of Wm. David Byassee In Supp. of Applied Research Associates, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b) ("Aff."), ¶ 4, Ex. A, RFC of Dr. Morgan Reynolds to NIST, March 8, 2007, p. 6. Similarly, on March 16, 2007, Relator submitted an RFC of NCSTAR 1 asserting it was "fraudulent, misleading, or deceptive" because it erroneously concluded that aircraft impacts caused the collapse of the WTC Towers. *See* Compl., Ex. A, RFC from Dr. Judy Wood to NIST, p. 43 (Docket #8). Relator asserts that her RFC contains information "confirming the existence of significant evidence of 'Unusual energy impacts' that are consistent with Directed Energy Weapons (DEW) having been used as a causal factor in the destruction of the World Trade Center complex on 11 September, 2001." *Id.* Thus, Relator's RFC publicly disclosed her allegations prior to the date Relator filed her Complaint. *See, e.g. United States ex rel. Aflatooni v. Kitsap Physicians Servs.*, 163 F.3d 516 (9th Cir. 1999) (relator's claims were publicly disclosed where relator had disclosed his allegations to the news media prior to filing suit). As these RFCs were both submitted pursuant to an "administrative … investigation" and have been publicly available on the internet since their submission, they constitute public disclosures under § 3730(e)(4)(A). *See John Doe*, 960 F.2d at 323 (disclosure pursuant to administrative investigations bars FCA claims).

Moreover, NCSTAR 1 is indisputably an "administrative … report" under § 3730(e)(4)(A), and constitutes a "public disclosure" of all "transactions" contained therein. *See Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476-77 (2d Cir. 1995) ("administrative reports" constitute public disclosure). As described above, NCSTAR 1 is the final report of NIST's Investigation into the collapse of the WTC Towers, and "describes how the aircraft impacts and subsequent fires led to the collapse of the towers after terrorists flew jet fuel laden commercial

8

{D0474881.1}

airliners into the buildings." NCSTAR 1, p. xiii. The report also describes "how NIST reached its conclusions," including NIST's use of private sector technical experts to assist the Investigation. *Id.* NIST is a nonregulatory agency of the U.S. Department of Commerce's Technology Administration, and the NIST Investigation was conducted pursuant to the NCSTA and funded by the U.S. Congress through FEMA. NCSTAR 1, p. xxix. Thus, all information contained in NCSTAR 1 is publicly disclosed for the purposes of the FCA.

### 2.    The Allegations Asserted in Relator's Complaint Were Publicly Disclosed in a Prior Civil Hearing

In the Second Circuit, "information is publicly disclosed when it is available to anyone who wishes to consult a court file." *United States ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prods., Inc.*, No. 00 Civ. 6593(SHS), 2004 WL 74310, at *3 (S.D.N.Y. Jan. 15, 2004) (internal quotations and citations omitted). The allegation that the NIST Investigation is fraudulent and that the collapse of the WTC Towers was not caused by aircraft impacts was also publicly disclosed in *Kevin Ryan v. Underwriters Labs., Inc.*, No. 1:06-cv-1770-JDT-TAB (S.D. Ind. filed Nov. 16, 2006) (the "Ryan Suit"). *See* Aff., ¶ 5, Ex. B, Ryan Suit Compl. Plaintiff Ryan sued Underwriters Laboratories (also a defendant in the instant case) for wrongful termination when Ryan was terminated after sending an electronic message to NIST claiming that the NIST Investigation was flawed and did not support the conclusion that aircraft impacts and subsequent fires caused the collapse of the WTC Towers. *Id.* at 5. Ryan's complaint publicly disclosed the allegation that: "[t]he official government explanation of the WTC building collapses was flawed, i.e. the government's explanation that the impact of the aircraft and the fires from the jet fuel caused the unprecedented collapse of the steel framed WTC Twin Towers and the WTC Building 7 was not supported by a scientific analysis of the evidence." *Id.* at 3. Thus, Relator's identical allegations were publicly disclosed prior to her filing this suit.

9

3.    The Allegations Underlying Relator's Complaint Were
Publicly Disclosed by Various News Sources

Relator's allegation that because the collapse of the WTC Towers was not caused by

aircraft impacts, NCSTAR 1 is fraudulent, although ludicrous, is not original.  Numerous news

sources have reported various alternate explanations for the ultimate collapse of the WTC

Towers.[3]  For example, in March 2005, over a year before the Relator filed this suit, POPULAR

MECHANICS published a cover story entitled *Debunking the 9/11 Myths*, in which the magazine

"examine[d] the evidence and consult[ed] the experts to refute the most persistent conspiracy

theories of September 11," including the claim that the collapse of the WTC Towers was caused

by "controlled demolition."  Benjamin Chertoff, et al.[4]  Thus, Relator's allegation that aircraft

impacts did not cause the collapse of the WTC Towers has been further publicly disclosed for the

purposes of § 3730(e)(4)(A).

Furthermore, Relator's allegation that DEWs were used to destroy the WTC Towers is in

no way original.  In February of 2002, the American Free Press published an article entitled

"Laser Beam Weapons and the Collapse of the World Trade Center," in which the author

asserted that "a laser beam weapon, employing technology originally developed in the Soviet

Union, may have caused the collapse of the towers."  Aff., ¶ 6, Ex. C, Christopher Bollyn, AM.

FREE PRESS, Feb. 14, 2002.  Similarly, in a two-part radio interview conducted on January 21 and

28, 2004, activist Jim Hoffman detailed his theory that high-energy lasers were used to destroy

the WTC Towers.  Aff., ¶ 7, Ex. D, *Edited Transcript of* Your Eyes Don't Lie: Common Sense,

---

[3]    *See, e.g.* Michael Shermer, *Fahrenheit 2777*, SCIENTIFIC AMERICAN, May 23, 2005,
*available at* http://www.sciam.com/article.cfm?chanID=sa006&articleID=000DA0E2-1E15-
128A-9E1583414B7F0000; Lev Grossman, *Why the 9/11 Conspiracy Theories Won't Go Away*,
TIME, Sep. 03, 2006, *available at* http://www.time.com/time/magazine/article/
0,9171,1531304,00.html.
[4]    *Available at* http://www.popularmechanics.com/technology/military_law/1227842.html.

