UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. JUDY WOOD on behalf of the<br>UNITED STATES OF AMERICA,<br><br>    Plaintiff/Relator,<br><br>vs.<br><br>SCIENCE APPLICATIONS INTERNATIONAL CORP.; APPLIED RESEARCH ASSOCIATES INC.; BOEING; NuSTATS; COMPUTER AIDED ENGINEERING ASSOCIATES, INC.; DATASOURCE, INC.; GEOSTAATS, INC.; GILSANZ MURRAY STEFICEK LLP; HUGHES ASSOCIATES, INC.; AJMAL ABBASI; EDUARDO KAUSEL; DAVID PARKS; DAVIS SHARP; DANIELE VENEZANO; JOSEF VAN DYCK; KASPAR WILLIAM; ROLF JENSEN & ASSOCIATES, INC.; ROSENWASSER/GROSSMAN CONSULTING ENGINEERS, P.C.; SIMPSON GUMPERTZ & HEGER, INC.; S.K. GHOSH ASSOCIATES, INC.; SKIDMORE, OWINGS & MERRILL, LLP; TENG & ASSOCIATES, INC.; UNDERWRITERS LABORATORIES, INC.; WISS, JANNEY, ELSTNER ASSOCIATES, INC.; AMERICAN AIRLINES; SILVERSTEIN PROPERTIES; and UNITED AIRLINES,<br><br>    Defendants. | Case No. 07 CV 3314 (GBD)<br><br>**AFFIRMATION OF**<br>**DAVID M. POLLACK**<br>**IN SUPPORT OF**<br>**MOTION TO DISMISS** |

I, David M. Pollack, do hereby depose and state as follows:

1.      I am an attorney at law and a member in good standing of the Bar of the State of New York and of this Court.

2.      I am a partner at the law firm of Donovan Hatem LLP. I represent the defendants, Simpson Gumpertz & Heger, Inc. ("SGH") and Computer Aided Engineering Associates, Inc. ("CAE") in this action.

3.  I am submitting this Affirmation in support of Defendants Simpson Gumpertz & Heger, Inc. and Computer Aided Engineering Associate's Inc.'s pre-Answer Motion to Dismiss Pursuant To Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(6) and 12(h)(3).

### Preliminary Statement and Introduction

4.  On April 25, 2007, the relator in this case, Dr. Judy Wood ("Wood") commenced this *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729-33, by filing a *qui tam* Complaint (the "Complaint") under seal in the United States District Court for the Southern District of New York against twenty-seven defendants[1] including Simpson Gumpertz & Heger, Inc. ("SGH") and Computer Aided Engineering Associates, Inc. ("CAE").

5.  On September 12, 2007, the Court (George B. Daniels, U.S.D.J) entered an Order stating that the United States has declined to intervene in the action and the *qui tam* Complaint should be unsealed. The unsealed Complaint alleged seven causes of action against all defendants, as follows: (1) False Claims Act, 31 U.S.C. § 3729(a)(1) (Presentation of False Claims); (2) False Claims Act, 31 U.S.C. § 3729(a)(2) (Making or Using False Record or Statement); (3) False Claims Act, 31 U.S.C. § 3729(a)(7) (Reverse False Claims); (4) Unjust Enrichment; (5) Payment by Mistake; (6) Recoupment of Overpayments; (7) Common Law Fraud. The Court authorized Wood to serve her *qui tam* Complaint, but the Complaint was not served on defendants SGH or CAE.

6.  On December 28, 2007, Dr. Wood filed a First Amended Complaint against all of the 27 named defendants. The First Amended Complaint alleges the same three causes of

---

[1] The defendants are as follows: (1) Applied Research Associates, Inc.; (2) Science Applications International Corp.; (3) Boeing; (4) NuStats; (5) Computer Aided Engineering Associates, Inc.; (6) Datasource, Inc.; (7) Geostaats, Inc.; (8) Gilsanz Murray Steficek LLP; (9) Hughes Associates, Inc.; (10) Ajmal Abbasi; (11) Eduardo Kausel; (12) David Parks; (13) David Sharp; (14) Daniele Venezano; (15) Josef Van Dyck; (16) Kaspar William; (17) Rolf Jensen & Associates, Inc.; (18) Rosenwasser/Grossman Consulting Engineers, P.C.; (19) Simpson Gumpertz & Heger, Inc.; (20) S.K. Ghosh Associates, Inc.; (21) Skidmore, Owings & Merrill, LLP; (22) Teng & Associates, Inc.; (23) Underwriters Laboratories, Inc.; (24) Wiss, Janney, Elstner Associates, Inc.; (25) American Airlines; (26) Silverstein Properties; and (27) United Airlines.

action under the False Claims Act: (1) False Claims Act, 31 U.S.C. § 3729(a)(1) (Presentation of False Claims); (2) False Claims Act, 31 U.S.C. § 3729(a)(2) (Making or Using False Record or Statement); (3) False Claims Act, 31 U.S.C. § 3729(a)(7) (Reverse False Claims). The First Amended Complaint differs from the original Complaint because it does not contain any of the above-mentioned common law causes of action that were initially asserted by Wood in the original Complaint.

