Jerry V. Leaphart #JL4468
Jerry V. Leaphart & Assoc., P.C.
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 – phone
(203) 825-6256 – fax
jsleaphart@cs.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DR. JUDY WOOD, on behalf of<br>The United States of America | : | |
| | : | |
| Plaintiff, | : | <u>ECF CASE</u> |
| | : | |
| vs. | : | February 29, 2008 |
| | : | |
| APPLIED RESEARCH ASSOCIATES, INC.,<br>et al | : | 07 CIV 3314 (GBD) |
| | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN OPPOSITION TO
## <u>DEFENDANTS' MOTIONS TO DISMISS</u>

February 29, 2008

Jerry V. Leaphart
Attorney for Plaintiff
On the Brief

## ORAL ARGUMENT REQUESTED
## <u>TESTIMONY MAY BE REQUIRED</u>

## **TABLE OF CONTENTS**

Overview . . . . . . . . . . . . . . . . . . . . . . 1

The Motions to Dismiss . . . . . . . . . . . . . . . 8

Statement of the Case . . . . . . . . . . . . . . . 8

Procedural History . . . . . . . . . . . . . . . . . 16

Argument . . . . . . . . . . . . . . . . . . . . . 17

       A)  Rule 12(b)1 . . . . . . . . . . . . . . . . . 17

       B)  Rule 12(b)6 . . . . . . . . . . . . . . . . . 24

             False Claims . . . . . . . . . . . . . . 26

             Transmission of Money . . . . . . . . . . 27

             Implausible . . . . . . . . . . . . . . . 28

             Improper Citation of Authority . . . . . . . . 30

       C)  Rule 9(b) . . . . . . . . . . . . . . . . . 39

Conclusion . . . . . . . . . . . . . . . . . . . . 43

# TABLE OF AUTHORITIES

## Cases

Gold v. Morrison-Knudsen Co.,
  68 F.3d 1475, 1476 (2d Cir. 1995)................................................................ 39

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,
  507 U.S. 163, 168, 122 L. Ed. 2d 517, 113 S.Ct. 1160 (1993)..................... 41

Mikes v. Straus,
  274 F.3d 687, 696 (2d Cir. 2001)................................................................. 26

Mikes v. Straus,
  274 F.3d 687, 703 (2d Cir. 2001)
  (quoting Hagood v. Sonoma County Water Agency,
  81 F.3d 1465, 1478 (9th Cir.1996)). ........................................................... 42

Mills v. Polar Molecular Corp.,
  12 F.3d 1170, 1175 (2d Cir. 1993)............................................................... 39

Rockwell Int'l Corp. v United States,
  127 S. Ct. 1397, 1407; 167 L. Ed. 2d 190, (2007). ...................................... 30

Rockwell Int'l Corp. v United States,
  127 S. Ct. 1397; 167 L. Ed. 2d 190, (2007) ................................................... 9

Rockwell Intern. Corp. v. U.S.,
  127 S. Ct. 1397, 1402, 167 L. Ed. 2d 190 (2007) ........................................ 18

Sr Intl Bus. Ins. Co. Ltd, et al. v. World Trade Center Props. LLC,
  467 F.3d 107; (2nd Cir. (2006)………………………………………………….. 23

Swierkiewicz v. Sorema N.A.,
  534 U.S. 506, 513, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002).......................... 41

U.S. ex rel Winslow v. Pepsico, Inc. et al.
  2007 U.S. Dist. LEXIS 40024 ...................................................................... 18

U.S. ex rel Winslow v. Pepsico, Inc. et al.
  2007 U.S. Dist. LEXIS 40024 (SDNY)...................................................... 9, 18

U.S. ex rel. Stinson, Lyons, Gerlin & Bustgamante, PA, v
  The Prudential Insurance Company,
  944 F.2d 1149 (3rd Cir.  1991) .................................................................... 30

U.S. v. New York Medical College,
  252 F.3d 118, 120 (2d Cir. 2001)................................................................. 18

United States ex rel. Dick Long Island Lighting Co.,
  912 F.2d 13, 18 (2nd Cir. 1990)................................................................... 31

United States ex rel. Dick Long Island Lighting Co.,
  912 F.2d at 16 .............................................................................................. 31

United States v. Krizek,
  324 U.S. App. D.C. 175, 111 F.3d 934, 942-43 (D.C. Cir. 1997) ................ 27

US ex rel. Kreindler & Kreindler v. United Technologies Corp.
  985 F.2d 1148 (2nd Cir. 1993)………………………………………………..30

United States v. Neifert-White Co.,
  supra, 390 U.S. at 232. ................................................................................. 28

United States v. Raymond & Whitcomb Co.,
 53 F. Supp. 2d 436, 444-445 (S.D.N.Y. 1999) ............................................................ 25

Wexner v. First Manhattan Co.,
 902 F.2d 169, 172 (2d Cir. 1990)................................................................................ 42

## Statutes

31 U.S.C. § 3730 (e)(3)................................................................................................ 22
31 U.S.C. § 3729 (a)(7)................................................................................................ 26
31 U.S.C. § 3729 (b)................................................................................................... 42

## Other Authorities

False Claims Act, 31 U.S.C. §3729 , et seq.................................................................. 10
NCSTAR 1 ................................................................................................................ 20
NCSTAR 1 ................................................................................................................ 20
Public Law 106-554 ................................................................................................... 22

## Rules

F.R.Civ.P Rule 11 ...................................................................................................... 2,12
F.R.Civ.P Rule 12(b)1 ............................................................................................... 10
F.R.Civ.P Rule 12(b)6 ............................................................................................... 10, 12
F.R.Civ.P Rule 9(b) ............................................................................................... 10, 12, 39
F.R.Civ.P. Rule 9(b) .................................................................................................. 39
F.R.Civ.P.Rule 9(b) .................................................................................................... 3
F R.Civ.P.Rule 12 (b)(6) ............................................................................................ 24

OVERVIEW

This case alleges fraud in the preparation of the "Final Report on the Collapses of the Twin Towers of the World Trade Center – NCSTAR 1" (NCSTAR 1) by the National Institute of Standards and Technology (NIST) over a period of years, commencing in about June 2003, and culminating in its publication in or about the month of October, 2005 (False Claims Period). The defendants herein provided millions of dollars of fraudulent expert consulting services to NIST by participating in an investigation that "did not investigate the actual collapses," irrespective of the above quoted title. Not only that, the nature of the scheme consisted primarily in obfuscation through a process of excessive detail, preparation of minutiae so as to deceive the public and the government into thinking NCSTAR 1 was both valid and thorough, when it was not. NCSTAR 1 is so text intense that the defendant Skidmore, Owings & Merrill (SOM) required six (6) separate filings simply to download the basic 298 page NCSTAR 1 report into the record in this case (Docket #10 and/or #19). And, that basic report is but the "tip of the iceberg" of subterfuge. NCSTAR 1 also contains an additional 10,000 pages of text and data intensive material which, as will be confirmed hereunder, was intentionally fraudulent and was prepared so as to be fraudulent, deceptive and misleading in the extreme by reliance upon excessive detail of useless information.

One additional element of this scheme continues to the present. That is the defendants' placement of heavy reliance upon F.R.Civ.P.Rule 9(b) (see infra), is a continuation of the fraudulent scheme involving obfuscation and deception. The defendants disingenuously claim to want "particulars" in a context where they have intentionally muddled the record so as to make it impracticable in the extreme to be

"particular;" and, with respect to the particularity provided, defendants either ignore it altogether or misstate it so badly as to violate F.R.Civ.P Rule 11.

There are several elements to the defendants' intentional misuse of the issue of particularity. The complaint herein consists in both the complaint itself, together with its Exhibits A – E. Those exhibits include the detailed Requests for Correction (RFC) that are also Exhibits A – C of plaintiff's affidavit. The RFCs themselves include other data, such as witness statements in order to provide a valid factual basis for all assertions made in the RFCs and in the complaint (as well as herein). The said exhibits contain the particulars that comprise the nature of the fraud and how it was committed. In addition, in what can only be described as a masterpiece of informative but nonetheless concise detail, this court is respectfully referred to the annexed Affidavit of Dr. Judy Wood (plaintiff's affidavit). In it, she confirms why and how the Twin Towers of the World Trade Center were destroyed and she proves that the use of directed energy weapons was a causal factor and that the after effects of the use of such weapons has resulted in a non-self-quenching process meaning the destructive process continues to the present.

Plaintiff's RFC states why NCSTAR 1 is fraudulent and plaintiff's RFC details why and how the claim that the Twin Towers were destroyed by directed energy weaponry is substantiated by the evidence that plaintiff has presented. That evidence resulted in a subsequent, specific, rather than general, admission that NIST did not investigate, let alone analyze or make findings with respect to that part of the event, the destructive episode that NIST and the contractors who are defendants herein, were supposed to have reported on.

