

**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General

*Washington, D.C. 20530*

February 21, 2008

The Honorable Patrick J. Leahy
United States Senate
Committee on the Judiciary
Washington, D.C.  20510

Dear Mr. Chairman:

This provides the Department's views on S. 2041, the False Claims Act Correction Act of 2007, introduced in the Senate on September 12, 2007.  As you know, the False Claims Act (FCA) is an important civil tool in fighting fraud against the public fisc and has worked well in its present form.  While the Administration is sympathetic to some of the proposed improvements, it cannot support the current version of the bill.

Since the statute was amended in 1986, the Government, through the end of Fiscal Year 2007, has recovered over $20 billion pursuant to the FCA.  This remarkable accomplishment has been with the assistance of the *qui tam* provisions, which have augmented our resources to address fraud in connection with Government contracts and programs and which we continue to support vigorously.  Indeed, of the $20 billion recovered under the FCA since 1986, over $12 billion was the result of *qui tam* actions.  We have encouraged the Department's litigators to make every effort to work cooperatively with relators to maximize the Government's recovery. In implementing the FCA, we have scrutinized the legal arguments advanced to ensure that, in protecting the Government's recoveries, we do not impair the incentives which are necessary to ensure that relators come forward, especially in light of the large personal hardships many must endure in bringing these suits.  The Department and its client agencies have dedicated enormous resources to the investigation and prosecution of these cases, and we have advanced legal arguments in courts throughout the nation, advocating the rights of relators.

In our view, as noted above, the FCA in its present form has worked well and there is no pressing need for major amendments.  Moreover, we have strong concerns about the False Claims Act Correction Act of 2007.  Specifically, we believe that Section 3, which would allow federal employees to act as relators, is unsound as a matter of public policy, will cause an unnecessary drain on the Treasury, will invite interference with federal investigations, and thus will *not* further our shared goal of protecting the public fisc.

We are similarly concerned about Section 4's narrowing of the current public disclosure bar.  This section severely narrows the circumstances where the bar would apply in a way that would reward relators with no first hand knowledge and who do not add information beyond what is in the public domain, as well as relators in a broad range of cases where the government already is taking action.  If these changes were implemented, then even if there is an active Government investigation into the same matter, a relator could file suit and reduce the taxpayers'



**EXHIBIT**

**B**

recovery even though he or she has not contributed anything new to the Government's case. We think this is fundamentally at odds with the underlying purpose of the *qui tam* provisions, which is to incentivize relators to disclose wrongdoing of which the Government would otherwise be unaware.

The Administration cannot support this legislation as currently drafted  That said, we have attached as an appendix a detailed analysis of the legislations's provisions to assist this Committee in its consideration of the present legislation.  We would also appreciate the opportunity to continue to work with the Committee and its Members to find the best approach for furthering our common goal: fighting fraud against the public fisc.

The Office of Management and Budget has advised that there is no objection to the presentation of these views from the standpoint of the Administration's program.  If we may be of additional assistance, please do not hesitate to contact this office.

Sincerely,

Brian A. Benczkowski
Principal Deputy Assistant Attorney General

cc:    The Honorable Arlen Specter
       Ranking Member

Enclosure

2

**APPENDIX**

1.   Presentment and Federal Funds

Section 2 of S. 2041 proposes changes designed to address the issue of presentment that has arisen in the wake of *U.S. ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542 (D.C. Cir. 2004), in which the United States Court of Appeals for the District of Columbia Circuit held that both §§ 3729(a)(1) and (a)(2) require that a false claim be presented to an official of the United States, and not just a recipient of federal funds. That issue is now pending in the Supreme Court. *See Allison Engine v. United States*, 471 F.3d 610 (6th Cir. 2006), *cert. granted*, 128 S. Ct. 491 (2007). Section 2 eliminates from §§ 3729(a)(1) and (a)(2) the language that the D.C. Circuit relied upon to require presentment to the United States, and revises these sections to impose liability on any person who presents, or uses a false statement or record to get paid, "a false or fraudulent claim for Government money or property". The legislation defines "Government money or property" to include money or property that the United States "provides, has provided, or will reimburse to a contractor, grantee, agent or other recipient to be spent or used on the Government's behalf or to advance Government programs."

The new definition of "Government money or property" contains terms that are unclear and may engender significant litigation. For example, as previously noted, "Government money or property" is defined to include money or property provided to a third party that is to be spent or used "on the Government's behalf" or "to advance Government programs". The meaning of the quoted terms may be subject to judicial debate.

Also, the Department has argued that the district court's opinion in *U.S. ex rel. DRC v. Custer Battles*, 376 F.Supp.2d 628 (E.D. Va. 2006) (appeal filed, No. 07-1220 (4th Cir.), and placed in abeyance pending the Supreme Court's decision in *Allison Engine*) is incorrect. Nevertheless, the language in S. 2041 is problematic. In *Custer Battles*, the district court held that the FCA encompassed only claims for federal funds, and therefore contracts paid from the Development Fund for Iraq (DFI funds) did not give rise to actionable claims because DFI funds were not federal funds. Section 2 of the proposed legislation appears to address this ruling by defining "Government money or property" to include "money or property belonging to any administrative beneficiary". An administrative beneficiary is defined, in turn, to mean "any natural person or entity..." on whose behalf the United States Government, alone or with others, collects, possesses, transmits, administers, manages, or acts as custodian of money or property." Furthermore, Section 2 amends the FCA to provide that the Government may recover three times the amount of damages which "the Government, its grantee, or administrative beneficiary" sustains.

