UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. JUDY WOOD on behalf of the § <br> UNITED STATES OF AMERICA, § <br>     Plaintiff/Relator, § <br> vs. § <br> § <br> § <br> APPLIED RESEARCH ASSOCIATES, § <br> INC.; SCIENCE APPLICATIONS § <br> INTERNATIONAL CORP., § <br> BOEING, NuSTATS; COMPUTER § <br> AIDED ENGINEERING ASSOCIATES, § <br> GEOSTAATS, INC.; GILSANZ § <br> MURRAY STEFICEK LLP; HUGHES § <br> ASSOCIATES, INC.; AJMAL ABBASI; § <br> EDUARDO KAUSEL; DAVID PARKS; § <br> DAVID SHARP; DANIELE VENEZANO; § <br> JOSEF VAN DYCK; KASPAR WILLIAM; § <br> ROLF JENSEN & ASOCIATES, INC.; § <br> ROSENWASSER/GROSSMAN § <br> CONSULTING ENGINEERS, P.C.; § <br> SIMPOSON GUMPERTZ & HEGER, INC.;§ <br> S.K. GHOSH ASSOCIATES, INC.; § <br> SKIDMORE, OWINGS & MERRILL, § <br> LLP; TENG & ASSOCIATES, INC; § <br> UNDERWRITERS LABORATORIES, § <br> INC.; WISS, JANNEY, ELSTNER § <br> ASSOCIATES, INC.; AMERICAN § <br> AIRLINES; SILVERSTEIN PROPERTIES; § <br> and UNITED AIRLINES, § <br>     Defendants. § | Case No. 07CV3314 (GBD) <br><br><br> **SIMPSON, GUMPERTZ & HEGER, INC. AND COMPUTER AIDED ENGINEERING ASSOCIATES, INC.'S REPLY TO RELATOR'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   INTRODUCTION ........................................................................................................1

II.  ARGUMENT................................................................................................................4

    A.   The District Court Lacks Subject Matter Jurisdiction Under Section 3730(3)(4)................4

    B.   The Complaint Must Be Dismissed Because It Fails To Plead Fraud
        With Particularity ................................................................................................9

    C.   Wood's Complaint Should Be Dismissed Because The Information
        Quality Act ("IQA") Provides An Exclusive Administrative Process
        For Challenging The Quality Of Information Disseminated By NIST ..............10

III. CONCLUSION ...........................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

Bell Atlantic Corp. v. Twombly,
   127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ................................................................9

Gold v. Morrison-Knudson Co.,
   68 F.3d 1475 (2d Cir. 1995) ....................................................................................9

Karvelas v. Melrose-Wakefield Hosp.,
   360 F.3d at 233 ......................................................................................................10

Rockwell Int'l Corp. v. United States,
   127 S. Ct. 1397, 1408-1410 (2007) ..................................................................5, 7, 8

Rockwell Int'l Corp. v. United States,
   127 S. Ct. 1397, 167 L. Ed. 2d 190, 205 (2007) .....................................................9

Salt Inst. v. Leavitt,
   440 F.3d 156 (4th Cir. 2006) .................................................................................10

Salt Inst. v. Thompson,
   345 F. Supp. 2d 589 (E.D. Va. 2004) ....................................................................10

Smith v. New York Presbyterian Hosp.,
   2007 U.S. Dist. Lexis 53826, * 20-22 (S.D.N.Y. 2007) .......................................10

United States ex rel. Alcohol Found, Inc. v. Kalmanovitz Charitable Found., Inc.,
   186 F. Supp. 2d 458 (S.D.N.Y. 2002) ................................................................9, 10

United States ex rel. Anti-Discrimination Center v. Westchester County,
   2007 U.S. Dist. Lexis 50589, * 22 (S.D.N.Y. 2007) ...............................................5

United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.,
   498 F.Supp.2d 25 (D.D.C. 2007) .............................................................................9

United States ex rel. Kreindler & Kreindler v. United Techs. Corp.,
   985 F.2d 1148, (2d Cir. 1993) .................................................................................5

**Statutes**

15 U.S.C. § 281a .......................................................................................................6, 11

31 U.S.C. § 3729(a)(1) ...............................................................................................1, 10

31 U.S.C. § 3729(a)(2) ...................................................................................................... 1, 10

