

# Fire Investigation Report on World Trade Center Bldg 7

## Effort to halt government WTC7 investigation launched

March 1, 2007 – The following Request for Correction was e-mailed to the National Institute of Standards and Technology on February 28, 2007. It will be certified mailed on March 1, 2007. Attorney Jerry Leaphart has informed me that he will work on the legal papers for an injunction this weekend.

The subject matter within this Request for Correction and pending filing for injunction is purposeful. The reader might be tempted to conclude that many other contradictions found within the government investigation of WTC1, WTC2, and WTC7 should have been referenced in this Request for Correction. I can assure you that great thought went into this effort and it mirrors the advice of counsel. What some might conclude as "too narrow" is actually advantageous to achieving the goal – the truth.

Please support the Muckraker Report in this effort.

February 28, 2007

VIA EMAIL AND CERTIFIED MAIL RRR

Chief, Management and Organization Division
National Institute of Standards and Technology
100 Bureau Drive, Mail Stop 3220
Gaithersburg, MD 20899-3220
Email: info.quality@nist.gov

Re: Requests for Correction per Section 515 of Public Law 106-554

**Dear Chief, Management and Organization Division:**

This is a matter involving the "information" that has been "disseminated" that serves a useful purpose of making sure that the ongoing investigation of what caused the destruction of World Trade Center building number 7 (WTC7) complies with data and information quality standards. For all of the reasons set forth below in conjunction with specific requests for correction, such standards are in significant danger of being utterly and completely violated.

This request is submitted by Edward F. Haas (requester). My address, telephone number and email address are as set forth above. In addition, attorney Jerry V. Leaphart represents me in this matter. I request that all subsequent replies be sent to both me and to my counsel whose contact information is set forth below.

The requests for correction of information submitted hereunder are submitted under Section 515 of Public Law 106-554.

The particular information disseminated that is the subject of the request consists in:

CORRECTION REQUEST ISSUE 1

The information is identified and known as "Federal Building and Fire Safety Investigation of the World Trade Center Disaster WTC 7 Technical Approach and Status Summary" and is dated as December 12, 2006. (Information Item No. 1)

The source from which requester obtained the information is the NIST web site at the following page:
http://wtc.nist.gov/media/WTC7_Approach_Summary12Dec06.pdf

Requester obtained the information from and after December 12, 2006 from the said web page. It is understood and acknowledged that said information has been disseminated so as to provide a status of an ongoing investigation, and that said investigation is seriously imperiled by the incorporation of information that requires, at a minimum, the corrections set forth and requested hereunder.

Requester submits this request on behalf of himself and other similarly situated persons. Requester is a citizen of the United States and maintains a web site for the accurate dissemination and propagation of governmental information. Requester's business is in the nature of a research and journalistic organization that has succeeded in providing citizens of the United States with timely information concerning the function and the operation of various governmental agencies that are charged by their enabling legislation, rules and regulations of conducting certain duties in and for the public interest, of which and about which each citizen has a vital

interest.

As indicated, this request is to be understood as being submitted by Requester in his said capacity and either additionally or alternatively on behalf of other similarly situated persons who are too numerous to quantify or specifically name. Requester is adversely affected by the ongoing threat of promulgation of information that is in need of correction because the present course of action may result in the further concealment of serious wrongdoing.

Specifically, Information Item No. 1 fails to comply with applicable information quality guidelines and standards in a number of particular ways, including, but not limited to inclusion of the following demonstrably false statement found at page 11 of Information Item No. 1:

"NIST is analyzing scenarios for the event that initiated the collapse of WTC 7. As a part of this work, NIST is considering whether hypothetical blast events could have played a role in initiating the collapse. While NIST has found **no evidence of a blast or controlled demolition event, NIST will estimate the magnitude of hypothetical blast scenarios that could have led to the structural failure of one or more critical elements as a result of blast."** (Bold emphasis added)

Requester asserts that the quoted information is demonstrably false and misleading and must be corrected, together with other information that, at present, also contains false and misleading statements. Said information is false in and as a result of the following particulars:

NIST's NCSTSAR 1 report, issued in or about the month of October 2005, contains the following statement that must be deemed applicable to the ongoing investigation of what caused the 6.6-second destruction of WTC Building 7 and to Information Item No. 1:

"**NIST found no corroborating evidence for alternative hypotheses suggesting that the WTC towers were brought down by controlled demolition using explosives planted prior to September 11, 2001."** (Bold emphasis added)

It is to be noted that NCSTAR 1 repeats the above quoted phrase in no fewer than three widely separated passages of that document; namely: pgs xxvii, 146, and 176, respectively.

