UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DR. JUDY WOOD on behalf of the            MEMORANDUM DECISION
UNITED STATES OF AMERICA,                         AND ORDER
                                                                   07 CV 3314 (GBD)

                Plaintiff/Relator,

     -against-

APPLIED RESEARCH ASSOCIATES, INC.;
SCIENCE APPLICATIONS INTERNATIONAL
CORP.; BOEING; NuSTATS; COMPUTER
AIDED ENGINEERING ASSOCIATES, INC.;
DATASOURCE, INC.; GEOSTAATS, INC.;
GILSANZ MURRAY STEFICEK LLP;
HUGHES ASSOCIATES, INC.; AJMAL
ABBASI; EDUARDO KAUSEL;
DAVID PARKS; DAVID SHARP; DANIELE
VENEZANO; JOSEF VAN DYCK; KASPAR
WILLIAM; ROLF JENSEN & ASSOCIATES,
INC.; ROSENWASSER/GROSSMAN CONSULTING
ENGINEERS, P.C.; SIMPSON GUMPERTZ &
HEGER, INC.; S.K. GHOSH ASSOCIATES,
INC.; SKIDMORE, OWING & MERRILL,
LLP; TENG & ASSOCIATES, INC.;
UNDERWRITERS LABORATORIES, INC.;
WISS, JANNEY, ELSTNER ASSOCIATES,
INC.; AMERICAN AIRLINES; SILVERSTEIN
PROPERTIES; and UNITED AIRLINES,

                Defendants.
------------------------------------------------------------x
GEORGE B. DANIELS, District Judge:

In separate actions,[1] three different plaintiffs, who are all represented by the same attorney, commenced individual lawsuits attempting to challenge the investigative findings, of the National Institute of Standards and Technology ("NIST"), as to how and why the World Trade Center buildings collapsed on 9/11. The focus of the NIST investigation was on the sequence of events "from the instance of aircraft impact to the initiation of collapse for each tower." Plaintiffs claim that a terrorist attack was not responsible for the destruction of the World Trade Center complex ("WTC"). According to plaintiffs, the evidence demonstrates that the destruction of the World Trade Center Towers was caused by a United States secret military "directed energy weapon."[2] Plaintiffs' attorney argues that "the defendants knowingly participated in the fraud of furthering the false claim that two wide-body jetliners hit the World Trade Center on 9/11/01."[3] (Reynolds Opp'n Mem. at 1).

Congress authorized NIST, a non-regulatory agency within the United States Department of Commerce, to conduct the technical investigation into the structural failings leading to the collapse of the Twin Towers and the building located at 7 World Trade Center

---

[1] The three related cases that are pending before this Court are: Wood v. Applied Research Associates, Inc., et al., 07 CV 3314 (GBD); Reynolds v. Science Applications Int'l, et al., 07 CV 4612 (GBD) and Haas v. Gutierrez, et al., 07 CV 2623 (GBD).

[2] Plaintiffs also claim that there is significant evidence that the cause of the destruction of World Trade Center building number 7 was a controlled demolition.

[3] Reynolds argues that "[t]his case involves the fraud perpetrated by the jetliner crash hoax." (Reynolds Opp'n Mem. at 6). Wood refers to "... the expressed myth of 9/11 that 19 Arabs did it with box cutters." (Wood Opp'n Mem. at 13). Haas contends that "World Trade Center building number 7 (WTC7) ... was not damaged in any way by any jetliner impact ..." "There is evidence of a controlled demolition ... that NIST is overtly seeking to squelch ..." (Haas Opp'n Mem. at 14).

("WTC7").[4]  On October 16, 2005, NIST issued its "Final Report on the Collapses of the Twin Towers of the World Trade Center;" which report is referred to as "NCSTAR 1."  NIST's investigation into the collapse of WTC7 is still proceeding.