{D0474881.1}

Physics, and the World Trade Center Collapse, An Interview of Jim Hoffman by Bonnie Faulkner on *Guns and Butter*. These public disclosures preclude Relator from parroting these allegations in her current FCA Complaint. *See Alcohol Found.*, 186 F.Supp.2d at 458; *United States ex rel. Woods v. Empire Blue Cross and Blue Shield*, No. 99 Civ. 4968(DC), 2002 WL 1905899 (S.D.N.Y. Aug. 19, 2002) (FCA claim based on information disclosed in television program and newspaper barred).

### iii.    These Publicly Disclosed Allegations and Transactions are Substantially Similar to the Allegations in Relator's Complaint

The public disclosure bar applies when an action is based "in any part upon publicly disclosed allegations or transactions." *Kreindler*, 985 F.2d at 1159 (*See also United States ex rel. Pentagen v. CACI Int'l*, No. 96 CIV. 7827(RWS), 1997 WL 473549, at *6 (S.D.N.Y. Aug. 18, 1997) ("The jurisdictional bar will apply if the action is based in any part on public information, even if it also relies on information obtained through independent investigation"). Moreover, Relator need not have actually based her allegations on publicly disclosed information for the bar to apply. "Public disclosure of the allegations divests district courts of jurisdiction over *qui tam* suits, regardless of where the relator obtained his information." *John Doe*, 960 F.2d at 324 (citing *United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 18 (2d Cir. 1990) ("[I]f the information on which a *qui tam* suit is based is in the public domain, and the *qui tam* plaintiff was not a source of that information, then the suit is barred")). Thus, Relator's claims are barred if they are substantially similar to allegations or transactions that are in the public domain. *See United States ex rel. Mistick PBT v. Hous. Auth.*, 186 F.3d 376, 386 (3rd Cir. 1999) (recognizing that all circuits other than the Fourth Circuit have held that "based upon" means "supported by" or "substantially similar to") (citing *John Doe*, 960 F.2d at 324).

11

In this case, Relator's allegations are based upon and substantially similar, if not identical, to allegations and transactions in the public domain. Relator's RFC, Dr. Reynolds' RFC and Relator's Complaint all assert that NCSTAR 1 is fraudulent because DEWs were the true cause of the collapse of the WTC Towers. Furthermore, every allegation in Relator's Complaint, which cites extensively to NCSTAR 1, is based on information publicly disclosed in NCSTAR 1. Similarly, the Ryan Suit, along with various news sources, previously disclosed into the public domain the allegation that the NIST Investigation and NCSTAR 1 may be incorrect (or fraudulent) in concluding that the collapse of the WTC Towers was caused by aircraft impacts. Finally, even Relator's specific allegation that DEWs caused the collapse of the WTC Towers was merely borrowed from the public domain. Thus, because Relator's allegations have been publicly disclosed, Relator's claims are barred unless she is an original source.

> ### iv.    Relator is Not an Original Source Under Section 3730(e)(4) of the FCA

Because Relator's claims are based on publicly disclosed information, she can pursue this litigation only if the Court determines that she is an original source of the information upon which her claims are based. *Mikes*, 931 F.Supp. at 253. In the Second Circuit, to qualify as an original source of publicly disclosed information, a relator must "(1) have direct and independent knowledge of the information on which the allegations are based; (2) have voluntarily provided such information to the government prior to filing suit; and (3) have directly or indirectly been a source to the entity that publicly disclosed the allegations on which the suit is based."[5] *Alcohol Found.*, 186 F.Supp.2d at 462 (citing *United States ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.*,

---

[5]    Following the Supreme Court's holding in *Rockwell Int'l Corp. v. United States*, 127 S.Ct. 1397 (2007) that a relator must be an original source of the allegations in her complaint rather than the allegations that were publicly disclosed, the third prong of this test may no longer be valid law.

{D0474881.1}

937 F.Supp. 1039, 1048 (S.D.N.Y. 1996); *Kreindler*, 985 F.2d at 1158-59). An original source must have "first hand knowledge of fraudulent misconduct" or be "either close observers or otherwise involved in the fraudulent activity." *DeCarlo*, 937 F.Supp. at 1048 (citations omitted). Relator does not fit that description.

### 1. Relator Does Not Have Direct and Independent Knowledge of the Information Upon Which Her FCA Claims are Based

Under § 3730(e)(4)(B), "original source" means "an individual who has <u>direct</u> and <u>independent</u> knowledge of the information on which the allegations are based ...." (emphasis added). "Direct" knowledge is "marked by [the] absence of an intervening agency, instrumentality, or influence: immediate." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prud. Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991) (quoting Webster's Third New International Dictionary 640 (1976)). "'Independent knowledge' is that which is not dependent on public disclosures." *Smith*, 415 F.Supp.2d at 72. Thus, to qualify as an original source, Relator "must show that private information forms the substantial basis of [her] specific allegations of fraud." *Herbert*, 1992 WL 247587, at *5.

Relator asserts that she is an original source of the allegations in her Complaint because she submitted an RFC to NIST on March 16, 2007 asserting that DEWs caused the collapse of the WTC Towers. *See* Compl. ¶ 55; *see also* Compl., Ex. A. However, Relator never alleges any direct or independent knowledge of the information on which she bases her allegations. Relator never alleges she witnessed any of the events of September 11. More importantly, Relator never alleges she was in any way involved in NIST's Investigation, or that she has any direct knowledge of the alleged conspiracy she describes. *See Rockwell*, 127 S.Ct. 1397 (relator was not original source of fraud that allegedly took place after relator was no longer employed); *Herbert*, 1992 WL 247587, at *7 (relator did not have direct or independent knowledge

13

{D0474881.1}

regarding contract negotiations at which he was not present). Thus, as Relator lacks any first-hand knowledge supporting her claims, she is not an original source.