7. Defendants SGH and CAE have not answered the Complaint, and move instead herein, to dismiss this *qui tam* action pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(6) and 12(h)(3).

8. Specifically, Wood's FCA claims should be dismissed pursuant to Rules 12(b)(1) and (h)(3) for lack of subject matter jurisdiction under the FCA's Original Source Rule, 31 U.S.C. § 3730(e)(4)(A), because Wood has provided no factual basis in her First Amended Complaint to support the FCA statutory requirement that she must be the original source of the information forming the basis for his FCA claims.

9. Additionally, Wood's First Amended Complaint should be dismissed under Rule 12(b)(6) because she has failed to provide sufficient detail about her theory of FCA liability, or about any specific fraudulent claim, and has failed to provide the requisite particularity under the heightened pleading standard of Rule 9(b), which applies to suits under the FCA.

10. Wood alleges improper billing in a conclusory manner and fails to identify even a single specific instance of the defendants SGH or CAE submitting a fraudulent bill to the government. Therefore the Complaint lacks the detail and specificity required by Rule 9(b).

11.     Additionally, Dr. Wood's' FCA claims should be dismissed under Rule 12(b)(1) and (h)(3) because they are based upon the same information which she presented to the National Institute of Standards and Technology ("NIST"), in the form of a Request for Correction ("RFC"). On January 10, 2008, NIST issued a decision denying Wood's appeal, which requested the reconsideration of NIST's July 27, 2007 denial of her RFC. NIST made clear in its January 10, 2008 decision that "[t]he reported findings and conclusions in the NCSTAR reports are NIST's alone." See Decision of the United States Department Of Commerce, National Institute of Standards and Technology, dated January 10, 2008 (attached hereto as Exhibit "A.").

12.     Additionally, Wood's FCA claims should be dismissed because 15 U.S.C.S. § 281a provides as follows:

> § 281a.    Structural Failures
>
> The National Bureau of Standards [National Institute of Standards and Technology], . . . may initiate and conduct investigations . . .[n]o part of any report resulting from such investigation or from an investigation under the National Construction Safety Team Act [15 USCS §§ 7301 et seq.] shall be admitted as evidence or used in any suit or action for damages arising out of any matter mentioned in such report.

See 15 U.S.C.S. § 281a.

**Facts Alleged In The First Amended *Qui tam* Complaint**

13.     Dr. Wood's allegations revolve primarily around a report issued by the National Institute of Standards and Technology ("NIST"), an agency of the United States Department of Commerce. NIST was authorized under the National Construction Safety Team Act ("NCST"), 15 U.S.C.S. § 7301, to investigate the destruction of the World Trade Center complex ("WTC"). First Amended *Qui Tam* Complaint, ¶¶ 3, 4.

14. Wood alleges that NIST had a budget of sixteen million ($16,000,000) and contracted with each of the twenty-seven defendants to assist in the investigation of what caused the destruction of the Twin Towers of the WTC ("WTC 1, 2"). Id. On October 26, 2005, NIST issued a report entitled "Final Reports of the Federal Building and Fire Investigation of the World Trade Center Disaster" ("NCSTAR 1").

15. Dr. Wood complains that the statutory purpose of the NIST investigation was to "determine why and how WTC1 and WTC2 collapsed following the initial impacts of the aircraft," but due to defendants' fraud and deceit, NIST changed the focus of NCSTAR 1 to a study of the "probable collapse sequence." Id. ¶¶ 5-6. Wood alleges that NIST first described its mandate as "determining what caused the destruction of WTC 1,2" but then "NIST openly declined to carry it out" by "intentional and admitted modification and narrowing of the scope of that stated objective and mandate." Id. ¶ 52.

16. Although NIST is not named as a defendant, Wood accuses NIST of being aware that "it did not carry out its statutory madate," id. at ¶ 6, and she states that NCSTAR 1 is fraudulent on its face, stating "[i]t is also clear and apparent on its face that NIST's explanation of the destruction of WTC 1, 2 issued in ... September, 2005, is blatantly false, incomplete, misleading and fraudulent." Id. ¶ 52 (emphasis added). Thus, she accuses NIST of intentionally presenting a "false and misleading, fraudulent and illegal report," id. and states that the "admission that NIST did not carry out its statutory function or mandate . . . is the subject of this Qui Tam lawsuit." Id. at ¶ 6.