Right at page 6 of plaintiff's RFC (Exhibit A) she plainly states:

1. The Towers did not collapse.

2. Tipping top of the south tower falsifies the NIST "inevitable collapse" scenario.

3. Particularized destructive effects that NIST ignored, thus rendering NCSTAR 1's conclusions incomplete, inadequate, misleading and/or fraudulent:

    A. Empty Holes indicative of Unusual Energy Impacts.

    B. Almost complete lack of rubble that is likewise indicative of Unusual Energy Impacts

    C. Evidence of Vehicular burn effects, damages effects and literal Toasting of Cars that are indicative of Unusual and Unexplained by NIST Energy Impacts.

    D. Degree of destruction of material that resulted in "Dustification" of the massive Twin Tower and WTC complex structures (other than WTC 7) that are, yet again, indicative of Unusual Energy Impacts that are Unexplained by NIST."

And that is merely page 6 of plaintiff's RFC. Throughout the remainder of her RFC, plaintiff uses data and evidence to demonstrate that those unusual energy impacts are, in fact, consistent with directed energy weaponry.

In her RFC Supp # 1, (Exhibit B of plaintiff's affidavit), the following particulars are found:

"I have elsewhere asserted that the evidence confirms that the World Trade Center towers were felled by use of Directed Energy Weaponry. See pg. 32 of my RFC

3

filed on March 16, 2007.  ARA is a significant manufacturer of directed energy

weapons and/or components thereof."  See Exhibit B plaintiff's affidavit, pg 1.

Then, in her RFC Supp # 2, plaintiff provides accounts of <u>witnesses</u>[1] who actually

observed the very energy impacts that plaintiff asserts are consistent with DEW and who

saw unusual events such as cars and trucks spontaneously 'blowing up' for no apparent

reason and who saw unusual objects in the sky doing unusual things or who were

specifically aware of a 'wave' or 'force' of some unknown variety and who saw people

disappear.  Each statement made in the foregoing sentence is backed by witnesses whose

accounts are in plaintiff's RFCs and reiterated in the annexed affirmation of Jerry V.

Leaphart and/or plaintiff's affidavit.

Equally important, plaintiff names the defendants herein as having committed

fraud by virtue of the following clearly stated declaration in her RFC:

"…I assert that NIST contractors, as listed in NCSTAR 1, including by way of

non-exhaustive example, those listed below, either knew or should have known of

the falsity of NCSTAR 1 as it relates to the use of directed energy weapons."

The above elements of fact, which are all based on either extrinsic data or eyewitnesses,

provide a clear statement of fraud and it comes from documents that Dr. Wood published,

is the original source of, and also caused to be a part of her complaint.

In what can only  be described as a blatantly improper attempt to mischaracterize

this case, including a party opponent and her counsel, defendants have misapplied

binding U.S. Supreme Court authority and the characterization of the information that

---

[1] Each and every claim made by plaintiff that defendants castigate in some way or other is backed by some
form of extrinsic evidence, like eyewitnesses and/or tangible data.  Defendants therefore violated F.R.Civ.P
Rule 11 by seeking to denigrate the plaintiff and her counsel.

this case is based on.  Plaintiff's claims of fraud are specific and will be discussed in

detail hereunder.  Here is what plaintiff's claim is not about:

> "Relator alleges that the Defendants conspired with the United States Government
> to demolish the World Trade Center Towers using lasers orbiting in space and
> then created an elaborate cover story including the lie that aircraft struck the
> World Trade Center 1 as part of this supposed conspiracy."

Notwithstanding that the above is not what plaintiff's complaint says is the source of

fraud, the plaintiff has provided factual information, in the form of extrinsic evidence and

eyewitness accounts, that reference the energy effects consistent with directed energy

weapons and eyewitness accounts of unusual aircraft.  In a court of law, witness

testimony is admissible evidence.

At the website of the Directed Energy Professional Society (DEPS), of which at

least two of the defendants in this case, including Applied Research Associates, Inc.

(ARA) and Science Applications International Corp. (SAIC), are founding members of,

we have the following declaration made in the year 2000 in DEPS' annual publication

entitled "WAVE FRONT:"

> "Lasers in space, lasers in the stratosphere, lasers on and over the battlefield -
> we're at the beginning of an evolutionary new wave of
> weaponry."

It borders on misrepresentation for defendants to ridicule plaintiff by referencing "lasers

orbiting in space," on the one hand, all the while being a founding sponsor of an

organization, DEPS, that, in 2000, was already making published, present tense assertions

about the existence of exactly what defendants' sought to ridicule plaintiff about, on the

other.  In fact, that is misrepresentation and it is actionable.

Clearly, then, it serves no purpose to provide defendants with "particulars" since all they do is either intentionally ignore them or mischaracterize the particulars that have been right in front of them in the form of documents already submitted in this case.

In fact, their request for particulars is but another variety of the willful blindness they have engaged in all along.

Plaintiff, Dr. Judy Wood, is a materials scientist with credentials that are similar, albeit superior in our estimation, to those of defendant Applied Research Associates' "Lead Investigator" on the NCSTAR 1 project, Steven Kirkpatrick.

As noted in plaintiff's affidavit, Dr. Judy Wood is a materials scientist, credentialed as follows:

*   B.S. Civil Engineering, 1981 (Structural Engineering), Virginia Polytechnic Institute and State University in Blacksburg, Virginia.

*   M.S. Engineering Mechanics (Applied Physics), 1983, Virginia Polytechnic Institute and State University in Blacksburg, Virginia.

*   Ph.D. Materials Engineering Science, 1992, from the Department of Engineering Science and Mechanics at Virginia Polytechnic Institute and State University in Blacksburg, Virginia.

As such, Dr. Wood is an Applied Physicist and a Materials Scientist.

In contrast, Steven Kirkpatrick of ARA has similar credentials, but not as much experience as does Dr. Wood:

*   B.S. in Applied Mechanics (with honors), University of California, San Diego, 1983

*   M.S. in Mechanical Engineering, University of California, Berkeley, 1984

*   Ph.D. in Mechanical Engineering, Stanford University,  1999

This introductory comparison is done in order to place this case in proper perspective and to let the court know that plaintiff is far from "delusional" which is a word that defendants used to characterize her and which plaintiff, via counsel, demands retraction of, along with other improper and unethical characterizations.

Dr. Wood is not naïve concerning the gravity of the claims and assertions she is making. After all, Dr. Wood has accused ARA and the other defendants of fraud in connection with their work on NCSTAR 1 and has claimed that they were willfully blind to the plain as day facts confirming the WTC was destroyed by directed energy weapons (hereinafter sometimes referred to as DEW). However, refutation occurs when facts are presented, not slurs.

Dr. Wood received a written reply from NIST dated July 27, 2007 that states in relevant part:

> "[A]s stated in NCSTAR 1, NIST only investigated the factors leading to the initiation of the collapses of the WTC towers, not the collapses themselves".

The above quoted statement confirms, on its face, that while the defendants herein may not want to accept the fact that DEW destroyed the WTC, they cannot claim otherwise because they steered and/or participated in an investigation that, by its own acknowledgment, did not investigate the actual event that their more than 10,000 page report is supposed to have dealt with. So, despite 10,000 pages, not one single word of it actually related to the event that was mandated for investigation; namely: What caused the destruction of the Twin Towers? NIST and the contractors "did not investigate the actual collapses", hence they cannot refute Dr. Wood's claims.

Here we are then, at page 7of this brief, and <u>fraud</u> is already irretrievably and irrefutably proven.  But for Dr. Judy Wood, it is unclear whether the public would ever have learned that NIST "did not investigate the actual collapses".

<u>THE MOTIONS TO DISMISS</u>

Defendants' herein have prepared motions to dismiss falling into three groups as follows:

1 -- Applied Research Associates, Inc (ARA), joined in by Wiss, Janney, Elstner Associates, Inc. (WJE), Rolf Jensen & Associates, Inc (RJA), Underwriters Laboratories, Inc.  (UL) and  Hughes Associates, Inc.(Hughes).

2 -- Skidmore, Owings & Merrill, LLP (SOM), joined by Teng & Associates, Inc. (Teng).

3 – On February 28, 2008, defendant Simpson Gumpertz & Heger, Inc. (SGH), joined by defendant Gilsanz Murray Steficek, LLP (GMS).  As this motion was filed the day before this submittal is to be filed, the treatment of the SGH and GMS motion is not specifically included in this memorandum.

<u>STATEMENT OF THE CASE</u>

This is a case that is governed by <u>Rockwell Int'l Corp. v United States</u>, 127 S. Ct. 1397, 167 L. Ed. 2d 190, (2007).  One group of defendants, Skidmore, Owings and Merrill LLP (SOM) joined by Teng & Associates (Teng), do not acknowledge that Rockwell controls this case for they did not cite it and do not either rely on or attempt to distinguish it.  For that reason, it is asserted that their motion to dismiss should be summarily denied.

For its part, the ARA grouping of defendants cite Rockwell, but then revert to reliance upon one case after another that adheres to the pre-Rockwell definition of "information" for purposes of determining whether a qui tam relator has relied, or not, on publicly disclosed information; and, if so, whether the relator is the original source thereof.  See Argument section, infra.