While the new definition of "administrative beneficiary" would supersede the district court's holding in *Custer Battles* that the FCA is limited to only federal funds, it is not clear whether the proposed new definition would lead to a different result in that case. The district court concluded that the Coalition Provisional Authority (CPA) in Iraq,

1

which controlled the DFI funds at issue in that case, was not an entity of the United States. Accordingly, the proposed definition of administrative beneficiary would only encompass the DFI monies at issue in *Custer Battles* if the United States can be said to have "collect[ed], possess[ed], transmit[ted], administer[ed], manage[d], or act[ed] as a custodian" of the DFI funds "alone or with" the CPA. If neither the CPA, nor the American employees working for the CPA, is considered to constitute the "United States" for purposes of the FCA, then it is not clear that this standard would have been satisfied with respect to the DFI monies at issue in *Custer Battles*. At a minimum, the exact scope of the term "administrative beneficiary" can also be expected to engender significant litigation.

The Department has argued in numerous cases – including in the Supreme Court – against the interpretation of the FCA advanced in *Totten*. Similarly, the Department argued against the district court's ruling in *Custer Battles*, and has filed an amicus brief in the Fourth Circuit urging it to reverse that ruling. If the purpose is to redress the primary holdings in *Totten* and *Custer Battles* in the proposed legislation, then there may be a more effective and simpler way to do so. First, revising current § 3729(a)(1) to remove the reference to "presentment" and to parallel the language of current § 3729(a)(2), thereby imposing liability on any person who "knowingly, makes, uses, or causes to be made or used a false or fraudulent claim for payment or approval by the Government." Second, revising the definition of a "claim" in current § 3729(c) to clarify that a claim exists if either the United States pays out money or property, or if federal funds are impacted, as follows: "The term 'claim' includes any request or demand, whether under a contract or otherwise, for money or property (A) which is presented to an officer or employee of the United States, whether or not the United States has title to the money or property, or (B) which is made to a contractor, grantee, or other recipient if the United States Government provides or has provided any portion of the money or property requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." Third, revising the current damages provision in the FCA to provide for a penalty "plus 3 times the amount of money or property paid or approved because of the act of that person" (and should modify the FCA's voluntary disclosure provision in a similar fashion). These changes would clarify the presentment and federal funds issues, and make clear that they are not prerequisites to the imposition of liability or the recovery of damages under the FCA, without the need for the new and untested terms contained in the legislation.

Although the Department has argued that the *Totten* and *Custer Battles* decisions were wrongly decided, the Department does not advocate, and would not support, application of the FCA to all acts of fraud directed at any entity that receives money from the United States. Thus, for example, a FCA claim does not and should not exist where a particular contractor performs work both for the federal government and for private customers, and a subcontractor submits to the contractor a fraudulent request for payment on a private customer's project. Even though the contractor was a recipient of federal funds, the subcontractor's false claim for payment would not implicate federal interests if it does not have a potential effect on the government's funding under its contracts.

2

Similarly, the United States does not support expansion of the FCA to claims submitted to grant recipients where the fraudulent claim made to the grantee does not affect the furtherance of the grant's federal purpose.

    2.    <u>Conspiracy</u>

Section 2 extends the FCA's current conspiracy provision to any person who "conspires to commit any substantive violation" of the FCA. This change would be a useful correction to the rulings of several courts that the current FCA conspiracy provision does not encompass a conspiracy to submit a reverse false claim. To avoid any possible confusion, however, rather than using the phrase "any substantive violation," we recommend that the legislation specify the particular provisions encompassed by the revised conspiracy provision (i.e., §§ 3729(a)(1)(A)-(B), (D)-(G)).

    3.    <u>Failing to Deliver Money or Property</u>

Section 2 revises § 3729(a)(4) of the FCA, which imposes liability for failing to return money or property to the Government. The legislation, among other things, adds to this section a reference to "retaining overpayments" and "conversion of money or property", and eliminates the reference to a "certificate or receipt".

We agree that current § 3729(a)(4) should be revised, but recommend a more streamlined version than that proposed by the current legislation. We recommend that any reference to specific intent to defraud, or concealment or conversion of property, be removed and that the provision provide for liability against any person who "has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property." This change would make § 3729(a)(4) more consistent with the other primary liability provisions, by removing the reference to specific intent and concealment, and requiring a showing only that the defendant acted "knowingly."

At a minimum, the legislation should be revised to eliminate the reference to "Government money or property" and instead retain the current reference in § 3729(a)(4) to money or property "used or to be used by the Government". Under the proposed amendment to this subsection, money or property that was owed to the United States, but had not yet been delivered into the Government's possession, would arguably fall outside the provision as revised. Thus, for example, if a private mail carrier were to destroy property being shipped to a U.S. facility before it reached the facility, that conduct might not be actionable under the proposed amendment.