31 U.S.C. § 3729(a)(7) ...................................................................................................... 1, 10

31 U.S.C. § 3730 (e)(4) ....................................................................................................... 4, 5

31 U.S.C. § 3730(d)(4) ............................................................................................................ 1

31 U.S.C. § 3730(e)(4)(A) ....................................................................................................... 8

31 U.S.C. § 3730(e)(4)(B) ....................................................................................................... 7

31 U.S.C. §§ 3729-33 .............................................................................................................. 1

31 U.S.C. §3730(3)(4) ............................................................................................................. 4

31 U.S.C. §3730(e)(4) ............................................................................................................. 4

**Other Authorities**

Information Quality Act ......................................................................................................... 10

Pub. L. No. 106-554, § 1(a)(3)[Title V, § 515](Dec. 21, 2000) ............................................. 10

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 1

Fed. R. Civ. P. 12(h)(3) ........................................................................................................... 1

Fed. R. Civ. P. 9(b) .................................................................................................................. 1

## I.   INTRODUCTION

On April 25, 2007, the Relator in this case, Dr. Judy Wood ("Wood") commenced this *quit tam* action under the False Claims Act, 31 U.S.C. §§ 3729-33 by filing a *qui tam* complaint under seal in the United States District Court for the Southern District of New York against twenty-seven defendants including Simpson Gumpertz & Heger, Inc. ("SGH") and Computer Aided Engineering Associates ("CAE").  On September 12, 2007, the District Court (George B. Daniels, U.S.D.J.) entered an Order unsealing the Complaint and authorizing service, but Wood did not serve the Complaint on SGH, CAE or the other defendants.  Several months later, on December 28, 2007, Dr. Wood filed a First Amended Complaint and took steps to effectuate service.  The First Amended Complaint alleges three causes of action under the False Claims Act:  (1) False Claims Act, 31 U.S.C. § 3729(a)(1) (Presentation of False Claims); (2) False Claims Act, 31 U.S.C. § 3729(a)(2) (Making or Using False Record or Statement); (3) False Claims Act, 31 U.S.C. § 3729(a)(7) (Reverse False Claims).  The First Amended Complaint differs from the original Complaint because it does not contain any of the common law causes of action that were initially asserted by Wood in the original Complaint.

On February 28, 2008, defendants SGH and CAE filed a Motion to Dismiss the Wood Suit in its entirety, pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(6) and 12(h)(3), and for an award of attorney's fees and costs pursuant to 31 U.S.C. § 3730(d)(4).  See Simpson, Gumpertz & Heger, Inc. And Computer Aided Engineering Associates, Inc.'s Memorandum Of Law In Support Of Motion To Dismiss ("Defendants' Memorandum").  On or about February 29, 2008 through March 3, 2008, Relator filed a 42-page Memorandum of Law in Opposition to Defendants' Motions to Dismiss, together with hundreds of pages of Affidavits, Affirmations

1

and Exhibits. ("Wood's Opposition"). Wood's Opposition papers continue to make allegations of fraud against all of the defendants on the grounds that aircraft collisions were not the event that caused the collapse of the WTC towers and that NIST did not investigate the actual event of collapse but instead, the NCSTAR report chose to focus on the "sequence of events from the instance of aircraft impact to the initiation of collapse." Wood Opposition, p. 20 ("NCSTAR contains two . . . footnotes that may tacitly admit that no investigation of the actual collapses took place"); see also Wood Opposition, p. 21 ("in both footnotes, NIST . . . engage[s] in subterfuge . . ."); see alsoWood Opposition, p. 29 ("NCSTAR 1's footnotes . . . show that NIST and these contractors likewise curtailed the first part of their investigation to begin at 'the moment of impact' meaning they may not have actually investigated whether . . . jetliners actually hit the WTC"). In short, Wood contends that NCSTAR is fraudulent because NIST did not investigate whether some initiating event *other than* plane collisions might have caused the destruction of the WTC, but merely assumed that aircraft impact was the cause.