Separate and apart from an analysis of the context in which the quoted statement is to be found, there exists a profound difference between the quoted statement and the statement that is now found in connection with the ongoing work of determining what caused the symmetrical, 6.6 second destruction of WTC 7 and quoted above; namely, the quoted statement

from page 11 of Information Item No. 1 that completely contradicts the quoted portion of NCSTAR 1. For purposes of clarity and ease of comparison the two different and mutually contradictory statements are set forth below, one right after the other:

Pg. xxxvii of NCSTAR 1 states:

"NIST found no corroborating evidence for alternative hypotheses suggesting that the WTC towers were brought down by controlled demolition using explosives planted prior to September 11, 2001."

But, Pg. 11 of "Federal Building and Fire Safety Investigation of the World Trade Center Disaster WTC 7 Technical Approach and Status Summary" of December 12, 2006 states, in specifically relevant part:

"While NIST has found no evidence of a blast or controlled demolition event..."

It is seen, therefore, that NIST is making a decidedly different claim now where the previously published concept of no "corroborating evidence" of a certain, specifically limited type of controlled demolition; namely, a controlled demolition brought about by a highly specific factual subset – explosives planted prior to September 11, 2001 – has been morphed, changed and broadened far beyond what NIST previously said lacked corroboration into a blanket statement that NIST has found no evidence of a blast or controlled demolition event.

That statement is false and must be corrected.

The distinctions here articulated are significant and substantial. They make a difference.

The statement "corroborating evidence," by definition, indicates there was some evidence of controlled demolition as, indeed, the <10-second, complete, total annihilation of the two WTC towers is, in and of itself, evidence of controlled demolition. Indeed, NIST, in articulating the lack of "corroborating evidence" also contributed to the present need for correction because, to requester's knowledge, NIST does not reveal the details regarding what evidence there was that was not "corroborated".

NIST, then, should correct NCSTAR 1 by articulating what evidence it had that it could not corroborate.

Thus, this request for correction should be understood to entail, contain and include a request for correction of NCSTAR 1 in conjunction with and as a necessary adjunct to the correction of Information Item No. 1 that pertains to the ongoing investigation of the destruction of WTC 7.

NIST has also plainly acknowledged that it did not investigate what it defined as the "event of collapse" as is plainly admitted in footnote 2 of the Executive Summary of NCSTAR 1 where the following quotation is to be found:

**"The focus of the investigation was on the sequence of events from the instance of aircraft impact to the initiation of collapse for each tower. For brevity in this report, this sequence is referred to as the "probable collapse sequence," although it does not actually include the structural behavior of the tower after the conditions for collapse initiation were reached and collapse became inevitable."** [See NCSTAR 1, pgs xxxvii, footnote 2 and/or 82, footnote 13] (Bold emphasis added)

Thus, it is quite clear that had NIST claimed there was "no evidence" of controlled demolition of the WTC towers, NCSTAR 1 would have been criminally fraudulent on its face had it attempted, on one hand, to acknowledge no investigation was done of what occurred during the actual destruction phase of the buildings and then claimed, on the other, that it lacked evidence of what it did not investigate.

Indeed, one reason why NIST could not "corroborate" evidence of controlled demolition is that it did not look for it. This is something that NIST must now specifically acknowledge so as not to continue misleading the public.

Accordingly, let this request for correction also serve to place NIST on notice that any further refusal by NIST to acknowledge that it cannot rule out the possibility of controlled demolition or otherwise state that it has found no evidence of controlled demolition in a context that suggests that it had looked for and did not find such evidence may be considered as indicative of fraud and of deception.

NIST cannot now state it has found no evidence of controlled demolition because that is decidedly not what it previously stated; and, in any event, having not looked for such evidence in the time and place where it might have been found, NIST must further correct the record.

In furtherance of the burden of proof that I, the affected person, have in this correction request, I hereby state that the ordinary meaning of the words and the phrase "corroborating evidence" as taken from the American Heritage Dictionary where the entry for corroborating states, and I quote: **cor·rob·o·rate** tr.v. **cor·rob·o·rat·ed, cor·rob·o·rat·ing, cor·rob·o·rates**: To strength or support with other evidence, make more certain. See Synonyms at confirm.

Strengthen and support with other evidence. NIST cannot continue on its present fraudulent path. It is fraud to now say there was no evidence of

controlled demolition when NIST previously stated something entirely different.

This conflict in publicly disseminated information compels NIST to issue a correction forthwith.