Plaintiffs Judy Wood and Morgan Reynolds each independently sued the same non-governmental defendants who allegedly provided consulting and other services to NIST in connection with the NCSTAR 1 report.[5]  Plaintiff Edward Haas sued both governmental and non-governmental actors who are allegedly responsible for conducting the investigation itself, or have provided services as part of that investigation.[6]  All defendants, in each of the three actions,

---

[4]  As a result of the collapse of the WTC, the National Construction Safety Team Act (the "Act"), 15 U.S.C. § 1703 et seq., was enacted.  The purpose of the Act "is to improve the structural integrity of buildings and evacuation and emergency response procedures by investigating building failures and recommending specific improvements to building standards, codes, and practices, as well as to evacuation and emergency response procedures."  H.R. Rep. No. 107-530, at 5 (2002) reprinted in 2002 U.S.C.C.A.N. 941, 941.  Although the primary focus of the Act is on future building collapses, it nevertheless "gives NIST comprehensive authority to complete the investigation of the WTC disaster."  Id. at 14, 950; see also, 15 U.S.C. § 7311 ("The authorities and restrictions applicable under this chapter ... shall apply to the activities of the National Institute of Standards and Technology in response to the attacks of September 11, 2001.").

[5]  Plaintiffs Wood and Reynolds sued the following twenty-seven defendants: Science Applications International Corp.; Applied Research Associates, Inc.; Boeing; NuStats; Computer Aided Engineering Associates, Inc.; DataSource, Inc.; GEOSTAATS, Inc.; Gilsanz Murray Steficek LLP; Hughes Associates, Inc.; Ajmal Abbasi; Eduardo Kausel; David Parks; David Sharp; Daniele Venezano; Josef Van Dyck; Kaspar William; Rolf Jensen & Associates, Inc.; Rosenwasser/Grossman Consulting Engineers, P.C.; Simpson Gumpertz & Heger, Inc.; S.K. Ghosh Associates, Inc.; Skidmore, Owings & Merrill, LLP; Teng & Associates, Inc.; Underwriters Laboratories, Inc.; Wiss, Janney, Elstner Associates, Inc.; Silverstein Properties; American Airlines and United Airlines.
Plaintiff Reynolds subsequently dismissed his action against Silverstein Properties, American Airlines and United Airlines.

[6]  Plaintiff Haas sued the following defendants in both their individual and official capacities: Carlos M. Gutierrez, Secretary, United States Department of Commerce; NIST's Acting Director James Turner (pursuant to Fed.R.Civ.P. 25(d), Acting Director Turner is

moved to dismiss the lawsuits as being frivolous, and for lack of federal subject matter jurisdiction and failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(1) and (6), respectively. The motions to dismiss are granted and all three complaints are dismissed with prejudice.

Plaintiffs assert that NIST's investigation is tainted by fraud and other serious misconduct. They contend that the NCSTAR 1 report constitutes a "fraudulent document," in that it conceals the true cause for the collapse of the Twin Towers. Plaintiffs maintain that the alleged fraudulent nature of the investigation has furthered the deception, perpetrated upon the masses, that the WTC was demolished as a result of terrorists plowing two commercial airplanes, filled with thousand of gallons of jet fuel, directly into the Twin Towers at a high rate of speed.[7] They claim that, through the employment of psychological operations, millions were deceived into believing that the destruction was caused by a terrorist hijacking that murdered thousands of innocent people inside. Plaintiffs theorize that what actually occurred was that the Twin Towers disintegrated after being struck by the United States military's secret laser-like weaponry. All three plaintiffs explain that these "directed energy weapons" "are operational in Earth['s] orbit, at high altitude, low altitude, at sea and on land, ranging in lethality from the capacity to do great

---

automatically substituted for his predecessor, William A. Jeffrey); Dr. Shyam Sunder, NIST's Lead Investigator; Dr. Theresa McAllister, NIST's Research Structural Engineer; and Catherine Fletcher, Chief of NIST's Management and Organization Division. Haas also named as defendants "John Doe I-V, Contractors Employed by NIST," as well as three defendants, who were also sued by plaintiffs Wood and Reynolds, *to wit*, Silverstein Properties, Applied Research Associates, Inc., and Science Applications International Corp.. In plaintiff Haas' proposed second amended complaint, he only names the Secretary of Commerce and NIST officials as defendants.