### 2. Relator's Compilation of Information in the Public Domain Does Not Qualify Her as an Original Source

Moreover, the mere compilation of various publicly available sources to conjure allegations does not render a relator an original source of the resulting allegations. *Alcohol Found.*, 186 F.Supp.2d at 458. The relator in *Alcohol Foundation* filed an FCA suit against various entities involved in the production, distribution, and sale of alcoholic beverages alleging that the defendants violated the FCA by advertising alcoholic beverages without warning consumers of the associated health risks and, therefore, the resulting medical treatment bills submitted to the Government were fraudulent. *Id.* at 460. The relator asserted that it was an original source under the FCA "because of the work it did in researching and compiling scientific and government publications." *Id.* at 461. The court in *Alcohol Foundation* held that the relator's "independent investigation" did not give it direct and independent knowledge of the allegations contained in the complaint and, therefore, the relator was not "transformed" into an original source. *Id.* at 462-63. Importantly, the court held that the FCA was designed to incentivize "insiders" to "vindicate the pecuniary rights of the United States," and not as a tool "available to those pursuing a less pecuniary and more expansive social agenda." *Id.* at 464-65. Thus, in the Second Circuit, "a relator must possess, at the very least, substantive, or core, information about the particular fraud in order to qualify as an original source." *Smith*, 415 F.Supp.2d at 72-73 (citing *United States v. New York Med. Coll.*, 252 F.3d 118, 121 (2d Cir. 2001)).

Like the relator in *Alcohol Foundation*, Relator's allegations are based solely on a compilation of publicly available information. Indeed, Relator admits in her RFC that:

14

"Requester obtained the information that is the subject of this Request for Correction from NIST's website at http://wtc.nist.gov/reports_october05.htm in or about the month of June, 2006." Compl., Ex. A, RFC of Dr. Judy Wood, p. 4. Moreover, Relator is not the original source of any information publicly disclosed in the Ryan Suit or in news stories. *See, e.g. United States ex rel. Pentagen Technologies Int'l Ltd. v. CACI Int'l Inc.*, No. 94 Civ. 2925(RLC), 1996 WL 11299, at *8 (S.D.N.Y. Jan, 4, 1996) ("the Second Circuit holds that the party divulging the information deemed publicly disclosed by litigation papers, such as depositions, is the original source of that information") (citing *Kreindler*, 985 F.2d at 1159). Relator cannot now be heard to argue that she has "direct and independent knowledge" of this publicly available information. Relator's efforts to research and compile various public sources of information to pursue her peculiar social agenda do not transform her into an original source.[6] *Alcohol Found.,* 186 F.Supp.2d at 461.

### 3. Relator's Wildly Speculative Conspiracy Theory Cannot Qualify Her as an Original Source

Moreover, a relator cannot satisfy the original source requirement with baseless speculation and conjecture. *Aflatooni*, 163 F.3d at 526. "[B]ecause the purpose of the FCA is to encourage individuals with true 'knowledge' of alleged wrongdoing to come forward and provide such information to the Government, the purposes of the Act would not be served by allowing a relator to maintain a qui tam suit based on pure speculation or conjecture." *Id.* Thus, to avoid dismissal, Relator must demonstrate first-hand knowledge of a factually supported claim, rather than wild speculation about what might have happened on September 11.

---

[6]    Moreover, unlike Relator in *Alcohol Foundation*, whose allegations were at least factually and legally novel, Relator's claims are no different than those set forth on countless September 11 "conspiracy theory" websites. *See, e.g.* http://www.911closeup.com; http://www.media-criticism.com/911_video_fakes_01_2004.html; http://www.thewebfairy.com/911; http://www.911tvfakery.net; http://911hoax.com.

15

{D0474881.1}

Relator's claims are not based on factual information at all, let alone factual information of which Relator has direct and independent knowledge. Instead, Relator's allegations are based on a delusional fantasy of "rogue" Government agents, illusory aircraft, countless deceived eyewitnesses, faked video evidence and weapons that exist only in science fiction. Relator's Complaint alleges nothing more than theoretical possibilities, and "does not point to any other evidence in the record which suggests that [she] has 'information,' as opposed to speculation." *Aflatooni*, 163 F.3d at 526. Thus, because Relator is not an original source of the allegations asserted in her Complaint, this case must be dismissed as a matter of law.

**III.    Relator's Complaint Fails to State a Claim Upon Which Relief Can Be Granted**

Relator's Complaint alleges three separate Causes of Action under §§ 3729(a)(1), (2) and (7) of the False Claims Act. Relator's Complaint fails to state a claim under any of these three Sections of the FCA. First, Relator's Complaint does not allege that Defendants knowingly submitted or used a claim, statement or record that was false or fraudulent. Moreover, Relator fails entirely to plead the elements of a claim under § (a)(7) because Relator has not identified a pre-existing obligation for Defendants to pay money or transmit property to the Government. Finally, Relator has failed to set forth sufficient facts to show that her allegations are plausible. For these reasons, Relator's claims must be dismissed.

**A.    The Standard For Dismissal For Failure to State a Claim Upon Which Relief Can Be Granted Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. A complaint may be dismissed under Rule 12(b)(6) when "it fails to plead 'enough facts to state a claim to relief that is plausible on its face'." *Arista Records LLC v. Lime Group LLC*, No. 06 Civ. 5936(GEL), 2007 WL 4267190, at *4, (S.D.N.Y. Dec. 3, 2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974

16

(2007)). In the Second Circuit, complaints must meet "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). The complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Arista Records*, 2007 WL 4267190, at \*4 (citing *Twombly*, 127 S.Ct. at 1964-65). Furthermore, allegations that consist of nothing more "than a list of theoretical possibilities, which one could postulate without knowing any facts whatever" are insufficient under Rule 12(b)(6). *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007).

To avoid dismissal under Rule 12(b)(6), the complaint must set forth sufficient facts to "nudge[] [the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974; *see also In re Elevator Antitrust Litig.*, 502 F.3d at 50. For example, in *Twombly*, the Supreme Court held that a plaintiff alleging antitrust violations must set forth evidence of illegal collusion beyond mere parallel conduct, as parallel conduct is "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Twombly*, 127 S.Ct. 1964; *see also Elevator Antitrust Litig.*, 502 F.3d at 51. Thus, an antitrust plaintiff must show some evidence that collusion was the cause of parallel conduct rather than some equally plausible alternate explanation. *Id.* The Court in *Twombly* emphasized that the plausibility standard serves to prevent costly discovery that may "push cost-conscious defendants to settle even anemic cases" when the plaintiff's claims have no plausible chance of success. *Id.* at 1967. Moreover, the heightened pleading requirement announced in *Twombly* applies to FCA complaints. *United States ex rel. Unite Here v. Cintas Corp.*, No. C06-2413(PJH), 2007 WL 4557788, at \*4 (N.D.Cal. Dec. 21, 2007); *Bradley v.*

17

{D0474881.1}

*Phillips Petroleum Co.*, No. H-05-3912, 2007 WL 4443877, at \*6 (S.D.Tex. Dec. 18, 2007) ("Because the requirements of Rule 9 are more stringent than those for Rule 8, the Supreme Court's decision in *Twombly* applies with at least equal force to the Rule 9 pleading requirements"). As Relator's Complaint fails to satisfy Rule 12(b)(6) because it does not contain sufficient facts to satisfy the plausibility standard, it must be dismissed.