17. Wood alleges that NIST and the defendants knowingly participated in a "scheme" to cover up the truth that the "destruction of the WTC on September 11, 2001 was

5

caused ... by the use of Directed Energy Weapons consisting in High Energy Lasers and ... other secret weapons." Id. at ¶¶52-55.

17.     She asserts that defendants Science Applications International Corporation ("SAIC) and Applied Research Associates, Inc. ("ARA") have a primary expertise in the "development of Directed Energy Weapons (DEW) and psychological operations (psy ops)" and that it is a "small wonder, then, that NIST did not investigate what caused the destruction of WTC 1, 2; namely DEW, carried out in the manner of a psy op." Id. ¶ 9, 24. Wood alleges that in January 2006, the defendant Boeing was awarded an Air Force Contract for Directed Energy and Space Surveillance Research & Development, and is presently developing an "Airborne Laser (ABL) that serves as a platform for the use of High Energy Lasers (HEL) that ... have the capacity to pulverize steel [and] destroy buildings in mere seconds, as happened to WTC 1, 2 on 9/11/01." Id. ¶ 25.

18.     Wood alleges that NIST purposefully contracted with defense contractors such as SAIC, ARA and Boeing because these defendants could produce a report that would conceal or divert attention from the fact that directed energy weaponry destroyed the WTC complex. Complaint ¶ 51. Specifically, the Complaint alleges NIST's intent to conceal the use of directed energy weapons as follows:

> In other words, NIST contracted with those who have the greatest familiarity with directed energy weapons <u>in order to produce a report that sought to go to any length necessary to avoid, disguise, omit and otherwise divert attention away from the actual, real and intended destruction of the WTC complex by use of one device, namely directed energy weaponry,</u> while pretending that the cause was the result of conditions that would be impossible based on the extent to which the NIST report, NCSTAR 1 violated both the laws of physics and common sense.

Id. ¶ 53.

6

19. Wood states that the NSTAR 1 report found "no piece of steel that had been subjected to a temperature higher than 600 degrees C . . . yet that NIST offered no explanation whatsoever for the visual confirmation that most of the steel of the WTC complex turned to dust." Id. ¶ 53. She contends there is proof of directed energy weapons because steel that was "melted, warped . . . and in other respects deformed . . . or utterly disintegrated and turned to dust" and this "could not have reasonably resulted from the effects of gravity, kerosene and/or crash impact damage." Id. ¶ 15. She complains that "NIST has not offered any explanation whatsoever as to what caused the . . . dustification . . . of WTC1,2." Id. 21, 32.

20. The First Amended Complaint alleges that the defendants knowingly submitted cost reports, requisitions, and billing statements from 2002 through September 2005 that contained false claims for reimbursements concerning their work, id. ¶ 56, because the defendants "knew they included costs that the actual cause of the destruction of the WTC complex was the result of the use of directed energy weapons." Id. ¶ 60.

21. Wood's First Amended Complaint does not identify *any* specific conduct by defendant Computer Aided Engineering Associates, Inc. ("CAE") or Simpson Gumpertz & Heger, Inc. ("SGH"). She alleges that CAE "should have [known] that . . . the residue from [WTC1,2] was consistent with the use of DEW." Id. ¶ 27. She alleges that SGH "chose to use its expertise to commit fraud based on either withholding information or manipulating information and by then accepting payment improperly."[2] Id. ¶ 35.

22. Wood alleges that she is an "original source" of the allegations of fraud set forth in her First Amended Complaint. Id. ¶¶ 15, 19, 55. She says that on March 16, 2007, she submitted a Request for Correction ("RFC") to NIST which challenged NCSTAR "in its entirety" Id. ¶ 7, and that her March 16th RFC, together with a "Supplement No. 1" she filed

---

[2] Wood repeats this same general statement against nearly every defendant.

7

with NIST on March 29, 2007 and a "Supplement No. 2" filed with NIST on April 20, 2007, id. ¶ 8, contain the "original source" information. Id. ¶¶ 15, 55. In particular, she alleges that her March 16, 2007 RFC "placed NIST on notice that false claims had been submitted to the government" and that she is "the original source of that claim." Id. ¶ 55.[3]

### B. Facts Alleged In Dr. Wood's March 16, 2007 Request For Clarification

23. On March 16, 2007, Dr. Wood filed a "Request for Correction per Section 515 of Public Law 106-554" with NIST. The March 16, 2007 RFC is 43 pages long and is attached to her First Amended Qui Tam Complaint as Exhibit "A."