In addition to being governed by Rockwell, this case is also strikingly similar to and, as well, is fully vetted and informed by a recent unreported decision by one of this court's most respected jurists, Hon. Charles L. Brieant, U.S.D.J. (SDNY).  We here commend onto this court the case entitled U.S. ex rel Winslow v. Pepsico, Inc. et al. 2007 U.S. Dist. LEXIS 40024 (SDNY) (copy annexed to Affirmation of Jerry V. Leaphart as Exhibit 1), which will be discussed at greater length below.  Essentially, that case shows that the three main prongs of defendants' attack on plaintiff's complaint; to wit:  1) lack of jurisdiction under the False Claims Act, 31 U.S.C. §3729 , et seq., relying upon F.R.Civ.P Rule 12(b)1; 2) failure to state a claim, relying upon F.R.Civ.P Rule 12(b)6; and insufficient "particularity" under F.R.Civ.P Rule 9(b) all fail herein, just as they did in Winslow and for the exact same reasons; namely neither NCSTAR 1, nor any other document that defendants referred to contain any allegations or suggestions of fraud with respect to the preparation of and receipt of payment for work done on NCSTAR 1 as it relates to the cause of destruction of the towers.  The only source of that information and claim of fraud are the Requests for Correction filed by Dr. Judy Wood on March 16, 2007, March 29, 2007 and April 20, 2007.  The three documents are abbreviated as RFC 3/16; RFC Supp # 1; and RFC Supp #2, respectively and are annexed to plaintiff's affidavit as Exhibits A, B, and C, respectively.

Clearly, the RFCs are the <u>source</u> point of the information of fraud and Dr. Wood is the sole person responsible for that disclosure. She does not even have to qualify as an "original source" because her information was not publicly disclosed until <u>after</u> she informed NIST of it. Even if, somehow, her filing with NIST, who then published her information, constitutes a public disclosure (it does not), then, even in that event, Dr. Wood is its obvious original source.

The defendants herein do not have a leg to stand on in and with respect to a challenge under F.R.Civ.P Rule 12(b)1.

As the defendants steered NIST's investigation away from even "investigating the actual collapses" or were willfully blind and indifferent to the fact that that is what was taking place, despite being led by "a materials scientist" and a plethora of other experts, they cannot state that Dr. Wood does not state a claim because they ignored the information upon which her claim is based; namely: what happened when the WTC was actually destroyed. NIST did not investigate that part of the event. Her assertions may, in fact, be the only information in the entire public record that shows in detail why and how the WTC was destroyed. And that is not an exaggeration. Plaintiff's RFCs are a remarkable accomplishment and public service of historical magnitude.

Moreover, Dr. Wood has put NIST on notice that the after effects of the use of DEW to destroy the WTC, which is what the "actual collapses" entail, and which NIST, by its own written admission to Dr. Wood, did not investigate, are still ongoing. Let me repeat that:

**The after effects of DEW at Ground Zero (GZ) are ongoing and they pose a clear and present danger to the public and Dr. Wood has informed NIST of**

**this fact, together with a recommendation that NIST halt its investigatory process of what caused the destruction of WTC 7 because that investigation is hopelessly flawed.**

The above statement is further confirmed by evidence of the destructive processes of DEW that were seen and observed and recorded by Dr. Wood as recently as January 17, 2008. See plaintiff's affidavit and see affidavit of Andrew Johnson.

Those affidavits also confirm that one of the defendants who has <u>not</u> filed a motion to dismiss, Science Applications International Corp. (SAIC), has been in charge of access to GZ and may, in fact, control the clean up process that is still taking place from at least 2005 to the present. And, as noted, SAIC, along with other defendants, including by way of example, ARA, are entities that are primarily involved with and engaged in the development, deployment and testing of the lethality of directed energy weapons (DEW). That is what ARA and SAIC do (no pun intended).

In summary, defendant's motion under F.R.Civ.P Rule 12(b)6 is not only futile, it is not even properly based as they, by NIST's admission, do not have an investigatory or factual frame of reference to use to refute Dr. Wood's claims. They did not investigate the "collapses".

Similarly, this case indicates by whom, how and in what manner that fraud occurred; namely, by willful blindness to the fact that the WTC was destroyed by directed energy weaponry and the defendants herein know that because of their involvement with such weapons and their awareness of the destructive effects thereof and/or their awareness that kerosene cannot have caused the destruction occurring during the destructive phase (that was not investigated by them).

This case does not entail proof of who destroyed the WTC, does not "blame Bush" or anyone else. In short, this case is not dependent upon or even concerned with proof of any "conspiracy" or "conspiracy theory". It is improper for defendants to have cast the matter that way. By doing so, and by using derogatory epithets, defendants' violated F.R.Civ.P Rule 11. See Affirmation of Jerry V. Leaphart annexed hereto.

Rather than F.R.Civ.P Rule 9(b), this is a case that actually entails a violation by the defendants of F.R.Civ.P Rule 11 because they have not been candid with this tribunal in seeking to cast the matter as a "conspiracy theory" when, in fact, they know or certainly should know that the destruction had to have been wrought by directed energy weaponry.

Despite almost countless expressions of righteous indignation and use of slurs, the defendants have not denied that DEW destroyed the WTC in one single sentence in any submittal they have made. That is good, for they appear to at least recognize that they cannot knowingly make a false statement to this tribunal.

In fact, the affirmation annexed hereto points out that the evidence in this case consists in several "admissions" by silence. Plaintiff has repeatedly said to persons knowledgeable about DEW, including correspondence with the U.S. Directed Energy Directorate, that the Twin Towers were destroyed by DEW. The Directed Energy Directorate (DED) responded in writing but did not deny the claim. And neither has ARA or SAIC, despite numerous opportunities to do so. (See Exhibit 5 of Affirmation of Jerry V. Leaphart.) Yet, they want this case dismissed without discovery taking place.

Their motions must be denied.

Dr. Judy Wood, plaintiff-relator herein, is quite content with the expressed myth of 9/11 that "19 Arabs did it with box cutters". One caveat only: Just as "daisy cutters" is a military nickname for a powerful bomb, so too is "box cutters" an apparent military name for directed energy weaponry, if we are to find truth in the quoted and commonly stated myth of what happened. And, if the Twin Towers can be considered "boxes", then they surely were "cut" in a matter of ten (10) seconds each, pulverized and reduced to dust. That was done by a "box cutter" alright, a directed energy box cutter, that is.

The truth, then, may have been in front of us all along. Dr. Judy Wood has merely proven what caused the destruction of the WTC and proven that the defendants herein include those who make, measure the lethality of, and otherwise deal with such weaponry and who should not, therefore, have defrauded the public in and with respect to the preparation of NCSTAR 1 by steering NIST into not investigating the actual collapses. They either did that or stood idly by knowing that NCSTAR 1 was fraudulent, yet they lent their names and reputations for scientific accuracy to that report. Doing so is fraudulent.

It was unwise in the extreme for companies, with the background in development of high tech weaponry as their principal products, to sign contracts with NIST to determine what destroyed the WTC. Their forensic skill sets involve weapons testing. That, in and of itself, was a clue that something was amiss. It was audacious in the extreme for them to assume that no scientist in the USA would take notice of the effects seen in the destruction of the WTC and then delve into the matter and learn that ARA and SAIC led NIST's investigation of the event and then note that ARA and SAIC are weapons companies that manufacture and test DEW.

13

These defendants knew, or should have, that the destructive effects consisting in the near instantaneous pulverization of the Twin Towers was the result of DEW of the type that ARA and SAIC work with and make. As to the other defendants, they know that steel does not disintegrate and turn to dust before it even hits the ground, no matter how much kerosene flame the buildings might be said to have been exposed to.

Direct and independent knowledge in this case stems from the fact that Dr. Judy Wood has basically done what the defendants herein were charged with doing, namely, determining why and how the Twin Towers of the WTC were destroyed on 11 September 2001 (9/11). Plaintiff's affidavit proves this and does so in an affidavit that is of historical significance. It is compelling. The defendants had contracts mandating professional work of a scientific and technical nature. They are not permitted to hide behind the concept of compartmentalization to claim innocence. Neither were they hired to merely restate what had been published in newspapers. They were not permitted to blindly accept as true the preposterous claim that kerosene could pulverize steel, rebar, concrete and, yes, human beings in <ten (10) seconds from top to bottom leaving a debris pile of <one (1) story in height; all as thoroughly documented by Dr. Wood in her RFCs and annexed affidavit. Their contracts were with the National Institute of Standards and Technology (NIST) and the defendants know what contracts they had and the particulars thereof. Nonetheless, a summary of the contracts is provided in the annexed affirmation of Jerry V. Leaphart.