Finally, we agree that it would be useful to expand the FCA to prohibit the knowing retention of an overpayment. Since an overpayment is in the nature of a reverse false claim, we believe, however, that corrective language addressing the issue of overpayments is more appropriately accomplished by revising current § 3729(a)(7), commonly known as the reverse false claims provision, and adding a definition of the term "obligation", rather than by adding a reference to overpayments to current

§ 3729(a)(4). To that end, we would recommend that: (i) § 3729(a)(7) be amended to impose liability not only on those who use a false statement or record to reduce, conceal, or avoid an obligation owed to the United States, but also to impose liability where a person knowingly "conceals, avoids, or decreases an obligation to pay or transmit money or property to the Government" even in the absence of any false statement or record, and (ii) the term "obligation" be defined to include "a fixed duty, or a contingent duty arising from an express or implied contractual, quasi-contractual, grantor-grantee, licensor-licensee, fee-based, or similar relationship, including the retention of any overpayment."

These revisions would make explicit that we can pursue those who knowingly retain an overpayment. Additionally, the revised version of § 3729(a)(7) would be more faithful to Congress' general purpose in enacting this subsection in 1986, which was to provide for liability equal but opposite to that imposed under the Act's affirmative liability provisions. While those affirmative provisions currently impose liability even in the absence of any false statement or record, there is no analogue in the reverse false claim context. Finally, the proposed definition of obligation would also redress those cases that have held or suggested that the term obligation encompasses only a duty to pay that is fixed in all particulars, including the specific amount owed. *See, e.g., American Textile Mfrs. Inst. v. The Limited, Inc.,* 190 F.3d 729 (6th Cir. 1999); *United States v. Q International Courier, Inc.,* 131 F.3d 770 (8th Cir. 1997).

If a reference to overpayments is retained in § 3729(a)(4), then we recommend that the proposed legislation clarify the level of scienter that must be demonstrated to recover an overpayment. The legislation currently provides for liability against any person who "intending to defraud the Government, to retain overpayment, or knowingly to convert the money or property...to an unauthorized use" fails to return it. It is unclear from the quoted language whether one has to show an intent to defraud in order to impose liability for failure to return an overpayment. The amendment should make clear that proof of a "knowing" failure to return an overpayment, just like a knowing conversion of money or property to an unauthorized use, is sufficient for liability.

4.    Penalties

Section 2 describes the range of applicable penalties as "not less than $5,000 and not more than $10,000." Since the penalty range has been modified by other Acts of Congress to account for inflation, we recommend that the legislation clarify that it is not intended to override these subsequent modifications, by including the following language: "not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 104-410, as amended by the Debt Collection Improvement Act of 1996, Pub. L. 104-134."

5.    Voluntary Disclosure

Section 2 places the voluntary disclosure provision into a separate subsection with a subheading titled "Lesser Penalty". Since the voluntary disclosure provision does not provide for a lesser penalty, but rather for reduced damages, in the event certain

4

requirements are satisfied, we recommend that the subheading be changed to "Reduced Damages".

Furthermore, the placement of the voluntary disclosure provision in a new subsection may raise a question as to whether penalties are still available where a defendant satisfies the voluntary disclosure requirements. The voluntary disclosure provision continues to make reference only to damages. If the voluntary disclosure provision were contained in a distinct subsection, the absence of any reference to penalties could be used by a defendant to argue that penalties are no longer available. Accordingly, we recommend that the legislation expressly provide in the voluntary disclosure provision that the penalties available are "not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 104-410, as amended by the Debt Collection Improvement Act of 1996, Pub. L. 104-134."

6.    Knowledge

Section 2 adds the term "known" to the definition of the terms "knowing" and "knowingly". It is unclear why this change was made, since neither the current, nor the proposed version, of the FCA's liability provisions uses the term "known".

7.    Service of Complaint

Section 3730(b)(2) of the Act currently provides that the relator shall serve the United States with a copy of the relator's complaint and written disclosure pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. While S. 2041 does not address this issue, we recommend that the reference to Rule 4(d)(4) be changed just to Rule 4, since this rule has been amended and paragraph (d)(4) no longer addresses the issue of service on the United States.

8.    Government Employees

Section 3 of S. 2041 proposes to modify 31 U.S.C. § 3730 to permit *qui tam* suits by Government employees. The new legislation would authorize a Government employee to file suit based on information learned during the course of the employee's duties unless (i) "all the necessary and specific material allegations" underlying the employee's action were "derived from an open and active fraud investigation", or (ii) the employee failed to disclose "substantially all material evidence" in his or her possession to certain designated federal officials prior to filing suit and the Government did not file an action within 12 months (or any extension of that period) of those disclosures.