Wood's First Amended *qui tam* Complaint relies on the same NCSTAR footnotes she discusses in her Opposition papers, and also identifies the very same page of NCSTAR 1 --- NCSTAR, pg. xxxvii --- as the basis of her fraud theory. See First Amended *qui tam* Complaint, ¶¶ 6-8, 52. She complains in both her Complaint and in a Request for Correction ("RFC"), dated March 16, 2007, that NIST disseminated false information on "p. xxxv[sic] (p. 37)" because NIST first described its mandate as "determining what caused the destruction of WTC 1,2" but then "NIST openly declined to carry it out" by "intentional and admitted modification and narrowing of the scope of that stated objective and mandate." Id. at Ex. A , p. 2.  Another *qui tam* Relator, Dr. Morgan Reynolds, filed a *qui tam* Complaint on May 30, 2007 that makes

2

an identical allegation of fraud and accuses NIST of not carrying out its statutory mandate. Compare Wood First Amended Complaint, ¶¶ 6-8, 52 with Reynolds Complaint, ¶¶ 6-8, 50.

Wood and Reynolds both claim to be the "original source" of this allegation of fraud, and both point to the Requests For Correction ("RFC") which they have filed with NIST as proof of their "original source" status. It is a matter of public record that Reynolds filed an RFC with NIST on March 8, 2007 and Wood filed an RFC with NIST on March 16, 2007.[1] See Wood Complaint, Exhibit "A;" Reynolds' Complaint, Exhibit "A." See also Department of Commerce, Office Of The Chief Information Officer, FY 2007 Information Quality Requests For Corrections (http://ocio.os.doc.gov/ITPolicyandProgram/Information_Quality). What Wood and Reynolds both fail to acknowledge, however, is that neither of them has any direct or independent knowledge of the "who, what, where and why" underlying the focus of NIST's investigation. Additionally, neither of them was the first person to file an RFC alleging fraud based upon NCSTAR and, therefore, neither of their RFCs establishes them as an original source of the *allegation* that NCSTAR is fraudulent because the focus of the report was the "probable collapse sequence." In fact, on March 1, 2007, Edward F. Haas filed an RFC with NIST (the "Haas RFC") which also seeks correction of NCSTAR on the very same grounds alleged in the Wood and Reynolds *qui tam* Complaints. Specifically, the Haas RFC charges that NCSTAR is fraudulent because on page xxxvii of NCSTAR 1 "NIST has plainly acknowledged that it did not investigate what it defined as the 'event of collapse' as is plainly admitted in footnote 2 of the Executive Summary of NCSTAR 1 where the following quotation is to be found:

> The focus of the investigation was on the sequence of events from the instance of aircraft impact to the initiation of collapse for each tower. For

---

[1] Copies of these RFCs are attached as exhibits, respectively, to their *qui tam* Complaints; i.e., Wood's RFCs are attached to her *qui tam* Complaint, and Reynolds' RFCs are attached to his *qui tam* Complaint.

3

> brevity in this report, this sequence is referred to as the "probable collapse
> sequence," although it does not actually include the structural behavior of
> the tower after the conditions for collapse initiation were reached and
> collapse became inevitable.

See Haas RFC, dated March 1, 2007, Department of Commerce, Office Of The Chief Information Officer, *supra* at http://ocio.os.doc.gov/ITPolicyandProgram/Information_Quality).

In sum, Haas (and not Wood or Reynolds) first filed an RFC challenging NCSTAR as fraudulent because NIST focused on the "probable collapse sequence" instead of investigating the initiating event that led to the collapse.[2]

## II.   ARGUMENT

### A.   The District Court Lacks Subject Matter Jurisdiction Under Section 3730(3)(4)

Section 3730(e)(4) of the False Claims Act defines the jurisdiction of a federal court over *qui tam* actions, and bars jurisdiction if the information giving rise to the *qui tam* claim was subject to public disclosure through an administrative report or investigation, unless the individual bringing suit is the "original source" of the information. See 31 U.S.C. § 3730 (e)(4). Wood's Complaint challenges the validity of scientific information included in the final report of the NIST investigation of the collapse of the WTC towers, conducted under the National Construction Safety Team Act, commonly known as NCSTAR 1. The NCSTAR report is an administrative report within the meaning of the FCA, and the jurisdictional bar applies because it was publicly disclosed. The allegations of Wood's *qui tam* Complaint state explicitly that NCSTAR 1 is publicly disseminated by NIST on its website. See First Revised Complaint, Ex. A, March 16, 2007 RFC, p. 1. Woods alleges that she obtained a copy of the NCSTAR report on the NIST website, and provides references to the specific NIST web site address where she found

---

[2] The Haas RFC speculates that "controlled demolition" was the initiating event, while Wood and Reynolds hypothesize that "directed energy weapons" ("DEW") was the initiating event.