In its investigation of the destruction of WTC1 and WTC2, NIST failed to explore a controlled demolition hypothesis. Presumably, NIST did not pursue a controlled demolition hypothesis during its WTC1 and WTC2 investigation because it maintained that it had found no corroborating evidence of a blast or controlled demolition event. However, NIST claims that it is considering whether hypothetical blast events could have played a role in initiating the destruction of WTC7. This is suspect and demands correction. In regard to the WTC7 investigation NIST maintains:

*While NIST has found no evidence of a blast or controlled demolition event, NIST will estimate the magnitude of hypothetical blast scenarios that could have led to the structural failure of one or more critical elements as a result of blast.*

In order to do that, NIST will have to revisit NCSTAR 1 and undertake an analysis of what happened during the 10-second destruction of the twin towers, something it did not previously do. It cannot reasonably set up hypothetical blast scenarios that disregard what actually happened.

This, then, takes us into a second request for correction, as follows.

CORRECTION REQUEST ISSUE 2

The particular information disseminated that is the subject of this request consists in:

That certain information disseminated as solicitation number SB1341-06-Q-0186, which resulted in the issuance of a fixed price purchase order awarded by the federal government to Applied Research Associates, Inc. (ARA) of Albuquerque, New Mexico in or about March, 2006. (Information Item No. 2)

The source from which requester obtained the information is the NIST web site at the following page: http://wtc.nist.gov/solicitations/

Requester obtained the information from and after December 12, 2006 from the said web page. It is understood and acknowledged that said information has been disseminated so as to comply with a requirement that contracts awarded to third party contractors may be known to the public and for other reasons, including, by way of example, the ability to request corrections.

Requester submits this request on behalf of himself and other similarly situated persons. Requester is a citizen of the United States and maintains a web site for the accurate dissemination and propagation of governmental information. Requester's business is in the nature of a research and journalistic organization that has succeeded in providing citizens of the United States with timely information concerning the function and the operation of various governmental agencies that are charged by their enabling legislation, rules and regulations of conducting certain duties in and for the public interest, of which and about which each citizen has a vital interest.

As indicated, this request is to be understood as being submitted by Requester in his said capacity and either additionally or alternatively on behalf of other similarly situated persons who are too numerous to quantify or specifically name. Requester is adversely affected by the ongoing threat of promulgation of information that is in need of correction because the present course of action may result in the further concealment of serious wrongdoing.

Specifically, Information Item No. 2 fails to comply with applicable information quality guidelines and standards in a number of particular ways, including, but not limited to the fact that an inherent and definite conflict of interest arises as a result of the scope of work set out in Information Item No. 2.

The investigation of what caused the destruction of WTC7 has been compromised by the conclusions reached by NIST in its WTC1 and WTC2 investigation conclusions that indicated, as quoted above, and as summarized here, that evidence of controlled demolition could not be corroborated.

A controlled demolition conclusion at WTC7 would indeed challenge the integrity of the WTC1 / WTC2 collapse sequence report. The fact that many of the same scientists, experts, subcontractors, and associates responsible for the WTC1 / WTC2 conclusions are now working on the WTC7 investigation creates a conflict of interest concern because of inherent pressure to conform the outcome of the investigation of what caused the destruction of WTC 7 to that which they indicated caused the "initiation" of (but not actual destruction of) destruction of WTC 1,2...

In solicitation number SB1341-06-Q-0186 to Applied Research Associates, Inc. it states:

Research involving human subjects is not permitted under this award unless expressly authorized by in writing by the NIST Contracting Officer.

Under GSA Contract number GS23F0278M, NIST Order No. SB1341-06-8-

1539, as a firm fixed price effort, has been awarded to APPLIED RESEARCH ASSOCIATES, INC. (ARA) of Albuquerque, New Mexico, to append the following tasks to the original contract awarded on March 31, 2006 (SB1341-06-Q-0186). Under the appended tasks, the ARA (1) shall conduct analyses of impact damage and fire effects to provide candidate initiating events, which may lead to structural failures and global collapse, and (2) shall determine if there is any scenario of a hypothetical blast event or events that could have occurred in WTC 7 on September 11, 2001.

This study will reportedly be managed from the Silicon Valley Office of ARA that specializes in finite element analysis and nonlinear structural dynamics under blast and impact loading, impact and penetration mechanics, failure analysis, and blast effects and the analysis of progressive collapse in buildings. ARA is partnering with Simpson Gumpertz & Heger Inc. (SGH) of Waltham, Massachusetts, to conduct the appended tasks, and with Loizeaux Group International (LGI), the consulting services branch of Controlled Demolition Incorporated (CDI) of Phoenix, Maryland.

SGH is an engineering firm that specializes in design, investigation and retrofit of buildings and structures of all types. SGH has expertise in building structures, materials, and investigations and conducted the thermal-structural response analyses of each WTC tower, as part of their contract for the WTC towers investigation.