[7] Plaintiffs' lawsuits make no allegation with regard to the hijacking of United Airlines Flight 93, which crashed in a field just outside Shanksville, Pennsylvania, or the hijacking of American Airlines Flight 77, which was crashed into the Pentagon in Arlington, Virginia.

damage such as that of destroying the World Trade Center Twin Towers in less than 10 seconds each, as occurred on 9/11/01, down to and including imposition of a disabling stun on human beings for crowd control and/or other psy ops [psychological operations] purposes." (Wood Am. Compl. ¶ 23; Reynolds Compl. ¶ 22; Haas Am. Compl. ¶ 25).

Plaintiffs Wood and Reynolds commenced their respective individual actions on behalf of the United States Government for violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, claiming that the defendants hired by the Government were not entitled to payment for the allegedly fraudulent services they provided to NIST.[8] The False Claims Act prohibits a person from attempting to get a fraudulent claim for payment approved by the Government, or using false records to reduce the amount one owes to the Government. In plaintiff Haas' separate individual lawsuit, he seeks to enjoin NIST from continuing its investigation into the collapse of WTC7 on the grounds that NIST has violated the Information Quality Act[9] by

---

[8] Both plaintiffs Wood and Reynolds have asserted the same causes of action for violations of three provisions of § 3729(a) which imposes liability upon:
"Any person who - -
    (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval;
    (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]
    ...
    (7) knowingly makes, uses or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government[.]
31 U.S.C. § 3729(a)(1-2), (7).

[9] The Information Quality Act directs "the Office of Management and Budget ["OMB"] ... [to] issue guidelines ... that provide policy and procedural guidance to Federal agencies for ensuring and maximizing the quality, objectivity, utility, and integrity of information ... disseminated by Federal agencies ..." Pub. L. No. 106-554, § 1(a)(3) [Title V, § 515], Dec. 21,

intentionally disseminating contradictory information to the public and concealing the existence of a controlled demolition event at WTC7.[10] The aim of the Information Quality Act is to assure that the information publicly released by a federal agency is of the highest quality. It requires the dissemination of true and accurate information, and a mechanism for individuals, affected by that information, to seek and obtain a correction of false or inaccurate information. None of plaintiffs' asserted legal claims can withstand defendants' motions to dismiss.

### NO COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS

The False Claims Act affords a private individual the right to sue in federal court, on behalf of the Government, any person who knowingly presents or makes a false or fraudulent claim for payment. See, 31 U.S.C. § 3730(4)(A), (B). An individual is, however, jurisdictionally barred from bringing a FCA action that is based upon publicly disclosed

---

2000, 114 Stat. 2763, 2763A-153, published at 44 U.S.C. § 3516, note. It further requires that each federal agency "establish administrative mechanisms allowing affected persons to seek and obtain correction of information maintained and disseminated by the agency that does not comply with the guidelines issued" by the OMB. Id.

[10] Plaintiff Haas submitted a "Request for Correction" to NIST claiming that a statement appearing in a December 12, 2006 NIST document was contrary to a statement in the NCSTAR 1 report. Although both documents indicate that there was no "**evidence**" of a controlled demolition event, the NCSTAR 1 report further refers to the lack of "**corroborating**" evidence that the towers were brought down by controlled demolition. Haas argued to NIST that the phrase "'corroborating evidence,' by definition, indicates that there was some evidence of controlled demolition ..." (Haas Am. Compl. Ex. A, at 26). Unable to secure a forbearance agreement from NIST, Haas commenced the instant action seeking a preliminary and permanent injunction enjoining NIST from continuing its investigation until the outcome of his request for correction was known. NIST has since denied his application, and Haas now seeks leave to file a second amended complaint claiming NIST should be enjoined from continuing its technical investigation until: (1) valid information is dissemination to the public; and (2) a criminal investigation into the controlled demolition of WTC7 is initiated and the outcome thereto is known. (Haas Opp'n Mem. at 18; Haas Aff'd ¶¶ 18-19).

information, unless the individual bringing the action is an "original source" of the information.[11] To be an "original source" of publicly disclosed information, a plaintiff must have direct and independent knowledge of information on which the lawsuit's allegations are based, and have voluntarily provided such information to the Government prior to filing the action.  See, § 3730(e)(4)(B); Rockwell Int'l Corp. v. United States, - - U.S. - -, 127 S.Ct. 1397, 1407 (March 27, 2007).  To even attempt to assert this type of lawsuit, plaintiff must possess and be an original source of at least the substantive information publicly disclosed about the particular fraud.  See, United States ex rel. Smith v. Yale Univ., 415 F.Supp.2d 58, 72 (D.Conn. 2006) (*quoting* United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1160 (3d Cir. 1991)).  A party lacks direct and independent knowledge "if a third party is 'the source of the core information' upon which the ... complaint is based." United States v. New York Med. Coll., 252 F.3d 118, 121(2d Cir. 2001) (*quoting* United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1159 (2d Cir. 1990)).