In evaluating a motion to dismiss under Rule 12(b)(6), all well-pleaded facts alleged in the complaint are taken as true and all reasonable inferences are indulged in favor of the plaintiff. *Arista Records*, 2007 WL 4267190, at \*5 (citations omitted). However, well-pleaded facts must be distinguished from conclusory statements; conclusory allegations without supporting factual averments are not sufficient to state a claim on which relief can be granted. *Id.* Similarly, the Court need not accept as true "unwarranted deductions of fact." *Saidin v. New York City Dept. of Educ.*, 498 F.Supp.2d 683, 687 (S.D.N.Y. 2007) (citing *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994)). To adjudicate a Rule 12(b)(6) motion, the court may consider the facts stated in the complaint, documents attached to or incorporated in the complaint, and matters of public record. *Ello v. Singh*, No. 05-CV-9625(KMK), 2007 WL 3084979, at \*4 (S.D.N.Y. Oct. 19, 2007) (citations omitted); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (citations omitted). Moreover, a court may properly base its ruling on "common knowledge" and matters of which the Court may take judicial notice. *Robinson v. Mammoth Life and Accident Insur. Co.*, 454 F.2d 698, 699 (7th Cir. 1971) (court properly decided Rule 12(b)(6) motion based on common knowledge of the risk of robbery in the neighborhood in which the plaintiff worked); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citations omitted). Thus, in this case, in evaluating the sufficiency of Relator's

18

Complaint, the Court can take judicial notice of "common knowledge" related to the events of September 11.

## B.    Relator Fails to Allege That Defendants Knowingly Made or Submitted a Claim, Record or Statement That Was False

The purpose of the FCA is to prevent and redress situations in which fraud is "being perpetrated against the Government." *Dick*, 912 F.2d at 18 (quoting H.R. Rep. No. 660, 99th Cong., 2d Sess. 22 (1986)).  Because the Government is the real party in interest in any FCA suit, any allegation of fraud lodged against a Government agency in an FCA suit is tantamount to the Government suing itself.  Yet, this is precisely what Relator has alleged.  Because Relator's allegations of Government complicity are inconsistent with the alleged falsity or fraudulence of Defendants' claims, statements and records, Relator has failed to state a claim under the FCA.

The FCA does not define the terms "false" or "fraudulent."  However, "[i]t is self-evident that the FCA is an anti-fraud statute." *Gold*, 68 F.3d at 1476.  In the Second Circuit, a claim is only actionable under the FCA if it "is aimed at extracting money the government otherwise would not have paid." *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 696 (2d Cir. 2001) (citations omitted).  The language of the FCA "plainly links the wrongful activity to the government's decision to pay." *Id.*  "Only if the government gets something less than or different from that which it expected can it be said to have suffered the kind of injury necessary to invoke FCA liability." *Boisjoly v. Morton Thoikol, Inc.*, 706 F.Supp. 795, 809 (D.Utah 1988). Thus, if the Government remits payment with full knowledge of the allegedly fraudulent nature of the claims submitted, the Government has not been defrauded and an FCA action will not lie. *See, e.g. United States ex rel. Mikes v. Straus*, 98 F.Supp.2d 517, 527 (S.D.N.Y. 2000) (FCA actions may be vexatious "where the government's undisputed prior knowledge of information alleged to constitute fraud defeated any inference of a false claim"); *United States ex rel. J.*

19

*Cooper & Assocs. v. Bernard Hodes Group, Inc.,* 422 F.Supp.2d 225, 239 (D.D.C. 2006) ("A claim [under the FCA] is frivolous and vexatious if the government's awareness of the circumstances constituting the alleged transgression makes any legal claim of fraud untenable"); *Herbert*, 1992 WL 247587, *8 (FCA suit was frivolous and vexatious due, in part, to clear evidence that the Government was aware of, and consented to, the allegedly fraudulent actions of the defendant).

In a case with similar facts to the instant case, the Eastern District of Arkansas held that an FCA complaint that alleged joint wrongdoing by the defendant and the Government failed to state a claim under the FCA. *United States v. Fiske*, 968 F.Supp. 1347 (E.D. Ark. 1997). The court in *Fiske* held that the relator's complaint failed to state a claim under the FCA because the relator's "finger, in essence, point[ed] at the Department of Justice." *Id.* at 1355. Defendant Fiske was the independent counsel in the Whitewater investigation for approximately six months before being replaced by Kenneth Starr. *Id.* at 1348. The relator filed suit under the FCA alleging that Fiske wrongfully accepted payment from the Department of Justice under a statute that was no longer in effect and that Fiske failed to disclose a conflict of interest. *Id.* The United States subsequently intervened and moved to dismiss the relator's FCA claims. *Id.* at 1349. The court held that Fiske's claims for payment were not false because "the United States appointed [Fiske] and thus represented to him that he would be paid his salary," and the relator did not allege that Fiske deceived the Government. *Id.* at 1352. Moreover, the Government chose Fiske for the investigation after thoroughly investigating and acquiescing to any alleged conflict of interest. *Id.* at 1354. The court recognized that Government knowledge alone is not a complete defense. *Id.* at 1352 (citing *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991)). "However, it is obvious that [the relator's] fundamental

20

argument is with the Department of Justice itself, not with [Fiske]. [The relator] is left in the odd position of arguing that the Department of Justice – a party which [the relator] has not sued – defrauded itself." Because the essence of the relator's allegation in *Fiske* was that the Government fraudulently conducted the Whitewater investigation, the complaint failed to state a valid claim against Fiske under the FCA. *Id.*