24. Dr. Wood alleges that she obtained a copy of NCSTAR 1-2 on the NIST website, and provides references to the specific NIST web site addresses where she found the purportedly "fraudulent" information. Specifically, she states, "The source of the said NCSTAR 1, meaning the point at which it can be and has been accessed, is: http://wtc.nist.gov/reports october05.htm." Ex. A, p. 1. Wood contends that NCSTAR 1 is "so fundamentally flawed . . . that the entire document should be corrected, starting with its very title, down through and including its thirtieth (30th) and final recommendation." Id., p. 2. She argues that the NIST report violates two laws of physics -- The Law of Conservation of Momentum; and The Law of Conservation of Energy." Id.

25. Wood's March 16, 2007 RFC sets forth a table of "Issues Confirming that NCSTAR 1 is Fraudulent" which she alleges confirm that NCSTAR is fraudulent. Id., p. 6. These so-called issues are supported by Figures 1 through 66 -- information already in the public domain when she filed her RFC -- such as photographs taken by others; a satellite image

---

[3] This statement is inaccurate because Dr. Morgan Reynolds filed an RFC with NIST on March 8, 2007, approximately one week before Dr. Wood. Dr. Reynolds' earlier-filed RFC questions the accuracy of the NCSTAR report and makes similar allegations that the report violates elementary laws of physics.

of the WTC by The National Oceanic and Atmospheric Administration (NOAA); videos from September 11, 2001 which she states can be seen on-line at various web-site addresses; a seismic signal from Columbia University's seismographic recording station; and a "billiard ball" free-fall explanation which she had published on her website before she filed the RFC. She argues that all of this public information provides visual evidence of her theories. Id. p. 15.

26.  Wood notes additionally that "the public domain contains a wealth of information on the development and current status of DEW," and she lists at least six web sites where the public information can be found. Id., p. 32.

### Facts Alleged In Dr. Wood's March 29, 2007 Supplement #1 to RFC

27.  On March 29, 2007, Wood filed a Supplement #1 to the March 16, 2007 RFC which is attached to the First Amended Qui Tam Complaint as Exhibit "A." Supplement #1 requests the correction of NCSTAR 1 "to disclose the extent to which ARA is a manufacturer of directed energy weapons." Ex. B, p. 1.

### Facts Alleged In Dr. Wood's April 20, 2007 Supplement #2 to RFC

28.  On April 20, 2007, Wood filed a Supplement #1 to the March 16, 2007 RFC which is attached to the First Amended Qui Tam Complaint as Exhibit "A" Supplement #2 attaches various witness statements as exhibits. She alleges that NIST ignored eyewitness testimony that is consistent with her claim that "directed energy weaponry are a causal factor in the destruction of the Twin Towers." Ex. C.

29.  The National Institute Of Standards And Technology Guidelines, Information Quality Standards, And Administrative Mechanism ("NIST Guidelines") establish an administrative process for information correction requests and appeals. See National Institute Of

Standards And Technology Guidelines, Information Quality Standards, And Administrative Mechanism, http://www.nist.gov/director/quality_standards.htm.

30. On January 10, 2008, NIST denied Wood's August 22, 2007 appeal which had asked for reconsideration of NIST's July 27, 2007 denial of her RFC. NIST stated, "the NIST WTC Investigation reports need no correction . . ." Ex. A. Additionally, NIST clarified that "[t]he reported findings and conclusions in the NCSTAR reports are NIST's alone." Id.

31. Every court which has been presented with an IQA claim has recognized that there is no private right of action under the IQA, and has dismissed the lawsuit due to lack of a right to judicial review of IQA information correction requests.

32. Finally, Wood is precluded from using any part of the NCSTAR report as evidence of the present lawsuit, which has been brought under the FCA, because 15 U.S.C. § 281a provides:

> The National Institute of Standards and Technology . . . may initiate and conduct investigations to determine the causes of structural failures in structures which are used . . . by the general public. No part of any report resulting from such investigation shall be admitted as evidence or used in any suit or action for damages arising out of any matter mentioned in such report.

See 15 U.S.C. § 281a (emphasis added). In short, Wood is precluded by 15 U.S.C. § 281 from using any part of the NCSTAR report as evidence in this suit under the FCA, which is seeking damages arising out of matters mentioned in the report.

WHEREFORE, for the reasons set forth herein and in the accompanying memorandum of law, the motion to dismiss should be granted in its entirety.

        /s/ David M. Pollack
        David M. Pollack (DP6143)
        DONOVAN HATEM LLP
        Attorneys for Defendants
        SIMPSON GUMPERTZ & HEGER, INC.
        and COMPUTER AIDED ENGINEERING
        ASSOCIATES, INC.
        One Penn Plaza
        250 W. 34th Street
        Suite 3324
        New York, NY 10119
        (212) 244-3333

Dated: New York, New York
       February 28, 2008

01140619//2550.144