NIST admitted to the plaintiff, and to no other known person, in no other known written admission, that it, NIST, did not investigate what it called the "collapses" of the Twin Towers; and, accordingly, NIST and its contractors committed fraud. This is a case

in which there is no real or valid issue concerning whether or not Dr. Judy Wood is an original source of the information upon which her complaint is based. She is that only if NIST's subsequent publication of her assertions constitute a public disclosure. She obviously has direct and independent knowledge of the facts upon which her claim is based in exactly the same way as defendant ARA's lead investigator had, or should have had, independent knowledge that he and others were engaging in fraud.

This is not a case that can be dismissed at this stage, even if, somehow, her causal claims can later be challenged on the highly unlikely basis that her claims are shown not to be correct. That has not happened as yet, despite defendants having had the opportunity to do so. Epithets, slurs and put downs are not proof.

For refutation to happen and/or to be a viable option for the defendants herein, they will first have to come up with some evidence that the WTC was destroyed and disintegrated by jet fuel(they were not)[2]. or something other than DEW. It is a physical impossibility for jet fuel (assuming, arguendo, such fuel was present) to have had anything meaningful to do with the destruction of the WTC, so there is no cause for plaintiff to be concerned in that respect. Plaintiff is a materials scientist and does not have to worry about the validity of her assertions. They are validly made and must be deemed true at this stage. Certainly, they are not obviously wrong and defendants have no factual basis to allege, let along, prove her wrong.

It may be that these defendants are using the process of compartmented information and/or other attempts to invoke secrecy apparatus so as to disguise what they do. If that is the case, they should not have mounted a defense and should have settled these cases. In the actual event, they are mounting a hapless defense.

---

[2]See Reynolds v. SAIC, et al, Case No. 1:07cv4216 (GBD).

The defendants are private companies who are considered "persons" with no greater rights than any other person (of course, they are not persons; but U.S. law, otherwise fact-based, allows that fiction[3]). The defendants may have entered into a form of "public-private partnership" with NIST and NIST may be "responsible" for NCSTAR 1[4] but in having their names and reputations for scientific accuracy added to NCSTAR 1, these defendants then exposed themselves to the False Claims Act. Even if they are acting in furtherance of a public policy decision to curtail the investigation of what destroyed the WTC, the "persons" against whom this case is directed did not have the right to defraud the government, even if working at the behest of government. And they do not have the right to make false statements to this tribunal. Doing so violates Rule 11.

<u>PROCEDURAL HISTORY</u>

Relator filed a 43-page Request for Correction (plaintiff's affidavit, Exhibit A) on March 16, 2007, supplemented on March 29th and again on April 29, 2007, (plaintiff's affidavit, Exhibit B and C, respectively) that served to provide the Government with information of fraud wherein plaintiff outlined the nature of the fraud that had been committed by NIST and its contractors in NCSTAR 1, as more particularly asserted above, confirming that NIST and its contractors, who know better, had deceived the public by not revealing that the WTC was destroyed by DEW. Dr. Wood laid out proof of her claim in splendid detail and NIST <u>did not</u> deny the claim,[5] neither has the U.S. Directed Energy Directorate[6] nor any defendant in this case.

_____

[3] <u>Santa Clara Cty. v. S. Pac. Ry.</u>, 118 U.S. 394 (1886).
[4] See NIST appeal response, Exhibit F of plaintiff's affidavit.
[5] See RFC response, Exhibit D of plaintiff's affidavit.
[6] See Exhibit 5 of Affirmation of Jerry V. Leaphart.

On July 27, 2007, NIST published its response to plaintiff's said RFC (plaintiff's affidavit Exhibit D) and on August 22-23, 2007, plaintiff appealed (plaintiff's affidavit, Exhibit E). A response to the appeal was received on or about January 10, 2008 (plaintiff's affidavit Exhibit F). At no time and in no document has NIST refuted plaintiff's assertion that DEW destroyed the WTC and that NIST's contractors who are knowledgeable about DEW therefore defrauded the public.

During the false claims period that began in or about June 2003, each of the defendants herein entered into a series of contracts that are generally referred to in the complaint and that are more particularly mentioned in the annexed affirmation of Jerry V. Leaphart.

Relator filed this action, under seal and pursuant to the requirements of the FCA on April 21, 2007. After the statutory period and an extension, the U.S. Department of Justice ("DOJ") provisionally declined to intervene, and this case was duly unsealed by order of this court. Relator served the complaint on defendants on or about December 27, 2007.

No discovery has been had in this matter.

<u>ARGUMENT</u>

**A) Rule 12(b)1**

In <u>U.S. ex rel Winslow v. Pepsico, Inc. et al.</u> 2007 U.S. Dist. LEXIS 40024 (SDNY) (copy annexed as Exhibit 1), Judge Brieant states:

> "The 2003 RFI simply requested PepsiCo to "provide a sample of the imported merchandise ... along with the lab sample label enclosed herewith to the US Customs Laboratory", and to "Submit descriptive information, including component breakdown with percentages by weight and CAS #'s (if available)." It also stated that it was in regard to "Soda Concentrate" imported from Ireland under an HTS subheading of 330210100. The 2003 RFI simply contained no

17

allegations or suggestions of fraud that were accessible to the public. See
*Rockwell Intern. Corp. v. U.S., 127 S. Ct. 1397, 1402, 167 L. Ed. 2d 190 (2007)*
(the parties conceded that there was public disclosure when the media reported
toxic leakage of Defendant's concrete blocks) *U.S. v. New York Medical College,
252 F.3d 118, 120 (2d Cir. 2001)* an audit by a public benefit corporation
specifically found that Defendant had overcharged the corporation by over $2
million). **The mere request for a sample of the imported substance, without
more, is not sufficient to inform anybody of a fraud being imposed on the
United States.  Because there was no public disclosure of the allegations of
fraud, the Court does not reach the issue of whether or not the Relator was
an "Original Source" of such information, within the 1986 amendment."**
(emphasis supplied) U.S. ex rel Winslow v. Pepsico, Inc. et al. 2007 U.S. Dist.
LEXIS 40024, see Exhibit A, pg. 5

The defendants herein fail and fail utterly to show any prior disclosure of claims of fraud

perpetrated by the defendants herein in steering NCSTAR 1 away from the conclusion

that DEW destroyed the WTC.  That is the essential error made by defendants in their

futile attempt to disqualify plaintiff, making, as they do, the assumption that plaintiff

must qualify as an original source, and then seeking to disqualify her by ridiculous

assertions that publications dating from as early as 2002, that might have mentioned the

words "directed energy" can somehow qualify as a prior disclosure of fraud that had not

even been committed as yet.

Defendants also seek to use NCSTAR 1, itself, as the publicly disclosed

information.  Clearly, that is not plaintiff's information.  NCSTAR 1 does not declare

itself to be fraudulent.  Plaintiff's RFCs do claim that NCSTAR 1 is fraudulent and this is

entirely consistent with the now clarified, by Rockwell and applied by Brieant, definition

of information for qui tam purposes.

Defendants, in referring this court to an article they say is found in "The

American Free Press" dating from the year 2002, predating the false claims period, even,

clearly show that they are misapplying Rockwell.  See pg. 10 of defendant ARA's

memorandum of law in support of motion to dismiss (ARA's memorandum) dating from 2002.

That reference and all others that defendants make, including, by way of example, reference to Kevin Ryan's Title VII employment practice case, to Jim Hoffman, etc.[7] have nothing whatever to do with plaintiff's specific claims of fraud; all and in the same way as Judge Brieant explains in Winslow above.

Defendants do not appear to be aware of the import of Rockwell. They completely ignore what the claim of fraud is and where it arises from. The specific claim of fraud arises from what plaintiff stated in her RFC 3/16, that source is the information; and here is what the information entails: That NCSTAR 1 was fraudulent and violated the False Claims Act by virtue of the fact that it and NIST's contractors ignored that the WTC was destroyed by DEW by curtailment of investigation and other deceptions.

Here is exactly what plaintiff relator stated, in relevant part:

"As noted on page 4 above, mention has been made of NIST's 4 objectives, set out at pgs xxxv-vi of the Executive Summary of NCSTAR 1. NIST then declares that in-house expertise and an "array of specialists in key technical areas," totaling [over] 200 staff contributed to the Investigation.

With that level of expertise, it seems highly likely that some among them will have information that substantiates the claims that are made in this RFC. Indeed, starting with the premise that World Trade Center buildings 1 and 2, the Twin Towers, (WTC 1,2) were massive, strongly built structures, made of steel that should not have been significantly harmed by kerosene generated fires (jet fuel is kerosene), should have been apparent to some among the assembled bevy of experts.

It is not yet clear why so many people failed and failed utterly to avoid the issuance of a deceptive and fraudulent report. Perhaps some among them will come forward in a timely manner to rectify this situation.

---

[7]See, generally, pgs. 9 to 11 of ARA's memorandum.

> The construction of WTC1,2, as illustrated above provide but the first clue that they could not have self-destructed in the manner seen, absent significant energy inputs of an unusual kind."