We believe that there should be a complete bar on *qui tam* suits filed by current and former Government employees that utilize information acquired during the course of Government employment. It has been the Department's longstanding view, through several Administrations, that allowing such suits is unsound as a matter of public policy, will cause an unnecessary drain on the Treasury, and will invite interference with federal

5

investigations, and thus will *not* further our shared goal of protecting the public fisc. Each federal employee has an existing duty to report fraud. Adding a personal financial incentive to file *qui tam* suits creates the potential for conflicts with this duty, and undermines both the employees' loyalty to the Government and the public's confidence that the Government's decisions are based on the public interest rather than individual employees' personal financial interests. We note that existing mechanisms are available to all Government employees who seek to report fraud and initiate Government action. The Inspectors General of the executive agencies are charged with the responsibility to investigate and pursue allegations of fraud on their agency's contracts and programs; similarly, the Attorney General is charged with the responsibility to litigate and prosecute those allegations in the federal courts. In addition, where a federal employee believes he or she has suffered reprisals as a result of making such a report to an Inspector General or the Department of Justice, the employee can seek protection under the current federal whistleblower protection laws.

While it is true that all Government employees are obligated to report fraud, it is particularly true for those Government employees, such as auditors, investigators or attorneys, who are paid salaries by the taxpayer to identify and root out fraud, and should not need an additional personal financial incentive to do their important jobs. The opportunity for personal gain presents a potentially corrupting incentive for such employees either to allege fraud where it does not exist, or to withhold information from supervisors and colleagues so that the Government is not able to pursue the fraud through official action and the employees instead may pursue it personally for their own financial benefit. Employees also will have an incentive to focus on those matters likely to lead to lucrative recoveries for themselves, perhaps at the expense of other official duties of equal or greater importance to the Government. Moreover, once an auditor or investigator has filed a *qui tam* suit, the question arises whether the employee's personal financial interest gives rise to a conflict of interest that impairs the employee's ability to work on the matter, *see, e.g.,* 18 U.S.C. § 208, 5 C.F.R. § 2635.101, Executive Order 12731 (Oct. 17, 1990), or to serve as a fact or expert witness for the Government in any criminal or civil trial. The taxpayers thus could end up paying the salaries of individuals whose personal financial interests limit their performance of the jobs the taxpayers are paying them to do. At a minimum, suits by this category of employees (or that utilize information acquired by such employees) should be excluded.

In addition to the broad concerns regarding this category of relators, we also have a number of specific concerns. First, the dismissal provisions should be extended to cover any person who learns of information from a Government employee. Otherwise, a Government employee could skirt the limitations imposed by the current legislation by passing his or her information to a third party. To address this issue, the current legislation should be revised in several ways. Proposed new § 3730(b)(6)(A) should permit dismissal of any action or claim that utilizes information "obtained in the course of federal employment", and not just suits filed by current Government employees, as the legislation currently provides. Additionally, new language should be added to the legislation not only to bar suits by federal investigators, auditors, or attorneys, but also suits by those who learn information from such employees. This can be accomplished by

adding the following language: "No action or claim may be brought that utilizes information obtained in the course of employment by any employee of an investigatory or audit agency of the United States, including, but not limited to, the United States Department of Justice, an Office of Inspector General, the Defense Contract Audit Agency, or the Government Accountability Office, or by any individual acting as an attorney, contracting officer, contracting officer's technical representative, or other government contracting official, auditor or investigator for the United States or any of its agencies."

Second, it is unclear whether the United States would continue to have the right to dismiss *qui tam* actions filed by Government employees on grounds unrelated to their status as Government employees, such as the first to file or public disclosure provisions. We do not believe that the proposed legislation intended to confer any greater right upon Government employees to pursue *qui tam* actions than other citizens or to curtail the Government's power to dismiss *qui tam* actions under 31 U.S.C. § 3730(c)(2). To the extent Section 3 may be construed otherwise, it potentially raises constitutional concerns, because it would diminish the Government's control over litigation to enforce its interests. Court challenges that have upheld the constitutionality of the existing *qui tam* provisions against separation of powers challenges have relied at least in part on the Government's broad power of dismissal. *See, e.g., United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 754-55 (9th Cir. 1993). Therefore, the proposed legislation should clarify that it is not intended to have this effect, nor to limit the government's right to dismiss on any other grounds, by adding the following language to the Government employee provisions: "Nothing in this subsection (b)(6) shall be construed to limit the Government's authority to dismiss an action or claim, or a person who brings an action or claim, under § 3730(b) for any reason other than that the action or claim utilizes information obtained in the course of federal employment."

Third, the proposed legislation permits the Government to dismiss a Government employee's *qui tam* action if "all the necessary and specific allegations were derived from an open and active fraud investigation." As discussed below, we recommend that the public disclosure provision be revised to exclude any relator – whether a Government employee or a private citizen – if the Government is already pursuing the matter and the relator fails to provide new information to the Government.

In any event, we believe that the proposed standard for dismissal is too narrow in several important respects. By limiting dismissal to situations where the Government employee "derived" his or her information from a Government investigation, it would permit the employee to claim a share even where the Government is actively investigating the fraud, and the employee has contributed nothing to that investigation. Additionally, the requirement that "all the necessary and specific allegations" be derived from the Government's investigation will enable an employee who derives the core allegations of his or her complaint from such an investigation, but then adds one additional allegation from some other source, to share in a case the Government unquestionably is pursuing. Furthermore, the reference to an "active" fraud investigation is not defined, and many investigations are not labeled "fraud" investigations, at least

initially, but nonetheless often form the basis for FCA referrals and cases. Finally, a Government employee should be prohibited from borrowing from audits as well as investigations. Thus, if this aspect of the proposed Government employee provision is retained, then it should be revised to make the touchstone for dismissal whether there exists "a filed criminal indictment or information, or an open criminal, civil, or administrative investigation or audit by the Government into substantially the same matters as set out in the complaint."