4

the purportedly "fraudulent" information. Id. ("the source of the said NCSTAR 1, meaning the point at which it can be and has been accessed"). Thus, the so called wrongdoing was publicly disclosed because the NCSTAR report was, and still is, available to anyone who wishes to consult the NIST website. As explained by the Second Circuit in United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1158 (2d Cir. 1993), the § 3730(e)(4) jurisdictional bar "was designed to preclude *qui tam* suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it as it was to the Relator." Id.

In the recent case of United States ex rel. Anti-Discrimination Center v. Westchester County, the District Court for the Southern District of New York explained the rationale for the jurisdictional bar in the specific context of an administrative report, as follows: "[i]f the information is derived from a federal government report, then the federal government has the information and can act appropriately, and barring FCA actions in such situations serves the legislative purpose of the 1986 amendments to 'avoid[] parasitic actions by opportunists who attempt to capitalize on public information without seriously contributing to the disclosure of the fraud.'" United States ex rel. Anti-Discrimination Center v. Westchester County, 2007 U.S. Dist. Lexis 50589, * 22 (S.D.N.Y. 2007).

In Rockwell Int'l Corp. v. United States, the Supreme Court clarified that the public disclosure provision of the False Claims Act, 31 U.S.C. § 3730(e)(4) cuts off subject matter jurisdiction over a Relator's claims where the suit is based upon publicly disclosed information unless the Relator can establish that she is an "original source" of the information. Rockwell Int'l Corp. v. United States, 127 S. Ct. 1397, 1407-1410 (2007). The Court pointed out that "the 'information' to which subparagraph [3730(e)(4)] (B) speaks about is the information upon

which the Relators' allegations are based," meaning that the inquiry should not focus on whether the Relator was the source of the public disclosure, but rather whether he is a source of the information underlying his own suit. Id. at 1408.

Wood's Opposition argues that "[c]learly [NCSTAR 1] is not plaintiff's information [within the meaning of subparagraph (B)]," and that NCSTAR 1 cannot be the information on which her suit is based because "NCSTAR 1 does not declare itself to be fraudulent." Opposition, p. 18. She argues that the information on which her suit is based are the RFCs she has filed with NIST, which "do claim that NCSTAR 1 is fraudulent." Opposition, p. 18. She argues that "RFCs can serve as a source for original source, direct and independent information if need be." Id. at 22.

Assuming, *arguendo*, that Wood is partially correct because in some contexts an RFC might qualify as original source information (*but see infra*, explaining that 15 U.S.C. § 281a prohibits a plaintiff from using any part of NCSTAR in a suit or action for damages arising out of any matter mentioned in such report), she is still not the original source of the allegations in her First Amended Complaint. As noted above, the premise of her allegations is that fraud "arises from the manner in which NCSTAR 1 was prepared," Opposition, p. 20, and more specifically, "what was not investigated." Id. at 22 (emphasis in original). She charges that "NCSTAR 1's footnotes, quoted elsewhere (footnotes 2 and 13), show that NIST and these contractors curtailed the first part of their investigation to begin at 'the moment of impact' meaning they may not have actually investigated whether wide-body 767 jetliners actually hit the WTC, since that aspect occurred before impact. " Id. at 29. In short, Wood contends that NCSTAR is fraudulent because NIST failed to investigate whether some initiating event *other than* plane collisions might have caused the destruction of the WTC, and failed to seriously

6

consider other alternative hypotheses (Haas suggests controlled demolition; Wood and Reynolds suggest directed energy weapons).