Loizeaux Group International (LGI) has expertise in a wide range of demolition, explosion and explosives-associated technology. This includes explosive processes and their direct and collateral effects of blast and resulting vibration, projectiles, and overpressure. They have conducted investigations involving commercial explosives, terrorist devices, commercial gas, and industrial accidents involving dusts, hot metals, and combustion processes.

The fact that ARA, SGH, and LGI are prohibited from interviewing human subjects unless expressly authorized in writing by the NIST Contracting Officer calls into question the quality, utility, objectivity, integrity, and transparency of the hypothetical blast scenario research. Indeed, much of the anecdotal information available to me confirms that there are both eyewitnesses to controlled demolition, consisting in people who have made public statements that they either heard and saw explosions and/or heard countdowns and then saw a destruction event that looked, well, controlled. Furthermore, more recently, evidence of controlled demolition has been made public consisting in video footage indicating a major news source, the British Broadcasting Company (BBC), aired a claim that WTC7 had "collapsed" several minutes before it actually did. Indeed, some video indicates a verbal claim of collapse with the building still standing in the background.

It has long been known that a key person, Larry Silverstein, a principal owner of property interests in the World Trade Center complex, indicated, in substance that a decision was made to "pull" – that is – demolish WTC 7.

That key investigators cannot interview such persons, without going through administrative hoops is absurd. Moreover, in at least one of these instances, advance knowledge that WTC 7 was to be demolished might well lead to criminal charges. NIST contractors such as ARA, SGH, and LGI are not qualified to conduct criminal investigations or criminal interviews or criminal interrogations.

Thus, not only is there an inherent conflict of interest in that some or all of these same parties were involved in the investigation of WTC1 and WTC2 that could not find "corroborating evidence" of controlled demolition, thus preordaining the same outcome for the WTC7 investigation, there is the possibility these contractors could taint a criminal investigation.

There is yet another problem.

Any evidence of a controlled demolition might, conceivably implicate one or more of the sub-contractors because some of them are entities that have expertise in controlled demolitions. For example, let us consider Controlled Demolition Inc., or one or more of its employees, past and present, and its subcontractors. The universe of individuals having the capability to carryout controlled demolition work is somewhat limited. Such skills are not generally found among the general population.

The range of people who could carryout such demolitions are necessarily limited. Upon information and belief, CDI carries out more than 70% of all controlled demolitions conducted in the US.

It stands to reason that past and present employees of CDI could be parties of interest to any criminal investigator investigating a controlled demolition event at WTC7 because these people clearly possess the technical expertise to "pull" any structure by controlled demolition.

I, as a requester, do not have to elaborate this issue overmuch. The potential conflict is clear and apparent and cries out for correction.

To continue to allow a hypothetical blast event investigation within the WTC7 investigation, done by the current crop of subcontractors demonstrates a lack of quality, utility, objectivity, integrity, and transparency within the investigation that is clear, apparent and incontrovertible.

NIST, ARA, SGH, and LGI, the consulting branch of CDI, are not qualified to conduct a proper investigation of whether or not a controlled demolition of

WTC7 occurred. The fact that ARA, SGH, and LGI are prohibited from interviewing human subjects unless expressly authorized in writing by the NIST Contracting Officer calls into question the quality, utility, objectivity, integrity, and transparency of the hypothetical blast scenario research in its own right. Moreover, even if they were allowed to do so, or granted permission to do so, another confounding variable exists because those parties should not be permitted to taint a possible criminal investigation.

ARA, SGH, and LGI are not qualified to conduct criminal investigations or criminal interviews or criminal interrogations. Controlled Demolition Inc., its employees past and present, and its subcontractors would be a parties of interest to any criminal investigator investigating a controlled demolition event at WTC7 because these people clearly possess the technical expertise to "pull" any structure by controlled demolition. From a criminal investigation standpoint, CDI would have to be cleared of suspicion prior to being solicited to assist in the investigation.

NIST, ARA, SGH, and LGI must cease their hypothetical blast scenario investigation forthwith because continuing with it is hopelessly tainted, compromised and damaged, and NIST must acknowledge as much.

By copy of this Correction Request to my counsel, Jerry V. Leaphart of Jerry V. Leaphart and Associates, P.C., I hereby request that he file for an injunction preventing NIST from going forward with any further issuance of any report on what caused the 6.6 second destruction of WTC 7 pending the resolution of this Correction Request.

Respectfully submitted,

Edward F. Haas

cc

Jerry V. Leaphart
8 West Street
Suite 203
Danbury, CT 06810

Last Updated: March 14, 2007
Questions regarding this section may be directed to the Good Guidance - Information Quality Administrator

---

U.S. Department of Commerce | Privacy Policy | FOIA | USA.gov | No FEAR Act | Disclaimer | Feedback | Forms | Information Quality