The allegations in plaintiffs' complaints are based entirely on information made publicly available through NIST's administrative investigation, the administrative report resulting therefrom (*i.e*, NCSTAR 1), a prior civil action[12] and various media accounts.  Their lawsuits

---

[11]  Section 3730(e)(4)(A) provides:
No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administration or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
31 U.S.C. § 3730 (e)(4)(A) (footnote omitted).

[12]  In their respective complaints, plaintiffs allege that defendant Underwriters Laboratories, Inc. ("UL") "overtly suppressed [ ] information [from NIST] by terminating the

simply rely upon their own theoretical examination of information already within the public domain. Plaintiffs' attempted analysis of that information constitutes pure speculation that the NIST participants were involved in a cover-up to conceal the true cause for the towers' collapse. They merely disagree with NIST's investigative findings, and specifically wish to reject the basic factual premise that terrorist destroyed the Twin Towers using passenger-filled airplanes as missile-like weapons. Plaintiffs, understandably, offer nothing more than conjecture and supposition to support their claim that the towers were struck by high powered energy beams. Their personal hypothesis about what should be concluded from publicly disclosed information does not qualify either of them as an original source of information in order to sustain an individual FCA claim on behalf of the Government. See, Kreindler, 985 F.2d at 1159; see also, New York Med. Coll., 252 F.3d at 121-22. Federal jurisdiction over a private FCA action is not created simply by arguing that the review of publicly disclosed information spurs plaintiffs to advance a different theory. Such an argument, based solely on publicly available information, could no more support a federal lawsuit to advance an alternative theory regarding the assassination of President Kennedy, or whether men ever actually landed on the moon.

In addition to the FCA claims, plaintiff Reynolds also asserts State common law causes

---

services of one of its employees, Kevin Ryan, who called attention to [the] incongruity of causal explanation." (Wood Am. Compl. ¶ 39; Reynolds Compl. ¶ 37). Prior to the commencement of the cases at bar, Kevin Ryan filed suit against UL claiming he was wrongfully discharged because he had sent an e-mail to NIST indicating that: UL had conducted WTC-related metallurgical testing; the official explanation for the destruction of the WTC was not supported by a scientific analysis of the evidence; and there was substantial evidence that all three buildings collapsed from explosive devices. (Ryan v. Underwriters Labs., Inc., No. 06-1770 (S.D.Ind. filed Nov. 16, 2006). Thus, the information at the heart of the Wood and Reynolds litigation "was publicly disclosed because it was available to anyone who wished to consult the [Ryan] court file." Kreindler, 985 F.2d at 1158.

of action for unjust enrichment, payment by mistake, recoupment of overpayment, and fraud.[13] However, as plaintiffs' attorney acknowledges, the Congressional grant of private standing to sue in FCA cases does not extend to common law causes of action.  See, United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp., 152 F.Supp.2d 443, 451-52 (S.D.N.Y. 2001); see also United States ex rel. Rockefeller v. Westinghouse Elec. Co., 274 F.Supp.2d 10, 14 (D.D.C. 2003), *aff'd sub nom.* Rockefeller ex rel. United States v. Washington TRU Solutions, LCC, 2004 WL 180264 (D.C.Cir. Jan. 21, 2004). Plaintiffs asserted these common law claims in a representative capacity on behalf of the United States Government.  Neither plaintiffs claim to be personally aggrieved or damaged as a result of the defendants' alleged wrongdoing.  All common law claims are, therefore, dismissed for lack of standing.  Accordingly, plaintiffs Wood and Reynolds' actions are barred for lack of subject matter jurisdiction.