Similarly, in *Boisjoly*, the court held that allegations of Government knowledge of an allegedly fraudulent scheme failed to state a claim under the FCA. In *Boisjoly*, the relator Engineer worked for the defendant Contractor and was involved in the development of Solid Rocket Motors ("SRM") for NASA for use on the space shuttle. 706 F.Supp. at 798. Following the explosion of the Space Shuttle Challenger in 1986, the Engineer filed an FCA suit against the Contractor alleging that both the Contractor and NASA knew that certain seals and joints used on the SRM were defective and likely to cause catastrophic accidents and, therefore, the Contractor's subsequent claims for payment were false. *Id.* The court granted the Contractor's motion to dismiss, holding that the Contractor's claims for payment were not false or fraudulent. *Id.* "Because FCA liability requires an element of fraud or falsity, courts have disallowed FCA claims where the Government knew, or was in possession at the time of the claim, of the facts that make the claim false." *Id.* at 809 (citing *United States v. Fox Lake State Bank*, 366 F.2d 962, 965 (7th Cir. 1966); *Woodbury v. United States*, 232 F.Supp. 49, 54-55 (D.Or. 1964); *United States v. Schmidt*, 204 F.Supp 540 (D.Wis. 1962)). The court found that the documents incorporated into the complaint demonstrated "a close interplay between [the Contractor] and … NASA" and that "[f]rom a very early date, NASA was aware of the characteristics that form the 'defect' upon which [the Engineer's] FCA claim [was] based." *Id.* Thus, because "the complaint itself allege[d] NASA's knowledge of the claimed defects in the same sentences in

21

which those defects [were] identified," the Engineer's complaint failed to state a claim under the FCA. *Id.*

Under *Boisjoly*, Government knowledge can negate falsity under the FCA. *See also Kreindler*, 985 F.2d at 1156-57. However, the court in *Boisjoly* went a step further, holding that any allegation of Government knowledge in the complaint automatically bars an FCA action. 706 F.Supp. at 810. The Second Circuit declined to follow this part of *Boisjoly's* holding and held in *Kreindler* that the potential falsity of a claim "is not automatically exonerated by any overlapping knowledge by government officials." 985 F.2d at 1156 (emphasis added). However, the court in *Kreindler* found that the ruling in *Boisjoly* was "warranted on the facts of that case." *Id.*

Here, Relator alleges more than mere knowledge on the part of the Government; Relator alleges that NIST orchestrated the fraud alleged in her Complaint. Relator alleges that the NIST Investigation was fraudulent because NIST "improperly and fraudulently curtail[ed] the scope of its investigation." Compl., ¶ 21. Relator further alleges that NIST intentionally chose contractors with familiarity with DEWs "in order to produce a report that sought to go to any length necessary to avoid, disguise, omit and otherwise divert attention away from the actual and intended destruction of the WTC complex" using DEWs. Compl., ¶ 53. Finally, Relator alleges that "NIST ... contributed to and/or facilitated the fraudulent scheme herein described." Compl., ¶ 54.

Thus, even assuming the validity of the Relator's allegations, Relator has failed to state an actionable claim under the FCA. It is clear from Relator's Complaint that, just as in *Fiske*, Relator's fundamental allegations are aimed more at NIST than at Defendants. Moreover, as in *Boisjoly*, Relator alleges that NIST was fully aware of the alleged facts that allegedly rendered

22

Defendants' claims false. Relator does not allege that Defendants deceived the Government. Nor does Relator allege that Defendants fraudulently extracted money from the Government or that the Government received anything other than what it expected under its contract with Defendants. Relator essentially alleges that NIST desired to falsify NCSTAR 1, NIST contracted with Defendants to conduct a fraudulent investigation, Defendants did exactly what NIST requested by creating false records and statements, and Defendants subsequently submitted claims for payment. This scenario, while perhaps actionable under some other legal theory, does not present a claim for relief under the FCA. *See United States ex rel. Ervin & Assoc., Inc. v. Hamilton Secs. Group, Inc.*, 370 F.Supp.2d 18, 43-44 (D.D.C. 2005) ("Not all false statements or records are actionable under the False Claims Act"). Just like the relator in *Fiske*, Relator is merely unsatisfied with the NIST Investigation and has improperly invoked the FCA in an attempt to challenge NIST's conclusions. Thus, Relator's Complaint fails to state a claim against Defendants under the FCA and must be dismissed.

### C.    Relator Fails to Identify an Existing Obligation For Defendants to Transmit Money or Property to the Government

Relator's Third Cause of Action is premised on a violation of § 3729(a)(7) of the FCA. The essential elements of a § (a)(7) claim are: (1) the defendant made, used, or caused to be made or used a false record or statement; (2) to conceal, avoid or decrease an obligation to pay the Government; and (3) the defendant knew the record or statement was false. *Taylor v. Gabelli*, 345 F.Supp.2d 313, 331-32 (S.D.N.Y. 2004). This Section is known as the "reverse false claims" provision. *Id.* Relator's Third Cause of Action merely recites the language of § (a)(7) without supporting her conclusory allegations with any well-pleaded facts. Relator does not identify anywhere in her Complaint any specific false record or statement made to avoid any specific obligation to transmit property to the Government. This deficiency alone is sufficient to

23

justify dismissal pursuant to Rule 12(b)(6). *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F.Supp. 276, 284 (S.D.N.Y. 1991) ("Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate").

Furthermore, to support a reverse false claim action, Relator must make a specific allegation that at the time of the false statement or record, Defendants had an independent legal duty to make a payment or transmit property to the United States. *United States ex rel. Capella v. Norden Systems, Inc.*, No. 3:94-CV-2063(EBB), 2000 WL 1336487, at *10 (D.Conn. Aug. 24, 2004) (relator must allege "a presently existing obligation to pay the government") (citations omitted). Relator has failed to plead the existence of any legal duty on the part of Defendants to pay money or transmit property to the Government. Again, this deficiency alone warrants dismissal for failure to state a claim. *Equitable Life Assur. Soc. of the United States v. Alexander Grant & Co.*, 627 F.Supp. 1023, 1028 (S.D.N.Y. 1985) (complaint dismissed under Rule 12(b)(6) because it failed to allege the essential elements of a RICO claim). Thus, Relator's Third Cause of Action must be dismissed for failure to state a claim under § (a)(7) of the FCA.