The above devastates defendants' assertions by showing they have not made a good faith attempt to understand what Rockwell stands for, let alone what plaintiff's claim of fraud actually is, to the extent some of them bothered to reference that case at all.

Plaintiff's assertions have solely to do with fraud arising from the manner in which NCSTAR 1 was prepared and its willful ignorance of the actual cause; namely DEW.  Neither NIST nor any defendant can even argue against, let alone refute, plaintiff's actual claim of fraud because we now know that:

> "[A]s stated in NCSTAR 1, NIST only investigated the factors leading to the initiation of the collapses of the WTC towers, not the collapses themselves."

To be sure, defendants might try to submit a Reply claiming that NIST did acknowledge that it had <u>not</u> investigated the actual "collapses" of the WTC by so stating in NCSTAR 1.  However, that is not what NCSTAR 1 actually says (still more fraud).  In fact, if defendants choose to go that route, they will do no more than acknowledge fraud.

NCSTAR 1 contains two (2) similar, but not identically worded, footnotes that may tacitly admit that no investigation of the actual collapses took place; and, in fact, plaintiff's RFC specifically referenced those footnotes making the accusation that NIST had not investigated the destructive interval.  But the language of the footnotes is deceptive because the actual wording can more readily be understood as meaning NIST was merely <u>choosing</u> not to include analysis of the actual collapses, <u>not because</u> it had not done the investigation at all, (as it admitted to Dr. Wood); but, rather, was not including the analysis of the collapses <u>for the sake of being brief or concise</u>.

The first instance of what might be (but is not) a truthful statement is footnote 2 stating:

> "The focus of the Investigation was on the sequence of events from the instant of aircraft impact to the initiation of collapse for each tower. For brevity in this report, this sequence is referred to as the "probable collapse sequence," although it includes little analysis of the structural behavior of the tower after the conditions for collapse initiation were reached and collapse became inevitable".[8]

The second footnote is similarly worded, stating:

> "The focus of the Investigation was on the sequence of events from the instant of aircraft impact to the initiation of collapse for each tower. For brevity in this report, this sequence is referred to as the "probable collapse sequence," although it does not actually include the structural behavior   of the tower after the conditions for collapse initiation were reached and collapse became inevitable". [9]

In both footnotes, NIST states "...for brevity in this report..." as the reason for not providing an explanation for why and how the twin towers were destroyed.  In that first one (footnote 2), they actually imply some investigation was done using the phrase "…it includes little analysis…" which implies that the analysis was done, merely not included or edited out, perhaps.  In the other (footnote 13), they again engage in subterfuge stating "…it does not actually include the structural behavior…" which, yet again, implies an editing choice for sake of brevity, not total absence of any investigation at all.

Once again, as of July 27, 2007 we know that:

> "[A]s stated in NCSTAR 1, NIST only investigated the factors leading to the initiation of the collapses of the WTC towers, not the collapses themselves."

It is respectfully submitted that now that we know of the three separate and divergent explanations given, two in NCSTAR 1 and one in the NIST response to Dr. Wood dated July 27, 2007, (Exhibit D of plaintiff's affidavit) that fraud and deception

---

[8]NCSTAR 1, pg. xxxvii, footnote 2
[9]NCSTAR 1, pg. 82, footnote 13

were committed and this claim is thereby proven in the way the three statements on what

was actually investigated (and more importantly, what was <u>not</u> investigated) are worded.

There was no public disclosure other than by virtue of what Dr. Wood published

in an official challenge known as Requests for Correction under the Information Quality

Act[10], that led to the disclosure of fraud.

Under the terms of the FCA, an RFC is a form of informing the government and a

source of information that, by clear and unequivocal definition, is not excluded by the

FCA, meaning that RFCs can serve as a source for original source, direct and

independent information if need be.  The FCA only excludes two categories of

information; namely:   those (1) based on allegations that are subject of a civil suit or

administrative civil money penalty proceeding[11] and those (2) based on the public

disclosure of allegations or transactions unless the person bringing the action is an

original source of the information.

Defendants might have been a bit more forthright had they admitted that there is

no case law authority indicating that RFCs are not a valid source or way to invoke a qui

tam case.

ARA appears to argue in its Rule 12(b)1 and also its Rule 12(b)6 section that

plaintiff's DEW assertions are speculative.  It is here asserted that ARA should know full

well that DEW destroyed the WTC, hence, they cannot make a statement that would deny

that claim.  Instead, all they appear to do is demand more proof.  However, this is a

motion to dismiss,  plaintiff's claims are to be accepted as asserted.   ARA does say, at

---

[10]Section 515 of the Treasury and General Government Appropriations Act for Fiscal Year 2001 (Public Law 106-554).
[11]31 U.S.C. § 3730 (e)(3).

pg. 15 of its memorandum, that "a relator cannot satisfy the original source requirement with baseless speculation and conjecture" however, that is merely being argumentative. They do not actually say that that is what Dr. Wood has engaged in, and we here and now assert that ARA cannot make any such specific claim with any statement that would be put under oath.  For one reason, absent any investigation done by them, they lack a necessary condition for denying plaintiff's claims; to wit:  knowledge of what happened during the collapses, as ARA chose willful blindness instead of knowledge.  And that assertion has been proven by NIST's already quoted admission of what was "not investigated".

    As things stand, ARA has offered not one iota of fact or of proof that in any way whatsoever refutes Dr. Wood's claim that DEW destroyed the WTC, other than epithets. No affidavit, no reasoning, nothing, has been presented in rebuttal of that claim.

    Finally, even if Dr. Wood can be shown ultimately to be incorrect, which is unlikely, her case cannot be dismissed for even Rockwell recognizes that, on the basis of present law, a prediction of fraud is sufficient at this early stage of the case where plaintiff's contentions are deemed true.  This analysis is confirmed correct by <u>Rockwell</u>:

> "Of course a qui tam relator's misunderstanding of why a concealed defect occurred would normally be immaterial as long as he knew the defect actually existed. But here Stone did not know that the pondcrete failed; he predicted it. Even if a prediction can qualify as direct and independent knowledge in some cases (a point we need not address), it **assuredly does not do so when its premise of cause and effect is wrong.** Stone's prediction was a failed prediction, disproved by Stone's own allegations. As Stone acknowledged, Rockwell was able to produce "concrete hard" pondcrete using the machinery Stone said was defective. According to respondents' allegations in the final pretrial order, the insolidity problem was caused by a new foreman's reduction of the cement-to-sludge ratio in the winter of 1986, long after Stone had left Rocky Flats." <u>Rockwell Int'l Corp. v United States</u>, supra, 127 S. Ct. at 1410.

Clearly, defendants motions under Rule 12(b)1 must fail.

**B) Rule 12(b)6**

Both groups of defendants, ARA and SOM, move alternatively to dismiss plaintiff relator's Amended Complaint pursuant to *Fed. R. Civ. P. Rule 12 (b)(6)*, arguing in substance that 1) Relator has failed to plead a "false statement", as is required by the FCA; and 2) Relator has failed to meet the heightened pleading requirements of *Rule 9(b)*. This section will treat the Rule 12(b)6 arguments and show that defendants have not got a leg to stand on.

The requirements of *Rule 12(b)(6)* are well known. In order to state a claim under the FCA for a "reverse false claim", the Relator must allege (1) that the defendant made, used, or caused to be used a record or statement to conceal, avoid, or decrease an obligation to the United States; (2) that the statement or record was false; (3) that the defendant knew that the statement or record was false; and (4) that the United States suffered damages as a result." United States v. Raymond & Whitcomb Co., 53 F. Supp. 2d 436, 444-445 (S.D.N.Y. 1999)(Motley, J.) (Internal citations omitted).

ARA argues that the complaint should be dismissed because Relator has not pled the requisite false statement required by the FCA. ARA's argument is futile in this respect because plaintiff relator is operating in an environment where the type of fraud perpetrated involves willful indifference to the truth and the publication of a false and misleading document that has and will have tremendous significance on an ongoing basis as a result of the fraud committed; namely, deceiving the public into the belief that NIST, assisted by the defendants herein, had determined why and how the Twin Towers were destroyed when, as we now know, all they did was produce more than 10,000 pages of

24

mind-numbingly detailed (and expensive) reportage and verbiage that explained anything and everything *except* the event they were paid to explain.