Fourth, the proposed legislation also permits the Government to dismiss a Government employee *qui tam* action if "none of the following has occurred" – the relator disclosed "substantially all material evidence and information" to certain designated federal officials, and the Government failed to file suit within 12 months (or any extension of that period). We have several concerns about this aspect of the proposed legislation.

Initially, the phrase "none of the following has occurred" is confusing and could be read to foreclose the Government from moving to dismiss if it failed to file an action within 12 months, even if the relator did not make the requisite disclosures. The "none of the following" language should be removed and replaced with language that makes clear that dismissal is proper if (1) the relator failed to make the requisite disclosures; or (2) if such disclosures were made, the Government filed an action within 12 months (or any extension of that period) of those disclosures.

Furthermore, the Government has 12 months to file a complaint after it receives notice of the Government employee's allegations, but may seek leave of court for another 12 month extension. The new provision, however, does not specify where the Government is to file an extension application given that there is no pending court action at that point. To avoid this logistical difficulty, the additional 12 month period should be triggered upon written notice by the Government to the employee.

Fifth, the legislation provides the Government with only 60 days to file a motion to dismiss once the relator's suit is filed. We believe this time period is too short. A minimum of 120 days should be provided, since the Government will be required to use its limited resources both to investigate how the relator learned of the fraud and whether he or she made the requisite disclosures, in addition to investigating the underlying merits of the relator's allegations. We also believe the Government should be able to dismiss even after the initial dismissal period expires "for good cause shown." Otherwise, the Government would be potentially without recourse if it learned that an employee had misrepresented facts bearing upon his or her compliance with the disclosure requirements until after the initial period for filing a motion to dismiss had expired.

Sixth, the legislation does not expressly state that the lawsuit must be dismissed if the stated criteria are not satisfied. Proposed new § 3730(6)(A) should be rephrased to read: "The court shall dismiss an action or claim, or the person bringing an action or claim, under subsection (b), upon a motion filed by the Government not later than…"

Seventh, the proposed legislation requires the Government's motion to dismiss to "set forth documentation of the allegations, evidence and information in support of the motion." It is not clear what "documentation of the allegations, evidence and information" refers to, or why this provision is necessary. To the extent that it suggests that the burden of proof is on the Government, we disagree and believe instead that the relator should have the burden of showing entitlement to funds that would otherwise belong to the American taxpayer. Accordingly, we recommend that this language be removed and replaced with a statement that "it shall be the burden of the person bringing the civil action to demonstrate that all of the conditions" for filing suit have occurred.

Eighth, the proposed legislation provides insufficient protection for information that the Government may introduce in support of a motion to dismiss. While the defendant is not permitted to seek discovery of such information from the Government, only the relator is authorized to object to the public disclosure of this information, and neither the relator nor the Government may prevent the disclosure of this information to the defendant, which may obtain this information at the discretion of the court. Because the information introduced by the Government may relate to an ongoing investigation, disclosure of this information to the defendant or others may jeopardize the Government's evidence or legal theories, and thereby adversely impact the Government's ability to protect the public fisc. Thus, we think it is important that the legislation provide that the evidentiary material submitted by the Government "shall not be disclosed" to the defendant, and that the Government may move to restrict the relator's access to this information as well.

Conversely, the legislation provides that if the Government employee's suit is dismissed, the matter "shall" remain sealed. The Government believes, and established case law supports, that the public has a presumptive right to learn about judicial decisions. Accordingly, we recommend that the question of whether a case should remain sealed after it is terminated should continue to be decided by the courts on a case by case basis, consistent with the traditional standards governing public access to court proceedings.

Ninth, the proposed legislation requires the Department to report every 6 months on any motions filed by the Government to dismiss Government employees from a *qui tam* suit. This requirement would impose an unnecessary burden on the Department and distract from the pressing business of investigating and litigating claims of fraud on the Government. Moreover, the current seal provisions of the FCA would preclude such reporting, absent leave of court, and if the proposed legislation is enacted, would also prohibit such reporting absent the consent of the relator.

Finally, the legislation should clarify that the right of Government employees to file *qui tam* actions does not bring them within the ambit of the "whistleblower protection" provisions in §3730(h) of the Act, since federal employees are covered by, and entitled to the protection of, the Civil Service Reform Act, which was intended to provide the exclusive remedy for claims against federal employers. We therefore

9

recommend that language be added to § 3730(h) stating that it does not apply "against the United States or any of its agencies."