As noted above, Wood's RFC cannot be the "original source" of this fraud theory because she has no direct and independent knowledge about how or why NIST chose to focus on the "sequence of events from the instance of aircraft impact to the initiation of collapse." Additionally, she is not the first person to challenge the focus of NCSTAR. On March 1, 2007, Edward F. Haas filed an RFC with NIST (the "Haas RFC") which sought correction of NCSTAR on these same grounds and challenged NCSTAR as fraudulent because NIST focused on the "probable collapse sequence" instead of investigating alternative hypothetical events other than aircraft impact that might have led to the collapse. Specifically, the Haas RFC charges that NCSTAR is fraudulent because on page xxxvii of NCSTAR 1 "NIST has plainly acknowledged that it did not investigate what it defined as the 'event of collapse' as is plainly admitted in footnote 2 of the Executive Summary of NCSTAR 1 . . ." See Haas RFC, dated March 1, 2007, *supra* at http://ocio.os.doc.gov/ITPolicyandProgram/Information_Quality. This is precisely the same allegation that Wood makes in her RFC.

Wood's Opposition papers argue that the Motion to Dismiss filed by SGH and CAE should be denied because it does not adhere to the original source analysis set forth by the Supreme Court in Rockwell Int'l Corp. v. United States. See Declaration of Jerry V. Leaphart, p. 1-2. It is Wood, however, that has misconstrued the Supreme Court's analysis in Rockwell. Under the FCA, the Relator must have "direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B). Prior to the Supreme Court's recent decision in Rockwell, the Courts of Appeals were divided over whether a Relator must be an original source of the publicly disclosed information, or of the Relator's own allegations of

7

fraud. Thus, in Rockwell, the Supreme Court considered whether the phrase "information on which the allegations are based" refers to the information on which the Relator's allegations are based or the information which triggered the public disclosure bar. Rockwell, 127 S. Ct. at 1407-1410. Subparagraph (A) of Section 3730(e)(4) complicated the matter because it bars actions based on the "public disclosure of allegations or transactions" and provides an exception for cases brought by "an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The Supreme Court had to decide whether the word "information" has a different meaning in Paragraph B and Paragraph A. Rockwell, 127 S. Ct. at 1407-1410. The Court found that the word "information" does have a different meaning in Paragraph A and Paragraph B, and the phrase "information on which the allegations are based" refers to the Relator's allegations and not the publicly disclosed allegations or transactions. Id.

As the Rockwell Court explained, the question whether a Relator has direct and independent knowledge or whether her knowledge "falls short" of this standard can often be determined by what a Relator *does not know*. Rockwell Int'l Corp. v. United States, 127 S.Ct. at 1410. For this reason, it is important to point out what Wood, Reynolds and Haas clearly *do not* know. None of them has ever worked for SGH, CAE, or any of the other defendants. None of them ever had any contact with *anyone* responsible for the NIST investigation of the WTC, or anything included in the NCSTAR report. Therefore, it is difficult if not impossible to discern how they could have gained any direct and independent knowledge about any conduct by the defendants giving rise to liability. As aptly explained by another district court, "This is much the same as Rockwell, where the Relator Stone no longer worked at Rockwell when the conduct giving rise to liability occurred, and demonstrated no other way in which he would have gained

8

direct knowledge of what went on there." United States ex rel. Hockett v. Columbia/HCA Healthcare Corp., 498 F.Supp.2d 25, 51-52 (D.D.C. 2007).

Finally, although Wood faults NCSTAR 1-2 for not disclosing that "directed energy weapons" were the cause of the destruction of the WTC complex, see First Amended Complaint ¶¶ 52-55, she has provided no proof that directed energy weapons were, in fact, used on 9/11, and she acknowledges that her suspicions are based primarily upon news and other media reports that "describe the . . . current status of development of DEW." Id. ¶ 20; Ex. B, p. 7-9. Additionally, because Wood has "no direct and independent knowledge of any of this publicly disclosed information [she] was not an original source of that information, and [her] suit is barred." Gold v. Morrison-Knudson Co., 68 F.3d 1475, 1477 (2d Cir. 1995); Rockwell Int'l Corp. v. United States, 127 S. Ct. at 1407-1410.