**PLAINTIFFS' PLEADINGS ARE WHOLLY INSUFFICIENT TO SUPPORT A LAWSUIT**

Even if the requisite jurisdiction had existed, dismissal of plaintiffs' complaints is independently warranted, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim and for failure to plead fraud with the requisite particularity mandated by Fed.R.Civ.P. 9(b).[14]

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in the complaint

---

[13] Plaintiff Wood asserted these common law causes of action in her original complaint. In her amended complaint, she indicates that her action is being brought "under the common law or equitable theories of unjust enrichment, payment under mistake of fact, recoupment of overpayments and common law fraud." (Wood Am. Compl. ¶ 1).  Nevertheless, no basis for any common law claims are specifically pled in her amended complaint.

[14] The implausabily of plaintiffs' theories warrants no further consideration by this Court beyond the insufficiency of the legal claims upon which plaintiffs attempt to advance those theories in their lawsuits.

"must create the possibility for a right to relief that is more than speculative."[15] Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008). Although complaints generally "do[ ] not need detailed factual allegations, [ ] plaintiff[s'] obligation to provide the grounds of [their] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. - -, 127 S.Ct. 1955, 1964-65 (May 21, 2007) (internal citations, quotation marks and original brackets omitted). Plaintiffs' theories about the cause of the 9/11 disaster completely fail to state a cognizable claim for relief.

To state a FCA claim, plaintiffs must sufficiently allege that defendants knowingly presented a false or fraudulent claim; knowingly made or used a false record or statement to get a fraudulent claim paid; or knowingly made or used a false record or statement to decrease their obligation to pay the Government. The theory of plaintiffs' lawsuit is that the defendants violated the FCA because they were not entitled to any remuneration for the services they rendered to NIST since NIST ultimately failed to conclude, consistent with plaintiffs' hypothesis, that the Twin Towers was destroyed by the military's directed energy weapons. The results of defendants' evaluations are incompatible with plaintiffs' own interpretations. This does not, however, give rise to a reasonable inference that defendants are not entitled to any compensation from the Government for the services they provided. See, Wang v. FMC Corp., 975 F.2d 1412, 1421 (9th Cir. 1992); United States ex rel. Swafford v. Borgess Med. Ctr., 98

---

[15] The sufficiency of the pleadings is determined by examination of the complaint, the exhibits attached thereto, and matters incorporated by reference therein. Other independent submissions made by the defendants, with regard to the jurisdictional challenge, were not considered in assessing the legal adequacy of the complaints.

F.Supp.2d 822, 833 (W.D.Mich. 2000), *aff'd* 24 Fed.Appx. 491 (6th Cir. 2001).

Plaintiffs have pled no factual allegations to support a reasonable inference that defendants knowingly sought payment from the government to which they were not entitled. Plaintiffs wish to reach the conclusion that no compensation was owing to defendants by relying on the other self-serving conclusion that the services they rendered were worthless. In plaintiffs' view, defendants would only be entitled to compensation if NIST had acknowledged plaintiffs' theory that directed energy weapons, and not a terrorist attack, was responsible for the destruction of the WTC. Seeking payment for services rendered to NIST is not unlawful simply because the plaintiffs themselves disagree with NIST's investigative findings. See generally, Mikes v. Straus, 274 F.3d 687, 703 (2d Cir. 2001) ("In a worthless services claim, the performance of the service is so deficient that for all practical purposes it is the equivalent of no performance at all."). Even purported errors based on flawed reasoning, mathematic calculations, or scientific judgments are not false for purposes of the FCA. See, Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1003 (9th Cir. 2002); Wang, 975 F.2d at 1421; United States ex rel. Taylor v. Gabelli, 345 F.Supp.2d 313, 329 & n.87 (S.D.N.Y. 2004).

Furthermore, plaintiffs have failed to plead any factual allegations to support their FCA claims asserted under "the 'reverse false claims' provision, § 3729(a)(7), which creates FCA liability for false statements designed to conceal, reduce, or avoid an obligation to pay money or property to the Government." United States ex rel. Lissack v. Sakura Global Capital Mkts., Inc., 377 F.3d 145, 152 (2d Cir. 2004). "This section was added 'to provide that an individual who makes a material misrepresentation to avoid paying money owed the Government would be equally liable under the Act as if he had submitted a false claim to receive money.'" United

States ex rel. Bahrani v. Conagra, Inc., 465 F.3d 1189, 1194-95 (10th Cir. 2006) (*quoting* S.Rep. No. 99-345, at 18, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5283 (1986)).  Plaintiffs cannot identify any existing financial obligation any of the defendants owed to the Government, nor can they identify any specific false record or statement that a defendant made to avoid such a purported obligation.  The pleadings are therefore also insufficient to state a reverse false claims cause of action.