**D.    Relator's Allegations Are Implausible**

Relator has failed entirely to satisfy the plausibility standard announced by the Supreme Court in *Twombly*. Relator asserts that DEWs must have been used to destroy the WTC Towers because they may exist. Yet, Relator fails entirely to demonstrate how her theory is any more plausible than any other theory (e.g. controlled demolition, a missile attack, a localized earthquake), let alone how her conspiracy theory is at least as plausible as countless eyewitness accounts and recorded evidence of aircraft striking the Towers. Relator's allegations are little more than speculation at what might theoretically be possible, and fly in the face of the commonly understood and accepted events of September 11. Because Relator's formalized

24

Complaint and invocation of the FCA does not transform her utter fantasy into a cognizable legal claim, her Complaint must be dismissed for failure to state a claim upon which relief can be granted.

## IV.    Relator's Complaint Also Must Be Dismissed For Failure to Plead Fraud With Particularity

### A.    Allegations Under the False Claims Act Must Satisfy the Requirements of Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In this Circuit, "[i]t is well-established that the heightened pleading standard of Rule 9(b) ... applies to suits under the FCA." *United States ex rel. Smith v. New York Presbyterian Hosp.*, No. 06 Civ. 4056(NRB), 2007 WL 2142312, at *6 (S.D.N.Y. July 18, 2007) (citing *Gold*, 68 F.3d at 1476-77). To comply with Rule 9(b), a complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Barmak v. Sutter Corp.*, No. 95 Civ. 7637(KTD), 2003 WL 21436213, at *4 (S.D.N.Y. June 20, 2003). Essentially, Relator must set forth the "who, what, when, and where" of the alleged fraud. *Id.* The primary purposes of Rule 9(b)'s requirement of particularity are: "(1) ensuring that defendants have sufficient notice of plaintiff's claims; (2) discouraging strike suits; and (3) preventing the filing of suits that simply hope to uncover the basis for some previously

25

unspecified wrongdoing." *Smith,* 2007 WL 2142312, at *6.[7]  Failure to plead fraud with

particularity subjects a complaint to dismissal, and a dismissal with prejudice "is appropriate

under Rule 9(b) where there is a 'good reason' to deny the plaintiff leave to amend, including

where it appears that any amendment would be futile." *Id.* at *7 (citations omitted).

### B. Relator's Complaint Should Be Dismissed For Failure to Plead Any Particulars Regarding a Single Fraudulent Claim

#### i. An FCA Complaint Must Allege Details Regarding Specific False Claims Submitted to the Government

Evidence of an actual false claim is "the *sine qua non* of a False Claims Act violation."

*United States ex rel. Monda v. Sikorsky Aircraft Corp.*, 2005 WL 1925903, No. Civ.

3:99CV1026(JBA), at *3 (D.Conn. Aug. 11, 2005) (quoting *United States ex rel. Karvelas v.*

*Melrose–Wakefield Hosp.*, 360 F.3d 220, 225 (1st Cir. 2004)).  An FCA claim must contain

"allegations, stated with particularity, of the actual false claims submitted to the government that

constitute the essential element of an FCA qui tam action." *Karvelas*, 360 F.3d at 232.  To

properly allege an FCA action, Relator's Complaint must, at a minimum, specify the claims that

Relator contends were fraudulent, identify who submitted them, state where and when the claims

were submitted, and explain why the claims were fraudulent. *Barmak*, 2003 WL 21436213, at

---

[7]     Rule 9(b)'s heightened pleading requirements also reflect "the desire to spare defendants the harm to their reputations attendant to an allegation of fraud absent concrete factual circumstances supporting the allegations." *DeCarlo*, 937 F.Supp. at 1049-50 (quoting *Devaney v. Chester*, 709 F.Supp. 1255, 1260 (S.D.N.Y. 1989)).  In addition, Rule 9(b) prevents fraud claims from being used as a pretext for conducting fishing expeditions during discovery. *McFarland v. Memorex Corp.*, 493 F.Supp. 631, 636-37 (N.D. Cal. 1980).  Moreover, Rule 9(b)'s particularity requirement is consistent with the FCA's purpose of encouraging insiders with first-hand knowledge of fraud to blow the whistle. *See Alcohol Foundation*, 186 F.Supp.2d 464-65; *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).  "*Qui tam* suits are meant to encourage *insiders privy to a fraud on the government* to blow the whistle on the crime. Because insiders privy to a fraud on the government should have adequate knowledge of the wrongdoing at issue, such insiders should be able to comply with Rule 9(b)." *Bly-Magee*, 236 F.3d at 1019 (quoting *Wang v. FMC Corp.*, 975 F.2d 1412, 1419 (9th Cir. 1992)) (emphasis added in *Bly-Magee*; internal quotation marks omitted).

26

*4; *DeCarlo*, 937 F.Supp. at 1049-50.[8] An FCA claim that does not specify the false claims for payment allegedly submitted to the Government must be dismissed.

### ii.    Relator's Complaint Does Not Identify a Single False Claim That Was Submitted to the Government

Relator's FCA claims must be dismissed because Relator fails to identify a single false claim that any Defendant allegedly submitted for payment. *See United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F.Supp.2d 141, 147 (D.Mass 2000) ("Without citing a single false claim arising from an allegedly false invoice, Relator has not met even a bare-bones Rule 9(b) test.") Relator's 32-page Complaint contains sparse references to any false claims and merely makes conclusory allegations without any factual support. General allegations that the "various cost reports, requisitions, billing statements and/or requests for reimbursement submitted by the defendant NIST participants ... all contained false claims for reimbursement and made false statements to NIST," Compl., ¶ 56, do not meet the pleading standards required under the FCA. Relator's Complaint does not identify any specific date that any Defendant allegedly submitted a false claim for payment, the name of a single employee who submitted a false claim for payment,

---

[8]      "Rule 9(b)'s directive that 'the circumstances constituting fraud or mistake shall be stated with particularity' does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 336 (D.Conn. 2004) (citing *United States ex rel. Clausen v. Lab. Corp. of America, Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002). *See also United States ex rel. Vallejo v. Investronica, Inc.*, 2 F.Supp.2d 330, 336 (W.D.N.Y. 1998) (dismissing FCA claims for failure to satisfy Rule 9(b) where plaintiff alleged false statements were made during certain months and at certain locations but failed to allege "exactly where and when those statements were made," "the date or dates on which these statements were made," or "the individuals responsible for making the statements"); *Barmak*, 2003 WL 21436213, at *6 (dismissing FCA claims because complaint did not "outline the who, what, when, and where" of fraudulent claims submitted to the government); *DeCarlo*, 937 F.Supp. at 1050-51 (dismissing FCA claims where complaint failed to refer to specific employees who may have been involved in submitting false claims and lacked specificity in describing the respective dates of instances of fraud).