Defendants' reference to a District of Arkansas case[12] that, by their own admission, involves a situation where "the relator did not allege that Fiske deceived the government."[13]

Dr. Wood specifically alleges that each and every defendant herein committed fraud by being willfully blind and indifferent not only to the fact that DEW destroyed the WTC, but that that indifference now extends to the ongoing danger to the public by not disclosing the true nature of the difficulty of cleanup of the after effects of DEW, something that continues to the present day with at least one of the defendants herein, namely, SAIC, being in the "cat bird's seat" with respect to the cleanup at GZ.  Other of the defendants are likely involved as well.  We know, for instance, that ARA continues to be involved in the NIST investigation of what caused the destruction of WTC 7, which is also a flawed and fraudulent investigation that is being challenged elsewhere on other equally valid grounds.[14]

Liability under the FCA requires that defendant "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the  Government." *31 U.S.C. § 3729 (a)(7)*.  The Second Circuit has noted that "the term 'false or fraudulent' is not defined in the Act," Mikes v. Straus, 274 F.3d 687, 696 (2d Cir. 2001). However, the Supreme Court has held that the Act is "intended to reach all types of fraud, without qualification,

---

[12]U.S. v. Fiske, 968 F.Supp 1347 (E.D. Arks. 1997).
[13]See ARA's memorandum at pg. 20.
[14]Haas v. Gutierrez, et al, Case No. 1:07-cv-3623, U.S.D.C., S.D.N.Y.

that might result in financial loss to the Government." <u>United States v. Neifert-White Co.</u>, 390 U.S. 228, 232, 88 S. Ct. 959, 19 L. Ed. 2d 1061 (1968).

If ARA and others in fact know or should know that the WTC was destroyed by DEW, then their certifications to NIST are false and fraudulent.  It is likewise false and fraudulent to provide detailed analysis of everything but the actual destruction of the WTC.  What defendants did herein is of the worst sort of fraudulent behavior imaginable.

ARA's memorandum of law attempts to challenge Dr. Wood in a few other ways under the guise of Rule 12(b)6, none of which have any merit.  Those contentions are addressed herein.

*False Claim*

The first argument put forth by defendant is found at pg. 19 of defendant's memorandum and challenges whether defendants can be said to have made a false claim. In their discussion of this issue, defendant mentions several concepts without any showing whatever as to why or how the circumstances that might serve to exonerate other defendants in other qui tam cases can exonerate defendants herein from the willful indifference to fraud they are shown to have engaged in.  It is not far fetched by any stretch of the imagination, let alone legal reasoning in a context that does not condone fraud or look lightly upon it, that engaging in a 10,000 page investigation that ignores the event itself and where the event involved destructive mechanisms that are precisely what some defendants specialize in making is a serious and viable claim of willful blindness or indifference to fraud as well as fraud itself.  It is actual fraud in that by positioning themselves so as to embrace NIST in a "bear hug" of supposed expertise, they controlled the data that comprises NCSTAR 1.

The FCA has a scienter requirement, stating that there can be no liability unless the defendant "knowingly presents" a "false or fraudulent claim," where a person acts "knowingly" if he:

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.  31 U.S.C. @ 3729(b).

The first element of 'knowingly' goes after subjective knowledge, while the second seeks out the kind of willful blindness from which subjective intent can be inferred. As for reckless disregard, it is 'an extension of gross negligence,' or 'gross negligence-plus,' and is not merely a proxy for subjective intent.  See United States v. Krizek, 324 U.S. App. D.C. 175, 111 F.3d 934, 942-43 (D.C. Cir. 1997).  In fact, therefore, defendants knowingly made a false statement and/or were willfully blind to the fraud entailed in ignoring that DEW destroyed the WTC and that they and NIST "did not investigate the actual collapses".

In other words, the defendants committed fraud.

*Transmission of Money*

Defendant's assertions about transmitting money are to no avail (see defendant's memorandum pgs. 23-24.  That is not the only way that fraud can be committed as noted by the U.S. Supreme Court who reminds us that the False Claims Act is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." United States v. Neifert-White Co., supra, 390 U.S. at 232.

*Implausible*

Defendants next make the unsupported statement that plaintiff's claims are "implausible" (as opposed to "delusional"?) (see pgs. 24-25 of defendant's memorandum). Defendant's articulation in that respect is notably short and is more noteworthy for what it does not actually say. Once again, the argumentation is theoretical and does not actually say, let alone support, that plaintiff is wrong about her DEW claims. Look at the language carefully, here is what it says:

> "Relator asserts that DEWs must have been used to destroy the WTC towers because they exist. Relator fails entirely to relate how her theory is any more plausible that any other theory.(e.g. controlled demolition, a missile attack, a localized earthquake), let alone how her conspiracy is at least as plausible as countless eyewitness accounts and recorded evidence of aircraft striking the towers."

There is no denial by defendant, a manufacturer and tester of DEW, anywhere in the quoted paragraph that DEW were used. In fact, all the quoted segment does is attempt to buttress "Plane Spot" theory that is being challenged in another case and where the specific content of what <u>actual</u> witnesses <u>actually</u> saw and <u>actually</u> heard is put forth to confirm the "NO PLANES" theory, [15] not some unsupported declaration of "countless eyewitness accounts" <u>unless</u> by "countless", we literally mean zero, because defendants have neither named nor quoted any actual witness claiming jetliners hit the WTC. On the other hand, plaintiff Reynolds quoted witness Stephen Gregory as saying:

> **"At first I didn't realize it was a plane. I thought it was like the roar of fire, like something had just incinerated, like a gas tank or an oil tank. It sounded like a tremendous roar and then you heard boom and then there was a big**

---

[15] See <u>Reynolds v. SAIC, et al</u>, Case No. 1:07cv4216 (GBD).

**fire, a lot of fire, a big fireball. I never actually saw a plane hit the building. I never saw that. I saw it on television, but I never saw it while I was standing there."[16]**

Your honor, it is respectfully submitted that defendants lack the right to ridicule the claim no planes hit the WTC because the claim is supported by evidence that was given to the defendants and they have provided no counter evidence. Television is a medium that can be manipulated with visual inserts. The choice here is literally the one involving the Orson Wells, "The War of the Worlds" analogy of whether reality is that which is presented in radio or television, or that which people actually see, hear and otherwise experience.

Lawyers and parties to lawsuits are permitted to rely on evidence in making their claims. Yet, the defendants herein each seek to outdo the other in making sarcastic and otherwise improper assertions about plaintiffs and opposing counsel.

As an aside, NCSTAR 1's footnotes, quoted elsewhere (footnotes 2 and 13), show that NIST and these contractors likewise curtailed the first part of their investigation to begin at "the moment of impact" meaning they may not have actually investigated whether wide-body 767 jetliners actually hit the WTC, since that aspect occurred before impact. However, NIST did publish speed information for the supposed planes (540 mph) the attainment of which, at <1,000 above sea level is a physical impossibility for wide-body 767 jetliners per plaintiff, Reynolds' expert.

That "moment of impact" definition of the event conveniently may have allowed NIST to <u>assume</u> without proof that 767 jetliners hit the WTC. The quoted footnotes cannot reasonably be interpreted in any other way. All as Dr. Reynolds has proven.

---

[16] File No. 9110008 Stephen Gregory "World Trade Center Task Force Interview" October 3, 2001

*Improper citation of authority*

In attempting to thwart plaintiff's standing as either a person who disclosed fraud or a person who is an original source under and pursuant to the FCA, the defendants have relied on misleading and overruled precedent including, by way of example, <u>US ex rel. Kreindler & Kreindler v. United Technologies Corp.</u> 985 F.2d 1148 (2nd Cir. 1993).  It would appear that defendants place principle reliance on Kreindler because they also rely on other case citations that are also referenced in Kreindler, for instance:  <u>U.S. ex rel. Stinson, Lyons, Gerlin & Bustgamante, PA, v The Prudential Insurance Company</u>, 944 F.2d 1149 (3rd Cir.  1991).

Those cases have no application here <u>in the manner in which</u> the defendants seek to use them.  Those cases and the manner in which defendants cite them have been superseded by the U.S. Supreme Court's March 2007 holding in <u>Rockwell</u>, supra, where the Supreme Court defined what is meant by "information" for qui tam relator, original source purposes as follows:

> "First, does the phrase "information on which the allegations are based" refer to the information on which the relator's allegations are based or the information on which the publicly disclosed allegations that triggered the public-disclosure bar are based? The parties agree it is the former. See Brief for Petitioners 26, n. 13; Brief for United States 24, and n. 8; Brief for Respondent Stone 15, 21. But in view of our conclusion that *§ 3730(e)(4)* is jurisdictional, we must satisfy ourselves that the parties' position is correct.  **Though the question is hardly free from doubt, we agree that the "information" to which subparagraph (B) speaks is the information upon which the relators' allegations are based."** (bold emphasis added)  <u>Rockwell Int'l Corp. v United States</u>, 127 S. Ct. 1397, 1407; 167 L. Ed. 2d 190, (2007).

That means that the former requirement that had been utilized in this court, governed as it is by the U.S. Court of Appeals, Second Circuit, that held that "a plaintiff also must have directly or indirectly been a source to the entity that publicly disclosed the

information." That is not proper authority any longer.   In fact, defendants cite the case,

Dick Long Island Lighting Co., 912 F.2d 13, 18 (2nd Cir. 1990), that had held as follows:

> "A close textual analysis combined with a review of the legislative history
> convinces us that under §3730(e)(4)(A) there is an additional requirement that a
> qui tam plaintiff must meet in order to be considered an "original source,"
> namely, a plaintiff also must have directly or indirectly been a source to the
> entity that publicly disclosed the allegations on which a suit is based." United
> States ex rel. Dick Long Island Lighting Co., 912 F.2d at 16.