9.    Waiver of Claims

Section 4(a) adds language providing that "[n]o claim for a violation of section 3729 may be waived or released by any action of any person, except insofar as such action is part of a court approved settlement of a false claim civil action brought under this section." This provision appears to be designed to prevent defendants from arguing that a private person can unwittingly waive the right of either the United States, or that person, to file a False Claims Act action – for example, by releasing all claims against his or her employer as part of a separation agreement, or by failing to disclose a pending or potential *qui tam* action in a bankruptcy proceeding. *See U.S. ex rel. Gebert v. Transport Administrative Services*, 260 F.3d 909 (8th Cir. 2001) (relator lacked standing to bring *qui tam* suit because putative suit was not disclosed on list of assets in bankruptcy proceeding and because relator released all claims against defendant in settlement agreement with bankruptcy trustee); *U.S. ex rel. Green v. Northrop Corp.*, 59 F.3d 953 (9th Cir. 1995) (prefiling release of *qui tam* claim could not be enforced to bar subsequent *qui tam* claim).

While we support the objective of precluding an unwitting waiver by a private party of that party's right to bring a *qui tam* action, the specific language in the proposed legislation is over-broad and could lead to unintended and inappropriate consequences. As written, it would appear to preclude the United States from settling a *qui tam* action with a defendant without court approval, even where the relator agrees to the settlement. Furthermore, it might even require court approval of a non-*qui tam* settlement negotiated by the United States, depending on how the term "action of any person" is interpreted. This runs contrary to the general principle that courts should play a limited role in approving settlements absent special circumstances, such as the need to protect the rights of unrepresented third parties, *see United States v. City of Miami*, 614 F.2d 1322, 1330 (5th Cir. 1980). Moreover, curtailment of the settlement power of the United States under these provisions, like curtailment of its power to dismiss the litigation, would reduce control by the Executive Branch over *qui tam* (and potentially other) litigation and thereby raise constitutional separation of powers concerns.

To redress the foregoing concerns, the waiver provision should be amended as follows to make clear that it does not require court approval of any non-*qui tam* settlement, or of any *qui tam* settlement unless the relator objects: "No claim for a violation of section 3729 may be waived or released by any action of any person who brings an action under this subsection (b), except insofar as such action is part of a court approved settlement of a false claim civil action brought under this section. Nothing in this subsection (1) shall be construed to limit the ability of the United States to decline to pursue any claim brought under this subsection (b), or to require court approval of a settlement by the Government with a defendant of an action brought pursuant to subsection (a), or pursuant to subsection (b) unless the person bringing the action objects to the settlement pursuant to subparagraph (c)(2)(B)." At a minimum, the new provision

10

should refer to the "person bringing the action" rather than merely the "person" to clarify that it is not intended to reach a non-*qui tam* settlement between the United States and a defendant.

10.    Public Disclosure

Section 4 of the legislation substantially narrows the current public disclosure bar. It permits dismissal only if "all essential elements" of the relator's allegations are "based exclusively on the public disclosure" of allegations or transactions in certain enumerated types of disclosures. A "public disclosure" is defined to be only a disclosure "on the public record" or that has otherwise been "disseminated broadly to the public". Additionally, a relator's action is defined to be "based upon" a public disclosure only if the relator "derived his knowledge" of "all essential elements of liability" from the public disclosure. Finally, the public disclosure bar is no longer defined as jurisdictional and only the Government (not the defendant) is allowed to dismiss on this ground.

The Department supports revisions to the public disclosure bar that will address our two major and longstanding concerns. First, it is our view that a relator who has no firsthand information about fraud and brings nothing new to the suit should not be entitled to reap the rewards of a False Claims Act suit. Second, where the government is already pursuing a matter, the reward only harms the taxpayers by diverting up to 30 percent to the private plaintiff.

We strongly object to the proposal in Section 4 because it severely narrows the circumstances where the bar would apply in a way that would reward relators with no first hand knowledge and who do not add information beyond what is in the public domain, as well as relators in a broad range of cases where the government already is taking action. If these changes were implemented, then even if there is an active Government investigation into the same matter, a relator could file suit and reduce the taxpayers' recovery even though he or she has not contributed anything new to the Government's case. We think this is fundamentally at odds with the underlying purpose of the *qui tam* provisions, which is to incentivize relators to disclose wrongdoing of which the Government would otherwise be unaware. Moreover, the proposed standard for dismissal under this provision is too limited, and will allow the diversion of taxpayer dollars to relators who provide little assistance to the Government's fraud efforts. While the Department could support aspects of the proposal that eliminate the jurisdictional nature of the public disclosure bar and that permit only the Attorney General (and not defendants) to seek dismissal of relators on this ground, it could only do so if the bar reflects the concerns we've outlined; we do not agree with the legislation's drastic narrowing of the bar.