**B.     The Complaint Must Be Dismissed Because It Fails To Plead Fraud With Particularity**

Wood's Opposition Memorandum "concurs that this case is governed by the heightened pleading requirements of Rule 9(b)." Opposition, p. 41. Despite this purported understanding of the law, Wood's First Amended Complaint consists solely of conclusory allegations of fraud and fails to state even one single instance of any defendant submitting a fraudulent bill to the government. In the recent case of Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the reason for Rule 9(b), explaining that "on certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires." Id. Here, as in United States ex rel. Alcohol Found, Inc. v. Kalmanovitz Charitable Found., Inc., 186 F. Supp. 2d 458 (S.D.N.Y. 2002), the relator's theory seeks to expand the definition of "false" claim or record to address "a generic definition of 'fraud' without direct link to specific claims submitted to the Government

for approval or payment." Alcohol Foundation, *supra* at 464. Compare Smith v. New York Presbyterian Hosp., 2007 U.S. Dist. Lexis 53826, * 20-22 (S.D.N.Y. 2007) ("[a]mended complaint ... consists solely of conclusory allegations ... and ... fails to state a single specific instance of a defendant submitting a fraudulent bill to the government"); see also Karvelas v. Melrose-Wakefield Hosp., 360 F.3d at 233 ("as Karvelas himself concedes ... his complaint "did not set forth the specifics ... of any one single cost report, or bill, or piece of paper that was sent to the Government to obtain funding"). Since none of Wood's hundreds of pages of pleadings, affidavits or exhibits provides any information about a specific, fraudulent bill sent to and paid for by the government, her First Cause Of Action (31 U.S.C. § 3729(a)(1)), Second Cause Of Action (31 U.S.C. § 3729(a)(2)), and Third Cause Of Action (31 U.S.C. § 3729(a)(7)) must be dismissed.

    C.    **Wood's Complaint Should Be Dismissed Because The Information Quality Act ("IQA") Provides An Exclusive Administrative Process For Challenging The Quality Of Information Disseminated By NIST**

Reynold's lawsuit should also be dismissed because it violates the intent of the Information Quality Act ("IQA"), also known as the Data Quality Act, which establishes an administrative process for information correction requests and appeals. The IQA is located at Section 515 of the Treasure and General Government Appropriations Act for Fiscal Year 2001 (Public Law 106-554). See Pub. L. No. 106-554, § 1(a)(3)[Title V, § 515](Dec. 21, 2000). The language of the IQA reflects Congress's intent that "any challenges to the quality of information disseminated by federal agencies should take place in administrative proceedings before federal agencies and not in the courts." Salt Inst. v. Thompson, 345 F. Supp. 2d 589, 601 (E.D. Va. 2004) aff'd Salt Inst. v. Leavitt, 440 F.3d 156 (4th Cir. 2006). As noted above, Wood has failed to identify a single instance of any defendant submitting a fraudulent bill to the United States government. Her so-called First Amended *qui tam* Complaint simply challenges what she

perceives to be the scientific flaws of the NCSTAR report. The IQA provides an administrative remedy for persons like Wood who feel that an administrative report is inaccurate and needs to be corrected. Finally, the language of 15 U.S.C. § 281a provides:

> The National Institute of Standards and Technology . . . may initiate and conduct investigations to determine the causes of structural failures in structures which are used . . . by the general public. <u>No part of any report resulting from such investigation</u> shall be admitted as evidence or used in any suit or action for damages arising out of any matter mentioned in such report.

<u>See</u> 15 U.S.C. § 281a. In sum, although Wood contends that NCSTAR is fraudulent "on its face," she has failed to plead her claim with particularity because she has failed to link the defendants' allegedly fraudulent practices to the submission of even a single fraudulent claim. She is precluded by 15 U.S.C. § 281a from using any part of the NCSTAR report as evidence in this suit under the FCA, which is apparently seeking damages arising out of matters mentioned in such report. <u>Id</u>.

### III.   <u>CONCLUSION</u>

For all of the above reasons, this Court should dismiss Wood's *qui tam* lawsuit against the defendants Simpson Gumpertz & Heger, Inc. and Computer Aided Engineering Associates.

Respectfully submitted,

SIMPSON GUMPERTZ & HEGER, INC. and
COMPUTER AIDED ENGINEERING
ASSOCIATES, INC.

By its attorneys,

/s/ David M. Pollack
David M. Pollack (DP6143)
DONOVAN HATEM LLP
One Penn Plaza
250 W. 34th Street, Suite 3324
New York, NY 10119
(212) 244-3333

David J. Hatem, P.C.
William D. Gillis, Jr., Esq.
Patricia B. Gary, Esq.
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Dated: March 10, 2008

### CERITIFCATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 10, 2008.


                                          /s/ Patricia B. Gary

01142695