Plaintiffs have not only failed to comply with the liberal pleading standards applicable to a consideration of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), they have also failed to meet the stricter pleading standard under Fed.R.Civ.P. 9(b).  Claims asserted under the FCA, an anti-fraud statute, are also subject to Rule 9(b)'s heightened pleadings standard, requiring averments of fraud to be pled with particularity.  Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476-77 (2d Cir. 1995); see also, Eisenstein v. Whitman, 4 Fed.Appx. 24, 26 (2d Cir. 2001).  Plaintiffs' counsel acknowledges that to satisfy Rule 9(b) "the Second Circuit has said that the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statement were made, and (4) explain why the statements were fraudulent." (Reynolds Opp'n Mem. at 35 (internal quotation marks and citation omitted)).  Plaintiffs argue that their pleadings comply with the Second Circuit criteria because they (1) identify the subject statements as being "each and every time during a two plus-year period that defendants made false claims for payments based on fraudulently performed work"; (2) "adequately alleges the 'identity of the speaker' as being these defendants"; (3) "adequately pleads 'where and when the statements were made.'  They were made in NCSTAR 1"; and (4) explains the statements were fraudulent because they concealed the true cause for the

Twin Towers' collapse. (Id. at 36). Such general and conclusory pleadings fall far short of Rule 9(b)'s pleading standard.

Plaintiffs vaguely allege that, for a number of years, all defendants wrongfully sought payment for services performed in bad faith.[16] They do not cite to a single identifiable record or billing submission that they claim to be false, or give a single example of when a purportedly false claim was presented for payment by a particular defendant at a specific time. Additionally, plaintiffs' general attribution, to the defendants, of the purported false statements published in the NCSTAR 1 report is untenable to support a particularized pleading of fraud. Defendants are not the authors of the report, and plaintiffs point to no specific factual assertion relied upon in the report that was allegedly falsely provided by defendants to NIST.

Plaintiffs merely allege the existence of a nefarious conspiracy of epic proportion. They name all defendants as coconspirators. They therefore conclude that all defendants' work records and the services they performed are fraudulent because they are tainted by the illegal conspiracy in which they participated. Such generalized attempts at fraud pleading fail to meet the requirements of Rule 9(b). See, United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556-57 (8th Cir. 2006) (Alleging all work performed by defendants was illegal and

---

[16] Both the Wood and Reynolds complaints allege, in pertinent part:
The various cost reports, requisitions, billing statements and/or requests for reimbursements submitted by the defendant NIST participants ... all contain false claims for reimbursement and made false statements ... because the true nature and intent was to mislead NIST and to cause a false causal statement concerning what caused the destruction for the WTC complex to occur.  ***  All such submitted cost reports, invoices, reimbursement claims and the like constitute false claims under the False Claims Act because the defendants knew ... that the actual cause of the destruction of the WTC complex was the result of the use of directed energy weapons.
(Wood Am. Compl. ¶¶ 56, 59-60; Reynolds Compl. ¶¶ 54, 57-58).

13

every invoice fraudulent because of an underlying conspiracy to submit fraudulent claims fails to satisfy Rule 9(b)); United States ex rel. Aflatooni v. Kitsap Physicians Serv., 314 F.3d 995, 1002 (9th Cir. 2002) ("The False Claims Act [ ] focuses on the submission of a claim, and does not concern itself with whether or to what extent there exists a menacing underlying scheme.").

Plaintiff Haas' complaint, for violations of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq,* is also insufficiently pled.[17]  His claim is premised on NIST's failure to suspend its investigation while his request, seeking a change of information, was under consideration. Because that request has since been denied by NIST, his causes of action, relating to the existence of a pending request, no longer even presents a live controversy for which relief would be available, and is therefore moot.  See, White River Amusement Pub, Inc. v. Town of Hartford, 481 F.3d 163, 167-68 (2d Cir. 2007).