27

or the substance of any false claim or why the claim was false. *See DeCarlo*, 937 F.Supp. at 1051 (dismissing FCA claim because it did not allege the exact date the false claim was made, the place where the alleged fraud took place, the identity of the person who submitted the false claim, to whom the claim was submitted to or the general substance of the allegedly false claim). Relator's "[c]onclusory allegations of fraud will not suffice under Rule 9(b)." *Vallejo*, 2 F.Supp.2d at 337 (citing *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1004 (2d Cir. 1988). Thus, as Relator's Complaint fails to plead fraud with the particularity required by Rule 9(b), it must be dismissed.

> **C.    Relator's Complaint Should Be Dismissed For Failure to Plead Any Particulars Regarding Defendants' Alleged Fraudulent Scheme That Resulted in the Submission of False Claims**
>
> > **i.    An FCA Complaint Must Allege Specific Details Regarding the Fraudulent Scheme That Allegedly Led to the Submission of False Claims**

In addition to specifying the false claims submitted to the Government, an FCA complaint must detail the underlying conduct that allegedly resulted in the submission of false claims. *See Cardiac Devices*, 221 F.R.D. at 337 (FCA complaint that alleges only a general scheme of fraud that might have resulted in the submission of a false claim is insufficient); *Capella*, 2000 WL 1336487, at *11 (General allegations of conspiracy do not meet particularity requirements of Rule 9(b)). "Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the 'circumstances constituting fraud or mistake' that must be pled with particularity pursuant to Rule 9(b)." *Karvelas*, 360 F.3d at 232.

> > **ii.    Relator's Complaint Fails to Plead Any Particulars Regarding Defendants' Alleged Fraudulent Scheme**

Not only does Relator's Complaint fail completely to identify a single specific false claim for payment that any Defendant submitted to the Government, Relator fails to plead with

28

{D0474881.1}

particularity the underlying fraudulent conduct that generated the allegedly false claims. Relator fails entirely to specify how any Defendant contributed to the alleged fraudulent nature of NCSTAR 1. Moreover, Relator fails to attribute specific instances of fraud to any individual Defendant, instead alleging fraud against all of the 27 named Defendants generally. Finally, Relator does not specify what role any of the Defendants played in the alleged Government-led conspiracy to fabricate the events of September 11. Relator's failure to articulate specifically the fraudulent conduct that preceded Defendant's alleged submissions of false claims for payment requires dismissal of her FCA claims.

### 1.    Relator Fails to Explain How the Defendants Contributed to the Alleged Fraudulent Nature of NCSTAR 1

NCSTAR 1 was prepared solely by NIST. Indeed, NCSTAR 1 states: "The content of the reports and recommendations … are solely the responsibility of NIST." NCSTAR 1, p. xxxii. Thus, Relator has not, and indeed cannot, attribute a single allegedly fraudulent word in NCSTAR 1 to any of the Defendants.

Relator also fails to provide any detail to support her allegation that somehow Defendants contributed to the allegedly fraudulent nature of NCSTAR 1. Relator merely alleges that NIST personnel were "misled by the defendants' fraudulent acts and/or omissions" and that Defendants submitted false statements with the intent of "steering NIST away from a consideration of what caused the destruction of WTC1,2; which, as elsewhere elaborated upon, was the use on 9/11/01 of exotic weaponry known as directed energy weapons." Compl., ¶¶ 2, 5. Ultimately, Relator alleges that NIST falsified NCSTAR 1 "at the behest and with the urging, backing and/or combined manipulative power of the defendants, acting singularly, collectively, overtly, covertly and otherwise." Compl., ¶ 52. Yet, Relator fails to provide a single detail regarding Defendant's role in this alleged conspiracy or identify a single false claim made in the furtherance of this

29

{D0474881.1}

supposed conspiracy. Nowhere does Relator specify a Defendant, provide an employee's name, a date, the content of any discussions or communications, or any other particulars indicative of a conspiracy. Without specific allegations regarding their supposedly fraudulent conduct in relation to NCSTAR 1, Defendants are unable to properly defend against Relator's claims. *See O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991) (the particularity requirement of Rule 9(b) serves to "provide a defendant with fair notice of a plaintiff's claim")

## 2.    Relator Fails to Attribute Specific Instances of Fraud to Specific Defendants

Relator's 32-page Complaint purports to describe an immensely large and complex conspiracy undertaken by 27 co-conspirators (and the United States Government). Yet, Relator's Complaint does not even attempt to identify what specific fraudulent actions are attributable to any individual Defendant. Rule 9(b) requires Relator to "connect the allegations of fraud to each individual defendant." *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York,* 808 F.Supp. 213, 230 (S.D.N.Y. 1992) (citing *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir. 1986); *Landy v. Mitchell Petroleum Tech. Corp.,* 734 F.Supp. 608, 620 (S.D.N.Y. 1990) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint shall inform each defendant of the nature of his alleged participation in the fraud")). Relator's Complaint impermissibly relies on "sweeping references to acts by all or some of the defendants" without apprising the individual Defendants of what exactly they are accused. *Center Cadillac,* 808 F.Supp. at 230. Thus, Relator's Complaint fails to satisfy the requirements of Rule 9(b) and must be dismissed.

30

{D0474881.1}

3.    **Relator Fails to Specify to What Extent NIST Was Complicit With the Defendants in the Alleged Fraud**

Finally, as outlined above, Relator's Complaint contains conflicting allegations that NIST was both complicit in the alleged conspiracy and defrauded by it.  The central allegation of Relator's Complaint is that NCSTAR 1 is incorrect and fraudulent.  Relator alleges that NIST fraudulently narrowed the focus of its investigation to exclude any analysis of the structural behavior of the WTC Towers after collapse became inevitable,[9] and that "NIST ... contributed to and/or facilitated the fraudulent scheme herein described and which has succeeded, thus far, in fraudulently presenting a false and misleading, fraudulent and illegal report on what caused the destruction on 9/11/01 of the WTC complex."  Compl., ¶ 54.  However, these allegations assert wrongdoing by NIST, not Defendants.  This distinction is crucial, as NIST's complicity in any alleged conspiracy precludes a finding that Defendants knowingly submitted false claims under the FCA.  *See Kreindler*, 985 F.2d at 1157.  Because Relator failed to properly plead the alleged fraud with the particularity required by Rule 9(b), Relator's FCA claims must be dismissed.