While that is no longer the law, there remains, however, a second and more outcome

determining aspect even assuming the older law remained applicable.  The old law

perfectly describes exactly what plaintiff-relator, Dr. Judy Wood, did achieve in this case.

She is precisely the citizen who is the direct source of the claim given to the

government that DEW destroyed the WTC and that ARA, among others, is a

manufacturer of DEW and knew full well that DEW destroyed the WTC.

We have already seen how these undeniable contentions and proof thereof come

about:

- NIST did not investigate the collapses of the WTC, despite being tasked
  and budgeted to do so, as per their admission to that effect given, in
  writing, to plaintiff on July 27, 2007.

- Despite paying the defendants herein millions of dollars to conduct
  scientific and technical work and to vouch for and validate the report
  issued by NIST, NIST ended up publishing a 298 page Report, backed by
  10,000 pages of support data entitled "Final Report on the collapses of the
  Twin Towers of the World Trade Center (NCSTAR 1)," that did not

investigate the destructive phase of the event which NIST calls "the collapses."

- NIST does not have any viable way of contradicting plaintiff's assertion because they "compartmented" their investigation by cutting it off at the point where destruction by DEW was seen to have begun and also curtailed it on the front-end to seemingly avoid serious analysis of Dr. Reynolds' separate "NO PLANES" claim.

To avoid a finding that plaintiff states a cause of action in this case, plaintiff must be shown to be wrong about the information she and she alone has provided to the government. And, she could conceivably be wrong. That is why her case deserves to be separate from that of Dr. Reynolds. One or the other of them could be right; or both could be right; and, both could be wrong. However, both have presented sufficient proof of fraud for purposes of defeating motions to dismiss. One defendant sought, improperly, to have this court take judicial notice of dicta from the case entitled Sr Intl Bus. Ins. Co. Ltd, et al. v. World Trade Center Props. LLC, 467 F.3d 107; (2nd Cir. 2006). While taking judicial notice of its dicta is improper, it is appropriate to note one closer analogy. In that case, then Judge Mukasey found that the 'attacks' on the WTC were two events. That finding had significant insurance coverage consequences. Here, the challenge consisting in the NO PLANES claim of Dr. Reynolds is separate and apart from Dr. Wood's  DEW destruction claim.

One would have thought that the defendants would at least submit one affidavit from one person -- we would have nominated ARA's Lead Investigator, Steven Kirkpatrick -- showing one piece of evidence or of information contradicting plaintiff's

claim that DEW destroyed the WTC. After all, and come to think of it, the very first thing that these defendants should have done was formally and officially deny that DEW destroyed the WTC, if, that is, they could do so in good faith.

They have not done that.

That statement of fact is a rather startling and far reaching assertion and bears reiteration: No defendant has denied that DEW destroyed the WTC at all, much less offered a shred of proof to the contrary.

Silence is an admission under circumstances like that. Dr. Wood is a materials scientist. She analyzed, independently, and confirmed, validly, that the WTC was destroyed by DEW.

She then vetted her assertion with the U.S. Directed Energy Directorate (DED) located at Kirtland Air Force Base in Albuquerque NM, a stone's throw from ARA's headquarters and DEW testing facilities. (See Affirmation of Jerry V. Leaphart) The DED responded in writing by not denying the DEW causal claim; and, instead, only commented that the claim was "interesting" and that budgetary constraints prevented them from doing more. However, a subpoena during discovery will permit them to do more. See Exhibit 5 of Attorney Affirmation of Jerry V. Leaphart.

Plaintiff further vetted her findings with Canadian inventor, John Hutchison, whose labs the U.S. Department of Defense and SAIC visited as far back as the early 1980s, shortly after he coined the "Hutchison Effect" to describe the phenomena he was able to achieve on a small scale that could (when scaled up and weaponized) account for the near instantaneous dustification – meaning destruction of – the World Trade Center. The Hutchison Effect is a form of directed energy. Needless to say, John Hutchison has

not weaponized his invention, but, ARA and SAIC almost certainly have done that. They certainly have not denied it.

The only way for defendants to show that plaintiff does not state a claim is for them to show some evidence that plaintiff is wrong. ARA's memorandum of law does not do that. In fact, in what can reasonably be presumed to be a disingenuous way to invoke secrecy, ARA, in its memorandum of law purposefully and intentionally states and admits that it cannot refute Dr. Wood. They state right at the outset of their said memorandum, page 1, that:

> "Ignoring the absurd nature of Relator's allegations, Defendants Applied Research Associates, Inc. ("ARA" or "Defendants") hereby move the Court to dismiss Relator's Complaint for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted and failure to plead fraud with particularity."

In fact, the above quote is nothing more than another example of "compartmentalization". ARA purposely states it will not address plaintiff's allegations. Ignorance is not bliss and it is not a way to support a claim to have this case dismissed.[17] Furthermore, if all they are willing to do is ignore plaintiff's claims, then no purpose whatever would be served by providing them any additional particulars as they would likely ignore them, as well. In a companion case, that of <u>U.S. ex rel Dr. Morgan Reynolds v. SAIC, et al.</u> 1:07cv4612, ARA caused to be submitted an affidavit in which it claimed a prior admission it had made in writing was a typographical error.

***While doing so merely gives rise to a factual dispute, it is noteworthy that in the defense of this case, ARA submits no affidavit contradicting the assertion that DEW***

---

[17] "Facts do not cease to exist because they are ignored." ~ Aldous Huxley

***destroyed the WTC and that ARA is a manufacturer and developer and tester of such***

***weapons.***

So, we know that ARA can make factual claims when it has a basis to do so. Neither ARA and its joining defendants nor SOM and those who join it can ignore Dr. Wood's claims, except as a way of admitting the claims are true at this stage of this case. This is especially apt in a condition where although charged with providing expensive technical input into what caused the destruction of the WTC, they did not even investigate the "actual collapses" which literally means that as we sit here today, no rational explanation for the near instantaneous pulverization of the World Trade Center has been prepared by anyone with the expertise to do so except Dr. Judy Wood.

That is a fine kettle of fish, as it were.

ARA and SOM have not got any right to come to this court seeking dismissal of this case based on their having ignored her claims; which are, once again:

**The Twin Towers of the World Trade Center were almost instantaneously pulverized to dust, where the materials from which they were constructed into the then tallest buildings in the world when built, consisting in solid structural steel, rebar, concrete and, yes, to and including the thousands of persons located therein, were obliterated in a matter of less than 10 seconds each on September 11, 2001, by use of secretive, lethal and highly classified directed energy weaponry and the defendants know this to be true and have not and will not be able truthfully to deny it because they and NIST did not investigate the actual "collapses" as they chose to characterize the process of pulverization.**

35

The above statement cannot be meaningfully contradicted by any defendant, nor has it been.

As manufacturers of DEW, it was folly, looked at from a certain perspective, for ARA and SAIC to join with the other defendants herein to produce a super voluminous report that "did not investigate those collapses" but did mislead the public and lull us into complacency, other than Dr. Judy Wood[18] that is, by seeking to assert that they could explain the event by not explaining it and getting paid, to boot. But, that is exactly what they did and Dr. Judy Wood has now begun the process whereby and wherein that egregious fraud can be exposed and rectified.

The defendants need to be taken down a peg or two because the after effects of that lethal and utterly fantastical destruction process does not simply vanish and disappear. Thanks to fraud and willful indifference, the public is being exposed to the after effects of the use of DEW. To be sure, such weapons are not thought to be "radioactive" in the same sense as nuclear weapons are. The personal effects upon people of DEW are not widely known, but those effects are known to the defendants, especially those who are members and founders of the Directed Energy Professional Society (DEPS). In 2007, plaintiff learned that DEPS publishes a "Lethality Handbook" with respect to DEW and how to handle some of its effects.

Instead, DEW are a new class of weaponry that are highly precise in the way in which destruction is carried out, including the ability to single out materials and locations that are to be destroyed, fired from great distances and capable of moving at or near light speed. See affirmation of Jerry V. Leaphart.

---

[18]And Dr. Morgan Reynolds.

On ARA's website[19], they describe themselves as having weapons capabilities

that can do this:



ARA's website also contains the following depiction of their capabilities:



This is a depiction of a directed energy weapon:

---

[19]See Exhibit __ of plaintiff's affidavit.

37



ARA can be expected to tell us much more about these weapons and their use at the WTC during discovery.