In lieu of the proposed amendments, we recommend instead that the public disclosure bar be revised to permit dismissal of a *qui tam* action by the Government if it is already pursuing the matter unless the relator provides new information that would enhance the Government's recovery and which the Government's existing investigation would not have uncovered, or the Government's investigation is based on information

11

voluntarily provided by the relator. Specifically, we would recommend the following revised language: "A court shall dismiss an action or claim or the person bringing the action or claim under subsection 3730(b), upon a motion by the Government filed on or before service of a complaint on the defendant pursuant to Section 3730(b), or thereafter for good cause shown, if (A) on the date the action or claim was filed substantially the same matters as alleged in the action or claim were contained in, or the subject of, (I) a filed criminal indictment or information, or an open criminal, civil or administrative investigation, or (II) a news media report, or congressional hearing, report or investigation, if within 90 days of the issuance or completion of such news media report or congressional hearing, report or investigation, the executive branch of the Government opened an investigation or audit of the facts contained in such news media report or congressional hearing, report or investigation, (B) any new information provided by the person does not add substantial grounds for additional recovery beyond those encompassed within the Government's existing indictment, information, investigation, or audit, and (C) the Government's existing indictment, information, investigation or audit was not initiated based on information voluntarily brought by the person to the Government." In addition, we would recommend that § 3730(d)(1) be revised as follows: "If the person bringing the action is not dismissed under subsection (e)(4) because the person provided new information that adds substantial grounds for additional recovery beyond those encompassed within the Government's existing indictment, information, investigation or audit, then such person shall be entitled to receive a share, pursuant to the first sentence of this paragraph, only of proceeds of the action or settlement that are attributable to the new basis for recovery that is stated in the action brought by that person."

This alternative language remains faithful to the fundamental principle that taxpayer dollars should be used to reward only those relators who supplement, not duplicate, the Government's fraud enforcement efforts. We recognize that there are situations when even though the Government is pursuing an allegation of fraud, a relator may bring valuable new information which significantly increases the Government's recovery. The alternative language protects such a relator by allowing the relator to recover where the new information provides "substantial grounds for additional recovery beyond those encompassed within the Government's existing indictment, information, investigation or audit." However, such a relator's recovery would be limited to the "proceeds of the action or settlement that are attributable to the new basis for recovery that is stated in the action brought by that person." Thus, if a relator files a lawsuit alleging fraud A and B, and fraud A is already under investigation by the Government, but fraud B is new information to the Government, the relator may recover a share of the proceeds attributable to fraud B.

We also recognize that there are situations where the Government's pursuit of a fraud allegation may have been triggered by the actions of the relator. Again, the alternative language protects such a relator by allowing the relator to recover if the Government's enforcement efforts are "based on information voluntarily brought by the person to the Government." But where a relator neither puts the Government on the trail of the fraud, nor contributes anything new, under the Government's proposed language

12

the relator would not be permitted to allege claims already being pursued by the Government.

We also object to the proposed amendments to the public disclosure provision for the following additional reasons. First, with respect to the Government seeking the dismissal of a relator on public disclosure grounds, we think it is important that the Government be given adequate time to file such a motion, and recommend that the proposed legislation expressly provide for such a motion to be filed "on or before service of a complaint on the defendant pursuant to Section 3730(b), or thereafter for good cause shown." This change is particularly important if the current language of the proposed legislation is enacted, since it may require substantial investigation, including discovery of the relator, to determine where the relator derived his or her knowledge.

Second, by limiting a public disclosure to "disclosures made on the public record" or "broadly to the general public", the proposed amendment will encourage opportunism at the expense of the taxpayers. The new language would not cover the common situation where a private party, usually a company employee, learns of a Government investigation as a result of being questioned by Government auditors or investigators, or who is tasked with gathering information in response to a Government subpoena or audit request. Under the proposed legislation, such a person would be free to file a *qui tam* action, despite the fact that his or her lawsuit in no way helps the Government to protect the public fisc.

Third, the proposed legislation permits dismissal of a relator only if "all of the essential elements" of the relator's allegations are derived from the public disclosure. As discussed above, such a standard inappropriately would permit a relator who derives substantially all of his or her information about that scheme from a public disclosure, but then adds one additional element from another source, to reduce the Government's recovery for the taxpayers.

11.    *Qui Tam* Awards

Section 4(c) revises § 3730(d)(3) of the FCA to provide that a court may reduce the relator's share if the court determines that the relator "planned and initiated the violation of section 3729", or derived his or her knowledge "primarily from specific information . . . that the Government publicly disclosed . . . or that [the Government] disclosed privately" to the relator. Although the proposed legislation retains the second sentence of § 3730(d)(1) – which caps a relator's share at 10 percent if his or her action is based primarily on certain disclosures – we presume the amendment was designed to replace this provision, and to remove the 10 percent cap on the relator's share where the Government is already on the trail of the fraud. Thus, the amendment would treat this situation the same as where the relator is a planner and initiator of the fraud – and leave it entirely to the discretion of the court whether, and how much, to reduce the relator's share.

13

We agree that both situations should be treated similarly, but believe the change should go in the other direction, and that the 10 percent cap should be extended to the situation where the relator is a planner and initiator. We think a reduced share – capped at 10 percent – is an appropriate limitation where a relator was the one who triggered the initial fraudulent scheme, and still provides the relator with an adequate incentive to disclose the scheme if the relator is inclined to do so. We also believe that a 10 percent cap is appropriate where the Government is already on the trail of the fraud at the time the relator files suit, and thus oppose removing the cap in these situations. Such a cap is all the more important if the legislation's version of the public disclosure provision is to be adopted, since under this revision the relator would not even need to possess direct and independent knowledge of the fraudulent activity being pursued by the Government. For this reason, we strongly encourage Congress to retain the 10 percent cap on the relator's share where the Government was already pursuing the fraud alleged by the relator independent of any information provided by the relator.