Plaintiff Haas, however, argues that his claim now, as alleged in his proposed amended complaint, is actually premised on the alleged intentional dissemination of contradictory information by NIST, in violation of the Information Quality Act.  He seeks an order of forbearance requiring NIST to cease its investigation "until valid (i.e. quality) information has been disseminated in place of the currently contradictory information available to the public."[18]

---

[17] The complaints also state that Haas is suing, under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), for violations of his Fifth Amendment Due Process rights.  The complaints, however, fail to contain any factual allegations to support such a claim, and no constitutional cause of action is specifically pled.

[18] Haas further "claims [ ] that there is evidence that warrants a parallel criminal investigation into whether or not there was a motive and opportunity for those that might have had prior knowledge of the September 11, 2001 attacks, to take advantage of the event and destroy WTC7 for yet to be fully understood purposes." (Haas Aff'd ¶ 10).  Plaintiff contends that "[s]uch a criminal investigation could reveal that the direction NIST is heading with its technical investigation into the WTC7 failure is completely without merit." (Id.).  He therefore

(Haas Opp'n Mem. at 18). Plaintiff's proposed alternative legal theory is unavailing. The Information Quality Act does not create any legal rights, enforceable by unrelated third parties, to information or its correctness. See, Salt Inst. v. Leavitt, 440 F.3d 156, 159 (4th Cir. 2006); Ams. for Safe Access v. United States Dep't of Health & Human Servs., 2007 WL 2141289, at *4 (N.D.Cal. July 24, 2007); In re Operation of the Missouri River Sys. Litig., 363 F.Supp.2d 1145, 1174 (D.Minn. 2004), *aff'd in part and vacated in part on other grounds* 421 F.3d 618 (8th Cir. 2005). Neither the Information Quality Act, nor the Administrative Procedure Act, create a private right of action upon which plaintiff may independently pursue this litigation.

Regardless of how plaintiff Haas attempts to characterize his "forbearance" claims, dismissal is warranted, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim. NIST is not legally required to cease its congressionally mandated investigation every time an interloper questions the accuracy of one of its statements. Such a forbearance policy would indefinitely delay significant investigations. An influx of illegitimate requests that information be changed would effectively cripple the process. Hence, defendants' motion to dismiss Haas' first amended complaint is granted. Plaintiff Haas' motion to file a second amended complaint is denied on the grounds of futility.[19]

---

argues that NIST's "technical investigation [should be] halted until the outcome of the criminal investigation is determined." (Id. ¶ 18).

[19] The non-governmental defendants' motions for sanctions, pursuant to 31 U.S.C. § 3730(d)(4) and Fed.R.Civ.P. 11, are denied. A belief, no matter how incredible, that the WTC was destroyed using secret exotic weaponry, does not give rise to even a colorable claim for relief. All plaintiffs, as well as the attorney for the plaintiffs here, are hereby warned that filing further successive untenable actions may result in the imposition of monetary or other serious sanctions. See, Catanzano v. Wallenstein, 142 Fed.Appx. 540 (2d Cir. 2005); Iwachiw v. New York City Bd. of Elections, 126 Fed.Appx. 27, 29-30 (2d Cir. 2005); Pentagen Techs. Int'l Ltd. v. United States, 172 F.Supp.2d 464 (S.D.N.Y. 2001), *aff'd* 63 Fed.Appx. 548 (2d Cir. 2003).

## CONCLUSION

The defendants' motions to dismiss, filed in each of these three cases, are granted. All three complaints are dismissed with prejudice.[20] The Wood v. Applied Research Associates, Inc., et al., 07 CV 3314 (GBD); Reynolds v. Science Applications Int'l, et al., 07 CV 4612 (GBD), and Haas v. Gutierrez, et al., 07 CV 2623(GBD) actions are hereby closed.

Dated: New York, New York
June 26, 2008

SO ORDERED:

*[signature]*
GEORGE B. DANIELS
United States District Judge

---

[20] Dismissal is appropriate as to all defendants, including those who have yet to be served. See, Eisenstein, 4 Fed.Appx. at 26 n.2 (*quoting* Leonhard v. United States, 633 F.2d 599, 608 (2d Cir. 1980)).