**V.    Relator's Claims are Frivolous and Should Be Dismissed**

As noted above, Relator's Complaint is predicated on her allegation that "rogue elements" within the United States Armed Forces destroyed the WTC Towers using lasers orbiting in space and then tricked the world into believing aircraft struck the tower through some type of "psychological operation."  Compl., ¶¶ 9, 10, 11.  Relator's allegations define the concept of a frivolous action.  Notably, the Government, the real party in interest in this *qui tam* action,

---

[9]    In Footnote 2 of NCSTAR 1, NIST stated that the Report "includes little analysis of the structural behavior of the tower after the conditions for collapse initiation were reached and collapse became inevitable."  p. xxxvii.  Relator alleges that with this statement, NIST violated its "statutory mandate" by "openly narrow[ing] and limit[ing] its stated mandate."  Relator states that NIST's "innocuous sounding admission that [it] did not carry out its statutory function or mandate was caused by fraud and deceit and is the subject of this Qui Tam lawsuit."  Compl., ¶ 6.

31

explicitly asserted that similar allegations asserted by Relator's attorney in the Haas Suit were frivolous and should be dismissed. *See* Haas Suit, Aff. ¶ 8, Ex. E, Memo. In Supp. of Government Defs.' Motion to Dismiss in *Haas v. Secretary*, No. 07-CIV-3623(VM) (S.D.N.Y. filed May 10, 2007), p. 9.

It is well settled that a district court can dismiss frivolous actions *sua sponte. Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362 (2d Cir. 2000); *Mallard v. United States District Court*, 490 U.S. 296 (1989); s*ee also Tyler v. Carter*, 151 F.R.D. 537 (S.D.N.Y. 1993) (dismissing case *sua sponte* where plaintiff, a self-proclaimed "cyborg," alleged that various public figures, including Jimmy Carter, Bill Clinton and Ross Perot, were engaged in a conspiracy to reinstitute slavery and breed humans for recreational murder), *aff'd* 41 F.3d 1500 (2d Cir. 1994). Indeed, "as courts of first instance, district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need [than do appellate courts] for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources." *Fitzgerald*, 221 F.3d at 364. Moreover, the district courts' power to dismiss frivolous claims extends to both <u>legally</u> and <u>factually</u> frivolous claims. *See, e.g. Bloom v. United States Government*, No. 02Civ.2352DABDF 2003 WL 22327163, at *5 (S.D.N.Y. Oct. 10, 2003) (factual allegation that is "clearly baseless … cannot support a valid cause of action") (citing *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990)). In *Bloom*, this Court dismissed the plaintiff's complaint pursuant to Rule 12(b)(6) where the plaintiff alleged that "the Government and its agents conspired and attempted to lynch and murder [the plaintiff] by repeatedly drugging him with a variety of substances over a nine-year period." *Id.* at *1 The Court reasoned that "the complaint fail[ed] to provide 'the factual basis necessary to enable [the Government] intelligently to prepare [its] defense.'" *Id.* at *5 (quoting *Ostrer v. Aronwald,* 567 F.2d 551, 553

32

{D0474881.1}

(2d Cir. 1977)). Similarly, Defendants will be unfairly prejudiced if they are required to mount a defense against Relator's preposterous claims. Thus, because further litigation would only needlessly consume judicial resources and waste the time and money of all the parties involved, this Court should dismiss Relator's Complaint.

## VI. ARA Should be Awarded Attorneys' Fees and Expenses Pursuant to 31 U.S.C. § 3730(d)(4)

Section 3730(d)(4) provides for reasonable attorneys' fees and expenses to a prevailing defendant in a *qui tam* action if the court "finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment."

A claim is frivolous if it has no arguable support in existing law or any reasonable based suggestion for its extension. *United States ex rel. Bain v. Georgia Gulf Corp.*, 208 Fed. Appx. 280, 283 (5th Cir. 2006). A claim is vexatious when the plaintiff brings the action for an improper purpose, such as to annoy or harass the defendant. *Id.* Either of these grounds is independently sufficient to support an award of attorneys' fees under § 3730(d)(4). *Id.*

In this case, this Court lacks subject matter jurisdiction over Relator's claims based upon the public disclosure bar and because Relator is not an original source. Given Relator's overwhelming failure to establish subject matter jurisdiction, this suit is frivolous and vexatious and justifies an award to Defendants of attorneys' fees and expenses. Moreover, Defendants have had to face three cases arising out of the same conspiracy theory. Besides Relator's case, ARA has been named as a Defendant in the Haas Suit and the Reynolds Suit. Given the number of cases in which Defendants have been named based upon these same facts, it is apparent that the instant case was intended only to harass Defendants and garner further publicity for Relator's conspiracy theories. For this reason as well, Defendants should be awarded attorneys' fees and expenses.

33

{D047488l.1}

## CONCLUSION

For the reasons outlined above, the Court lacks subject matter jurisdiction over Relator's FCA claims. Furthermore, Relator's Complaint fails to state a claim upon which relief can be granted and fails to plead fraud with particularity under Rule 9(b). Finally, Relator's Complaint is egregiously frivolous. Accordingly, Defendants ARA respectfully requests the Court dismiss the Complaint in its entirety. Further, ARA should be awarded attorneys' fees and expenses.

Dated: January 23, 2008
      Denver, Colorado

**s/ Wm. David Byassee**
Adam S. Ennis
SDNY Bar No. AE9468
Jackson Kelly PLLC
Three Gateway Center, Suite 1340
Pittsburgh, PA 15222
Telephone:    412-434-8804
Facsimile:    412-434-8062
Email:    aennis@jacksonkelly.com

Wm. David Byassee, Esq.
(admitted *pro hac vice*)
Jackson Kelly PLLC
1099 18th Street, Suite 2150
Denver, Colorado 80202
Telephone:    303-390-0188
Facsimile:    303-390-0177
Email:    dbyassee@jacksonkelly.com

*Counsel for Applied Research Associates, Inc.*

{D0474881.1}