Even though DEW are not thought by plaintiff to be radioactive, the process of dissolution of materials at the molecular level, exemplified by the manner in which the skyscrapers that had comprised one-half (½) mile in aggregate height that were made of steel, concrete and rebar could be reduced, in 10 seconds each, to a pile of rubble less than one (1) story in height, as seen and confirmed in Dr. Wood's exhaustive analysis of why and how the WTC was destroyed, can be difficult to douse or extinguish. Stated simply, the destruction by DEW of the WTC has not been cleaned up as yet and the announcement that construction is to begin there may be folly of the most extraordinary kind.[20]

Certainly, NIST can neither contradict nor even say anything negative about Dr. Wood's claims, nor have they. All NIST could do was to admit that they and the defendants herein had not investigated that part of the event where the actual destruction

---

[20]See affidavits of plaintiff and Andrew Johnson pointing out that some construction is set to begin at GZ, but not construction of the Freedom Tower that is still delayed, allegedly because of the toxicity of the Bankers Trust building.

took place.  Yet, Dr. Wood's RFCs showed them exactly what happened and was communicated to NIST last year.

Now that it is known and understood that defendants are ignoring her claims, it is only necessary to dispose of their futile attempt to invoke F.R.Civ.P Rule 9(b), an issue to which we now turn.

### C) Rule 9(b)

ARA also argues that plaintiff relator's complaint fails to meet the heightened pleading requirements of F.R.Civ.P. Rule 9(b). ARA argues that an FCA complaint must "…allege details regarding specific false claims submitted to the government".  See ARA memorandum pg. 26.

Federal Rule of Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The Second Circuit holds that, because "[i]t is self-evident that the FCA is an anti-fraud statute," the heightened pleading requirements of Rule 9(b) apply. <u>Gold v. Morrison-Knudsen Co.</u>, 68 F.3d 1475, 1476 (2d Cir. 1995). In order to meet this standard, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)  explain why the statements were fraudulent." <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993).

Dr. Judy Wood has done that and far more.  She has identified the alleged false statements, and has identified when and where they were made, together with the ongoing danger posed by the fraud that was committed.  Defendants have clearly ignored the information and the particulars already provided to defendants who, as quoted above,

intentionally premised their argumentation upon a claim of entitlement to ignore her claims.

Doing so, as defendants plainly admit, should constitute a bar towards their being allowed to request protection under F.R.Civ.P Rule 9(b). Since they have ignored her claims, how can they, in good faith, claim they are insufficiently particular?

Certainly, every slur that defendants have made about plaintiff and her counsel ignore the facts upon which the this case is based. Each claim by them that this or that assertion is "far fetched" (one of their more polite terms) is, in actuality, backed by factual information in this record.

Clearly, the request for particulars is disingenuous. Plaintiff has also forced out into the open the startling admission by NIST that it did not "investigate" (note that quoted term) the actual "collapses" of the WTC, despite issuing a report that included 10,000 pages of data that bore the title: "Final Report on the collapses of the Twin Towers of the World Trade Center (NCSTAR 1)." When NIST's language of admission of what they did and did not do is compared to the title of the report they issued, listing each and every defendant herein as a participant, it, quite frankly, results in a visceral personal reaction; one that invokes the statement: That is fraud.

Specifically, relator has attached a list of every contract that is publicly available, together with the responses to her RFCs containing the admission that NIST did not investigate the actual collapses. These allegations are adequate to satisfy Rule 9(b); and, if they are not, then plaintiff relator has certainly demonstrated that the lack of specifics can be remedied in an amended complaint, assuming the defendants would not continue to ignore it. Certainly, her annexed affidavit and other materials show that if a

complaint were intended to be highly detailed, rather than, ultimately, a form of "notice" then she could have done that; namely, she could have provided a much more highly detailed complaint.

As mentioned at the outset, however detail is also a format whereby obfuscation can occur. Defendants know that much. They know that NCSTAR 1 contains 10,000 pages of information that serves not one shred of purpose when what it contains is compared to the title that states what it was intended to do. Their request for "particulars" is then, doubly disingenuous. That claim of (disingenuousness on defendants' part) is all the more valid since the fraudulent scheme they engaged in consisted, in part, in the obvious attempt to confuse and confound based on excessive, and misleading technical detail. Plaintiff here asserts that her complaint is far more than a mere bare-bones notice-pleading of the type governed by Fed. R. Civ. P. Rule 8(a), see generally Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002); Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 122 L. Ed. 2d 517, 113 S.Ct. 1160 (1993). Plaintiff concurs that this case is governed by the heightened pleading requirements of Rule 9(b) and she also asserts she has pled sufficient particularity because defendants know what they are called upon to defend; or could know once they stop ignoring what has already been provided to them.

Particularity is not a proper issue here; and, if it were, then plaintiff merits leave to further amend her complaint to provide additional, available particularity.

The Amended Complaint adequately alleges the requisite intent required by 9(b), and alleges facts sufficient to raise the inference of fraud. Our Court of Appeals has held

that the "requisite intent [for liability under the FCA] is the knowing presentation of what is known to be false" as opposed to negligence or innocent mistake." <u>Mikes v. Straus</u>, 274 F.3d 687, 703 (2d Cir. 2001) (quoting <u>Hagood v. Sonoma County Water Agency,</u> 81 F.3d 1465, 1478 (9th Cir.1996)). The FCA provides that:

For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information--

1) has actual knowledge of the information;

2) acts in deliberate ignorance of the truth or falsity of the information; or

3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. See 31 U.S.C. § 3729 (b)

Reading the Amended Complaint in the light most favorable to Relator, as the Court must in a motion to dismiss, it tells us that ARA and other defendants purposely turned a blind eye towards the fraud of not explaining what caused the destruction of the WTC, while purportedly doing just that. Furthermore, ARA, as a manufacturer of DEW, had a clear conflict of interest and/or knowledge of the fraud they were engaging in and so did all other defendants herein.

It is not fatal to the complaint that Relator does not specify who exactly made the certification on behalf of each of the companies, or who in ARA (and all other defendants), if anyone, provided what information to NIST in furtherance of their contractual obligations that are summarized in the annexed affirmation of Jerry V. Leaphart, see Exhibit __ of Affirmation. As our Court of Appeals has held, "[d]espite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge". <u>Wexner v. First Manhattan Co.,</u> 902 F.2d 169, 172 (2d Cir. 1990). That is a

main factor here and should be dispositive of the issue of particularity.  The defendants'

reliance upon particularity ignores the fact that the 10,000 pages from which particularity

could be further culled is "peculiarly within their control".  That is so because "detail" to

a faretheewell was the essence of the fraudulent scheme.  We were <u>expected</u> to get lost in

the detail.  Once again, at a very minimum, plaintiff has certainly shown she has the

capacity to provide an abundance of other particulars if needs be.  However, it is

respectfully submitted that the allegations of fraud engaged in by the defendants has been

shown with sufficient particularity.

<u>CONCLUSION</u>

There is no doubt that a very strong case can be made that plaintiff, Dr. Judy

Wood, does not have to satisfy the original source rule because her claims were not

publicly disclosed, other than by virtue of her making them.  Plus, even if her disclosures

that were subsequently published at NIST's Office of Information Officer website[21], can

be deemed to be a public disclosure, then, in that event, Dr. Wood  is an obvious original

source of the information under and pursuant to the FCA as defined by <u>Rockwell</u>.

The defendants herein engage in subterfuge with respect to how they seek to

characterize the circumstances that give rise to the plaintiff's contentions.  This

memorandum has shown that her contentions are valid and validly made.  Similarly,

defendants do not really seek particularity in that they have ignored what has already

been presented.  Plus, excessive use of detail was a part of the scheme the defendants

---

[21]http://www.ocio.os.doc.gov/ITPolicyandPrograms/Information_Quality/PROD01_002276

perpetrated.  Doing so enabled them to hide the fraud committed and make it difficult to expose.

However, in what is clearly a document of historical magnitude, plaintiff's affidavit, annexed hereto details and demonstrates what each defendant herein did in and with respect  to their areas of expertise that should have resulted in the disclosure that DEW destroyed the WTC.

Based upon all of the foregoing, including the ongoing danger to the public that plaintiff has uncovered and reported, defendants' motions to dismiss must be denied.


                                         Respectfully submitted,


                                         By   /s/Jerry V. Leaphart
                                         Jerry V. Leaphart jl4468
                                         JERRY V. LEAPHART & ASSOC., PC
                                         8 West Street, Suite 203
                                         Danbury, CT 06810
                                         (203) 825-6265 - phone
                                         (203) 825-6256 - fax
                                         jsleaphart@cs.com

Dated:          Danbury, CT
                February 29, 2008

## ELECTRONIC CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2008, a copy of the foregoing Plaintiff's Memorandum of Law in Opposition of Defendants' Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

　　　　　　　　　　　　　__ /s/ Jerry V. Leaphart_____
　　　　　　　　　　　　　Jerry V. Leaphart (jl4468)
　　　　　　　　　　　　　JERRY V. LEAPHART & ASSOC., P.C.
　　　　　　　　　　　　　8 West Street, Suite 203
　　　　　　　　　　　　　Danbury, CT 06810
　　　　　　　　　　　　　Tel. (203) 825-6265
　　　　　　　　　　　　　Fax (203) 825-6256
　　　　　　　　　　　　　jsleaphart@cs.com

07cv331MOLoppMotDis022908FINAL