The issue of whether to keep the 10 percent cap where the Government is already on the trail of the fraud would be mooted if the alternative language for the public disclosure bar suggested above were to be enacted. As discussed, under the alternative language, a relator would be entitled to claim a share of any recovery even if the Government was already on the trail of the fraud, but only of the additional recovery attributable to any new information brought forth by the relator.

12.    Statute of Limitations

Section 6 amends § 3731(b)(1) to provide for a single 10 year statute of limitations in all FCA cases, and to clarify that the Government's pleading upon intervention relates back to the relator's complaint for statute of limitations purposes, "to the extent that the claim of the Government arises out of the conduct, transactions, or occurrences set forth or attempted to be set forth" in the relator's complaint. We welcome both of these changes.

13.    Civil Investigative Demands

Section 7 proposes two modifications to the FCA's Civil Investigative Demand (CID) provisions. While we support these changes, we believe that a more streamlined CID provision is preferable to the current statute even with the modifications proposed by the current legislation. We would welcome the opportunity to discuss with you and your staff the contours of such a provision.

Section 7 proposes to amend the CID provisions to permit the Attorney General to delegate some of the authority currently conferred upon him under 31 U.S.C. § 3733. We would recommend that the Attorney General be authorized to delegate any of the authority he possesses under this section to the Assistant Attorney General for the Civil Division.

14

Section 7 also authorizes the Government to share CID information with relators. Again, while we support this change, we do not think it goes far enough. The current CID provisions allow CID information to be provided "for official use" to any Department officer or employee "who is authorized for such use under regulations which the Attorney General shall issue."

We think it is important that this language be modified to permit the Government to share information with any person or entity that can assist in the Government's investigation, such as other federal and state law enforcement agencies. For example, the Government routinely works with agents from the State Medicaid Fraud Control Units in connection with its health care fraud investigations, and the inability of the Government to share CID information with these agents is a significant and unnecessary impediment to these investigations.

To eliminate this restriction, we recommend the following changes: i) strike from § 3733(I)(2)(B) the phrase "who is authorized for such use under regulations which the Attorney General shall issue", ii) strike from subsection 3733(I)(2)(C) the sentence: "Disclosure of information to any such other agency shall be allowed only upon application, made by the Attorney General to a United States district court, showing substantial need for the use of the information by such agency in furtherance of its statutory responsibilities," and iii) add a new § 3733(I)(8) providing that "the term official use means any use that is consistent with the law, and the regulations and policies of the Department of Justice, including, but not limited to, use in connection with internal Department of Justice memoranda and reports; communications between the Department of Justice and a federal, state, or local government agency, or a contractor of a federal, state, or local government agency, undertaken in furtherance of a Department of Justice investigation, or prosecution, of a case; interviews of any *qui tam* relator or other witness; oral examinations; depositions; preparation for and response to civil discovery requests; introduction into the record of a case or proceeding; applications, motions, memoranda and briefs submitted to a court or other tribunal; and communications with Government investigators, auditors, consultants and experts, the counsel of other parties, arbitrators and mediators, concerning an investigation, case or proceeding."

We also note that the current version of the proposed legislation specifies that "any information" obtained by a CID may be shared with a *qui tam* relator. It is not clear whether Congress intended the use of the term "any" to permit the Government to share information that might otherwise be precluded from disclosure under other federal laws, such as the Trade Secrets Act. Although the Department does not oppose such a result, if Congress intended the revised language to permit disclosure notwithstanding these other laws, then it should state its intention expressly. Otherwise, Government attorneys and investigators will be left without clear guidance as to whether these more restrictive laws, many of which contain criminal sanctions, preclude disclosure of otherwise covered information.

Finally, we recommend that Section 7 clarify that the Attorney General (or his designee) may issue CIDs in connection with a *qui tam* action prior to the Government's

15

election to intervene or decline to intervene in that action. Specifically, we recommend that § 3733(a)(1), instead of stating that "the Attorney General may, before commencing a civil proceeding under section 3730 or other false claims law, issue [a CID]" provide that "the Attorney General may, before commencing a civil proceeding under subsection 3730(a) or other false claims law, or electing pursuant to section 3730(b)(4) to intervene or decline to intervene in an action under subsection 3730(b), issue [a CID]."

14.    Applicable Date

Following the passage of the 1986 amendments, the Department spent substantial time and resources litigating the effective date of those amendments. To avoid such a recurrence, Congress should make clear in the proposed legislation when it intends the proposed changes to be effective. Specifically, we recommend that Congress add the following language to the legislation: "This Act shall apply to all cases pending on the date of enactment, and to all cases filed thereafter."

15.    Severability

Out of an abundance of caution, in order to ensure that any provision in the FCA that might be invalidated does not result in the invalidity of the remaining provisions, we suggest a severability clause. Thus, we recommend that Congress add a provision stating as follows: "If any provision or application of this Act is held invalid, the invalidity shall not affect other provisions or applications of this Act which can be given effect without regard to the invalid provision or application, and to this end the provisions or applications of this Act are severable."