Jerry V. Leaphart #JL4468
Jerry V. Leaphart & Assoc., P.C.
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 – phone
(203) 825-6256 – fax
jsleaphart@cs.com

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DR. JUDY WOOD, on behalf of | : | |
| The United States of America | : | |
| | : | |
| Plaintiff, | : | <u>ECF CASE</u> |
| | : | |
| vs. | : | July 11, 2008 |
| | : | |
| APPLIED RESEARCH ASSOCIATES, INC., | : | 07 CIV 3314 (GBD) |
| et al | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION PER F.R.Civ. P 59(e) and
LOCAL RULE 6.3
and**

**<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

Jerry V. Leaphart
Attorney for Plaintiff
On the Brief

i

## <u>TABLE OF CONTENTS</u>

Introductory Statement . . . . . . . . . . . . . . . . . 1

Standard of Review . . . . . . . . . . . . . . . . . 3

No Public Disclosure or Original Source . . . . . . . . . . . . 5

Elements of Misapprehension . . . . . . . . . . . . . . . 6

       A.    Misapprehension of Plaintiff's Qui Tam Relator Status . 6

       B.    Inaccuracies that should be corrected . . . . . . . 11

         1. This is not a case concerning who perpetrated
           the events of 9/11/01 . . . . . . . . . . . . 11

         2. NCSTAR1 report constitutes a "fraudulent document". 11

         3. Pg 4 of the Memorandum decision also "furthering the
           deception" states: . . . . . . . . . . . 12

         4. This is not a case involving the assassination of
           President Kennedy or moon landings . . . . . . 13

         5. The Kevin Ryan claims are taken out of context . . . 13

         6. Factual allegations concerning payment . . . . . . 14

         7. Rule 9(b)'s heightened pleadings standard . . . . . 14

         8. Footnote 19 . . . . . . . . . . . . . . 15

     Conclusion . . . . . . . . . . . . . . . . . 16

**TABLE OF AUTHORITIES**

## Cases

Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,
    99 F.R.D. 99, 101 (E.D. Va. 1983) ................................................................................. 3
APWU v. Potter,
    343 F.3d 619, 623 (2d Cir. 2003) (citation omitted).................................................. 2, 16
Aurecchione v. Schoolman Transp. System, Inc.,
    426 F.3d 635, 638 (2d Cir. 2005)...................................................................................... 2
Bank of Waunkee v. Rochester Cheese Sales, Inc.,
    906 F.2d 1185, 1191 (7th Cir. 1990) .............................................................................. 3
Belmont v. Erie Ry.,
    52 Barb. 637, 641 ........................................................................................................... 4
Danenberger v. Johnson,
    821 F.2d 361, 363 (7th Cir. 1987) ................................................................................. 4
Divane v. Krull Electric Co.,
    194 F.3d 845, 850 (7th Cir. 1999) ................................................................................. 4
Moro v. Shell Oil Co.,
    91 F.3d 872, 876 (7th Cir. 1996) ................................................................................... 4
Ray E. Friedman & Co. v. Jenkins,
    824 F.2d 657, 660 (8th Cir. 1987) ................................................................................. 4
Reich v. Local 1, American Postal Workers Union, AFL-CIO,
    1994 U.S. Dist. LEXIS 1118, 1994 WL 33971 *1 (N.D. Ill. Feb. 4, 1994) ................... 4
Rockwell Int'l Corp. v United States,
    127 S. Ct. 1397; 167 L. Ed. 2d 190, (2007)................................................................... 6
Scheuer v. Rhodes,
    416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)..................................... 2, 16
Shipping Fin. Servs. Corp. v. Drakos,
    140 F.3d 129, 131 (2d Cir. 1998)............................................................................... 2, 16
Trautenberg v. Paul Weiss Rifkind Wharton & Garrison LLP et al.
    2008 U.S. Dist. LEXIS 30625 (SDNY) (GBD).............................................................. 4
U.S. et rel. McDermott v. Genentech Inc.,
    2006 U.S.Dist. LEXIS 90586 (D.ME)........................................................................... 10
United States Labor Party v. Oremus,
    619 F.2d 683, 687 (7th Cir. 1980) ................................................................................. 4
United States v. Bank of Farmington,
    166 F.3d 853, 859 (7th Cir. 1999) ............................................................................... 10
Waunakee,
    906 F.2d at 1191-92 ....................................................................................................... 3
White v. New Hampshire Department of Employment Security,
    455 U.S. 445, 451, 71 L. Ed. 2d 325, 102 S. Ct. 1162 (1982)........................................ 4

**Other Authorities**

False Claims Act, 31 U.S.C. §3729 et seq. ........................................................................ 7

**Rules**

Rule 59(e)...................................................................................................................... 4
Rule 59(e)................................................................................................................... 3, 4
F.R.Civ.P  Rule  59(e)................................................................................................... 3
Rule 12(b)(1),.............................................................................................................. 2

**PLAINTIFF'S MOTION FOR RECONSIDERATION PER F.R.Civ. P 59(e) and
LOCAL RULE 6.3
and
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

Plaintiff, Dr. Judy Wood, (plaintiff), by her attorney, Jerry V. Leaphart of Jerry V.
Leaphart & Assoc., P.C., hereby moves this court, under and pursuant to F.R.Civ.P. 59(e)
and L.Civ.R. 6.3, for reconsideration of the Memorandum Decision and Order
(Memorandum Decision) issued on June 26, 2008, (copy annexed as Exhibit A) that
granted defendants' motions to dismiss with prejudice.

INTRODUCTORY STATEMENT

Page 6 of the Memorandum Decision dated June 26, 2008, accurately and
correctly notes that "[t]he aim of the Information Quality Act is to assure that the
information publicly released by a federal agency is of the highest quality. It requires the
dissemination of true and accurate information, and a mechanism for individuals, affected
by that information, to seek and obtain a correction of false or inaccurate information."
Immediately thereafter the decision continues, however, with an assertion that reflects a
fundamental misapprehension of plaintiff, Dr. Judy Wood's case.  The decision
states:

> "None of plaintiffs' asserted legal claims can withstand defendants' motions to
> dismiss."

The fundamental misapprehension stems from the fact that no aspect of the
plaintiff's Amended Complaint (complaint) that deals explicitly with her claims of fraud,
her claims of "original source" including her "public disclosure" allegations and/or any of
her other factual allegations are even mentioned  let alone acknowledged for motion to

dismiss purposes, to be true.[1]   Even more glaringly fundamental to this assertion of

misapprehension of plaintiff's claim is the fact that the document that is specifically

incorporated into the complaint that gave rise to plaintiff's assertions of fraud and that

constitutes the very essence of the "information" upon which her status as a qui tam

relator is based is not mentioned, not referenced, not even acknowledged to exist

anywhere in the Memorandum Decision.  This refers to plaintiffs' Request for Correction

filed with the National Institute of Standards and Technology (NIST) on March 16, 2007.

> The Memorandum Decision also states at  pg. 2 that:
>
> "The focus of the NIST investigation was on the sequence of events "from the
> instance of aircraft impact to the initiation of collapse for each tower."

That aspect of what NIST did is a part of the fraud.  The claim is that it is clear that in

curtailing the investigation to timeframes where no aspect of the forensic information that

plaintiff has articulated was considered, confirms both fraud and it also confirms that it is

not logically possible to say plaintiff herein relied on "publicly disclosed" information.

NCSTAR1 did not analyze what happened to the Twin Towers precisely because the

investigation – all 10,000 pages of it – does not deal with the event itself.  Defendants

know that and defendants engaged in fraud, thereby.  This is a "willful indifference" case.

---

[1]     On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule
12(b)(1), Fed.R.Civ. P., "[t]he plaintiff bears the burden of proving subject matter
jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp.
System, Inc., 426 F.3d 635, 638 (2d Cir. 2005).   However, a court must "accept as true
all material factual allegations in the complaint," Shipping Fin. Servs. Corp. v. Drakos,
140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct.
1683, 40 L. Ed. 2d 90 (1974)), but refrain from "drawing from the pleadings inferences
favorable to the party asserting [jurisdiction]," APWU v. Potter, 343 F.3d 619, 623 (2d
Cir. 2003) (citation omitted).

Accordingly, therefore, the Memorandum Decision does not show how the conclusion -- "[n]one of plaintiffs' asserted legal claims can withstand defendants' motions to dismiss" -- could possibly have been reached absent mention of them and absent acknowledgement of their being materially true. Indeed, the quoted language of the Memorandum Decision constitutes the opposite; namely: the rejection of plaintiffs' facts – those that are among the precious few that are even mentioned, let alone assessed, still less considered to be true. Thus misapprehension is demonstrated.

The posture of this case arises in a context where for motion to dismiss purposes, allegations contained in plaintiff's complaint are to be accorded great weight and deemed to be true.[2] Yet, those allegations, and the voluminous substantiating information that plaintiff filed and relied on are not at all mentioned or acknowledged in the Memorandum Decision.

## STANDARD OF REVIEW

It is well settled and understood that an F.R.Civ.P  Rule 59(e)  motion  for reconsideration is appropriate when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.  A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court." Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990), (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)).   Rule 59(e) relief is also appropriate when a legal error has been committed due to inadvertence or misapprehension. See Waunakee, 906 F.2d at 1191-92 (quoting Belmont v. Erie Ry., 52

---

[2] Id.

3

Barb. 637, 641  (N.Y. Sup. 1869) (Cardozo, J.)).  Otherwise, ignoring properly preserved legal error timely brought to the district court's attention after the entry of judgment would put the parties through the unnecessary expense and delay of having to appeal the case to get the error corrected. Divane v. Krull Electric Co., 194 F.3d 845, 850 (7th Cir. 1999) (quoting Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996)).

Thus, a "Rule 59(e) motion to alter or amend a judgment properly may be used to ask a district court to reconsider its judgment and correct errors of law." United States Labor Party v. Oremus, 619 F.2d 683, 687 (7th Cir. 1980). Accord Danenberger v. Johnson, 821 F.2d 361, 363 (7th Cir. 1987); Reich v. Local 1, American Postal Workers Union, AFL-CIO, 1994 U.S. Dist. LEXIS 1118, 1994 WL 33971 *1 (N.D. Ill. Feb. 4, 1994). See also Ray E. Friedman & Co. v. Jenkins, 824 F.2d 657, 660 (8th Cir. 1987) (Rule "59(e) provides a means 'to support reconsideration [by the court] of matters properly encompassed in a decision on the merits.' White v. New Hampshire Department of Employment Security, 455 U.S. 445, 451, 71 L. Ed. 2d 325, 102 S. Ct. 1162 (1982). Under Rule 59(e) the court may reconsider issues before it, see id., and generally may examine the correctness of the judgment itself."). However, while a Rule 59(e) motion is a proper procedure for bringing to the court's attention legal errors in the proceedings, relief is not appropriate if the issue was not properly raised during the proceedings.

It is also acknowledged that Rule 59(e) motions are more likely to be granted if the issue is that of a change in the law that may not have been taken into consideration by the decision at hand.  See Trautenberg v. Paul Weiss Rifkind Wharton & Garrison LLP et al. 2008 U.S. Dist. LEXIS 30625 (SDNY) (GBD).

Plaintiff here asserts this court's Memorandum Decision issued on June 26, 2008, fundamentally misapprehended plaintiff's complaint as is evidenced by the manner in which said Memorandum Decision refers to numerous assertions that incorrectly reference plaintiff's complaint and supporting materials, and which, in addition, makes assertions about what plaintiff is claiming that are the exact opposite of what plaintiff contends.  Accordingly, plaintiff seeks alternative relief as follows:

A) Rescission of the Order granting defendants' Motion to Dismiss; or

B) Modification of the Order granting defendants' Motion to Dismiss to the status of "dismissed without prejudice", together with a reasonable time for refiling of the complaint; or

C) At a bare minimum, removal of language from the Memorandum Decision that goes far beyond that which is necessary for purposes of rendering a decision in this case, and/or which concerns issues that are not properly before this court.

## NO PUBLIC DISCLOSURE or ORIGINAL SOURCE

In this reconsideration motion, relator re-asserts that she contends that none of the claims based on her "information" were derived from public disclosures and therefore she did not have to be an original source.  However, even if she did have to qualify, she certainly does so on the basis of her "information" as filed in her written and properly filed Request for Correction (RFC) filed with the National Institute of Standards and Technology (NIST) on March 16, 2007.  Pertinent public disclosures giving rise to plaintiff's FCA claims were made in that RFC.  Relator contends that she could not have derived her knowledge from the public disclosure in the RFC documents

5

because she was the <u>author of those documents</u> and therefore had to have knowledge prior to the public filing of them.

The essential fact giving rise to the claim of misapprehension is that the Memorandum Decision makes no reference whatsoever to the plaintiff's RFC, let alone does it address the content thereof.  Thus, a fundamental misapprehension is clearly demonstrated to have occurred.

ELEMENTS OF MISAPPREHENSION

At a bare minimum, and in order to place this case in proper perspective for appeal, it is crucial that the record reflect what the plaintiff, Dr. Judy Wood, claims, versus the polar opposite thereof.

### A.  Misapprehension of Plaintiff's Qui Tam Relator Status:

Plaintiff, in fact, asserts that DEW destroyed the WTC and she makes those assertions in a document of which she is the original source and a document that constitutes the information, as that term was recently defined by the U.S. Supreme Court[3], upon which here causal claims, that is to say, her claims concerning "what happened" (but not who did it), were based.  This issue is misapprehended and misconstrued in the Memorandum Decision as exemplified by the following quotes from the Memorandum Decision:

> "Plaintiffs theorize that what actually occurred was that the Twin Towers disintegrated after being struck by the United States Military's secret laser-like weapon."  Memorandum Decision pg. 4.

> "Plaintiffs' attempted analysis of that information constitutes pure speculation that the NIST participant were involved in a cover-up to conceal the true cause for the towers' collapse.  They merely disagree with NIST's investigative findings, and specifically wish to reject the basic factual premise that terrorist destroyed the Twin Towers using passenger-filled airplanes as missile-like weapons.  Plaintiffs, understandably, offer nothing more than conjecture and supposition to support

---

[3] <u>Rockwell Int'l Corp. v United States</u>, 127 S. Ct. 1397, 167 L. Ed. 2d 190, (2007).

their claim that the towers were struck by high powered energy beams."
Memorandum Decision pg. 8.

A search reveals that plaintiff did not use the expression "high powered energy beams."  The above quotes clearly entail a fundamental misapprehension of plaintiff, Dr. Judy Wood's complaint, because, among other reasons, the Memorandum Decision makes no reference whatsoever to the fact that plaintiff filed a Request for Correction (RFC) dated March 16, 2007, together with additional supplements filed thereafter, to which NIST replied on July 27, 2007 and on January 10, 2008, all of which, collectively, comprise the "information" upon which her status as either an original source for FCA purposes or a relator who need not qualify as an original source because she is the author of the disclosed information and her standing as having "direct and independent" information are based.  Plaintiff, Dr. Judy Wood's said information – her RFC – are nowhere mentioned in the Memorandum Decision.  This bears some emphasis here because the source of her information, her RFC, is simply not at all taken in consideration, much less accorded veracity, as it must, in the context of a motion to dismiss.  Instead, the Memorandum Decision went so far as to dispute plaintiff's contentions.  That is not the court's function in a motion to dismiss.

To be sure, this court did properly reference the fact that what is mentioned in the above paragraph, namely the RFC and its related information, are properly before this court and should, therefore, have been considered as a part of the complaint.  The Memorandum Decision contains Footnote 15, pg. 10, stating:

> "The sufficiency of the pleadings is determined by examination of the complaint, the exhibits attached thereto, and matters incorporated by reference therein.  Other independent submissions made by the defendants, with regard to the jurisdictional challenge, were not considered in assessing the legal adequacy of the complaints"

By virtue of that language, it is clear that Dr. Judy Wood's RFC must, of necessity, be considered an integral part of the complaint and the information relied on for purposes of jurisdiction under the False Claims Act, 31 U.S.C. §3729 et seq. (FCA). Not only that, the allegations are to be deemed true.

In addition to that fundamental misapprehension, the following quoted elements of the Memorandum Decision rise to the mandated level for granting a Rule 59(e) reconsideration motion:

> "The allegations in plaintiffs' complaints are based entirely on information made publicly available through NIST's administrative investigation, the administrative report resulting therefrom (*i.e.*NCSTAR 1), a prior civil action and various media accounts." Memorandum Decision pg. 7.

> Their personal hypothesis about what should be concluded from publicly disclosed information does not qualify either of them as an original source of information in order to sustain an individual FCA claim on behalf of the Government. See, <u>Kreindler</u>, 985 F.2d at 1159; see also, <u>New York Med. Coll</u>., 252 F. 3d at 121-22." Memorandum Decision pg. 8.

> To state a FCA claim, plaintiffs must sufficiently allege the defendants knowingly presented a false or fraudulent claim; knowingly made or used a false record or statement to get a fraudulent claim paid; or knowingly made or used a false record or statement to decrease their obligation to pay the Government. The theory of plaintiffs' lawsuit is that the defendants violated the FCA because they were not entitled to any renumeration for the services they rendered to NIST since NIST ultimately failed to conclude, consistent with plaintiffs' hypothesis, that the Twin Towers was destroyed by the military's directed energy weapons." Memorandum Decision pg. 10.

Plaintiff simply has not been heard. She did not rely on a "personal hypothesis;" and it is improper to refer to her claims as such in that doing so affirmatively <u>rejects</u> the truthfulness of her RFC in the context of a motion to dismiss. This is incongruent with motion to dismiss protocol. Plaintiff presented a detailed RFC, containing forensic information, to which NIST replied by making certain additional admissions concerning its knowledge of the defendants' involvement in the development of DEW. NIST did not

refer to her RFC as "her personal hypothesis" and thus there was absolutely no basis for the court to have done so; especially since, as indicated, for motion to dismiss purposes her claims are to be deemed true.

To be sure, plaintiff has stated that the defendants herein are aware, by virtue of their involvement in areas of specialty that are directly related to the manufacture, development and testing of DEW, of the lethal effects associated with their use, and/or their involvement and testing of the effects of fire or fire prevention. The plaintiff's claims are, then, in the nature of forensic science where she articulated an abundance of effects that could only be explained by DEW and not fire.  When that set of facts is added to the fact that the defendants are knowledgeable about such weapons and their effects and also knowledgeable concerning the properties of fire, the elements of fraud are not only clear and palpable, they are entirely different from the way this court characterized her claims.

That merits reconsideration so that, at a minimum, what she has actually claimed should be properly referenced in the court's decision and findings.  As things now stand, the Memorandum Decision does not address plaintiff's claims.  This assertion follows from the fact that, among others, there is no connection between the court's articulation of the "original source" doctrine and the actual "information" upon which plaintiff's qui tam case is based.  Dr. Judy Wood filed an RFC with NIST on March 16, 2007 and that is her "information."

Her complaint plainly confirms this characterization by the exact content of paragraphs 7 through 12 of her complaint.

It may be that plaintiff's complaint was not clear enough in this respect. For instance, it is true that plaintiff made a reference, based upon "information and belief," that DEW are and remain highly classified, secret instrumentalities of the military apparatus of the Armed Forces of the United States of America." That was not, however, an allegation of who did what, nor was it intended to convey any such claim. To the extent that that language may have led to the misapprehension hereinabove articulated, the proper remedy would be dismissal without prejudice so as to make sure the defendants know what they're being charged with having done.

It is respectfully submitted, however, that the defendants do know what they are charged with, all as was more fully elaborated on in, among other documents, the Affirmation of the undersigned (Docket # 90), which not only indicated clearly what this case is about, it also confirmed that defendants know what they are called upon to defend.

The jurisdictional elements of the FCA[4] confirm that the inquiry into whether a court may hear a qui tam relator's claim has three parts: (1) Have the allegations made by the plaintiff been 'publicly disclosed'? (2) If so, is the lawsuit 'based upon' that publicly disclosed information? (3) If so, is the plaintiff an 'original source' of the information?" United States v. Bank of Farmington, 166 F.3d 853, 859 (7th Cir. 1999). See also U.S. et rel. McDermott v. Genentech Inc., 2006 U.S.Dist. LEXIS 90586 (D.ME). The burden is on relator to show that she satisfies this jurisdictional requirement. Because the Memorandum Decision did not address plaintiff's information, it cannot properly be said that she has had her information assessed in accordance with the applicable standards. Moreover, it is here asserted that were the actual information upon which plaintiff relies to have received consideration, as it has

---

[4] 31 U.S.C. §3730(e)(4)(A).

thus far not received, it would result in the denial of defendants' motions to dismiss.  At

a bare minimum, and in order to avoid the time and expense of an appeal on this issue,

the Memorandum Decision requires reconsideration.  This is the purpose of a Rule 59(e)

motion, at its most fundamental level.

It has already been acknowledged in behalf of plaintiff that we know that the

claims made in her case have a capacity to be startling.  However, she still deserves to

be properly understood and to have her claims addressed for what they actually are, and

not otherwise.

### B. Inaccuracies that should be corrected:

1. This is not a case concerning who perpetrated the events of 9/11/01:

Page 2 of the Memorandum of Decision states:

"According to plaintiffs, the evidence demonstrates that the destruction of the
World Trade Center Towers was caused by a United States secret military
"directed energy weapon."

That claim is inaccurate.  Plaintiff makes no assertion whatsoever about whether

or not the directed energy weapons (DEW) that were used to destroy the World Trade

Center (WTC) are, in fact, those of the United States military, secret or otherwise.

Plaintiff does not say who destroyed the WTC.  Plaintiff's case is a forensic evaluation of

what destroyed the WTC and it arises in the context of challenging NIST's findings and

the manner in which the contractors, the defendants herein, engaged in fraudulent work.

Clearly, then, there exists, at present, a fundamental misapprehension in that plaintiff

makes no claim at all about who perpetrated the destruction of the WTC.

2.  NCSTAR1 report constitutes a "fraudulent document":

Page 4 of the Memorandum Decision contains the following statement:

"They contend that the NCSTAR 1 report constitutes a "fraudulent document," in that it conceals the true cause for the collapse of the Twin Towers. "

It is true that Dr. Wood's complaint can be understood to make that claim. However, there is more to it than that. NIST's mandate was to investigate how and why the towers "collapsed;" yet, NIST admitted to Dr. Wood that they did not even investigate that issue, let alone answer it. They could have because they had, as contractors, those who are said to have expertise in the lethality effects of DEW. That is what Dr. Wood alleges as fraudulent. This claim is nowhere articulated in the Memorandum Decision. The concise version of plaintiff's actual claims is as follows:

a.    NIST and the contractors undertook a years long fraudulent scheme

wherein and whereby millions of dollars were spent on obfuscation.

b.    The final product NCSTAR1 was a 10,000 page tome that purported by its

title and by NIST's mandate to describe why and how the Twin Towers'

collapsed". Yet NIST admitted to plaintiff that it did not investigate the actual

collapse, let alone analyze the destruction of the WTC.

c.    The Twin Towers were destroyed by DEW.

d.    The defendants are experts in the effects of DEW, directly or indirectly.

e.    Nondisclosure that DEW destroyed the WTC was either overtly fraudulent

or the result of willful blindness.

3. Pg 4 of the Memorandum decision also "furthering the deception" states:

"Plaintiffs maintain that the alleged fraudulent nature of the investigation has furthered the deception, perpetrated upon the masses, that the WTC was demolished as a result of terrorists plowing two commercial airplanes, filled with thousand of gallons of jet fuel, directly into the Twin Towers at a high rate of speed.(footnote 7)

(footnote 7) Plaintiffs' lawsuits make no allegation with regard to the hijacking of

> United Airlines Flight 93, which crashed in a field just outside Shanksville, Pennsylvania, or the hijacking of American Airlines Flight 77, which was crashed into the Pentagon in Arlington, Virginia."

The quoted language in fact represents a misapprehension of plaintiff's case. Her claim is based on forensic science concerning the cause of destruction of the World Trade Center complex. The quoted language is utterly out of place with respect to plaintiff's claims. Note, too, that footnote 7 is obviously not a part of this case or of plaintiff's claim. Yet, by including footnote 7, the depth of the court's misapprehension of plaintiff's actual claim is further revealed.

4.  This is not a case involving the assassination of President Kennedy or moon landings:

> Page 8 of the Memorandum Decision states:

> "Such an argument, based solely on publicly available information, could no more support a federal lawsuit to advance an alternative theory regarding the assassination of President Kennedy, or whether men ever actually landed on the moon."

It is here asserted that the quoted language serves no purpose in this case and is not at all a part of the framework of what plaintiff alleges. In fact, the quoted language is consistent with the perception that plaintiff herein is engaging in what is pejoratively referred to as "conspiracy theory." Once again, this is <u>not</u> a case involving allegations of "who" destroyed the WTC. As such, this case, on its face, is not one claiming to involve "a conspiracy". That is not what this case is about and it is considered unfortunate that the case may be viewed that way. However, by virtue of not assessing the actual information upon which this case is based, it is a little more understandable how plaintiff and her claims could have been perceived as involving conspiracy claims. It does no such thing. The misapprehension cries out for correction sooner rather than later.

5. The Kevin Ryan claims are taken out of context:

Footnote 12, pgs. 7-8 of the Memorandum Decision states:

"In their respective complaints, plaintiffs allege that defendant Underwriters Laboratories, Inc. ("UL") "overtly suppressed []information [from NIST] by terminating the services of one of its employees, Kevin Ryan, who called attention to [the] incongruity of causal explanation."  (Wood, Am. Compl. ¶39; Reynolds Compl. ¶37).  Prior to the commencement of the cases at bar, Kevin Ryan filed suit against UL, claiming he was wrongfully discharged because he had sent an e-mail to NIST indicating that:  UL had conducted WTC related metallurgical testing; the official explanation for the destruction of the WTC was not supported by a scientific analysis of the evidence; and there was substantial evidence that all three buildings collapsed from explosive devices.  (Ryan v. Underwriters Lab., Inc., No. 06-1770 (S.D.Ind. filed Nov. 16, 2006).  Thus the information at the heart of the Wood and Reynolds litigation "was publicly disclosed because it was available to anyone who wished to consult the [Ryan] court file.:  Kreindler, 985 F.2d at 1158.


It is true that the plaintiff's complaint mentions "Kevin Ryan", however, that factual recital is not a part of plaintiff's "information" or claim, as such.  Moreover, by calling attention to that paragraph of plaintiff's complaint, while simultaneously ignoring altogether the salient portions of what her information actually consists in, it merely confirms, in this additional particular, that plaintiff has been misapprehended.  Similarly the Memorandum Decision states that plaintiff relied on "newspapers".  That is fundamental misapprehension.  Plaintiff did not "rely" on newspapers and this allegation is not sourced in the Memorandum Decision.

6.  Factual allegations concerning payment:

The Memorandum Decision contains the following language at pg. 11:

"Plaintiffs have pled no factual allegations to support a reasonable inference that defendants knowingly sought payment from the government to which they were not entitled."

By virtue of not referencing plaintiff's actual information and actual claims of fraud, the quoted statement lacks a necessary foundation and is further evidence of the clear need for reconsideration of this case.

7.  Rule 9(b)'s heightened pleadings standard:

It follows that by virtue of not having considered the plaintiff's actual information, that the following declaration found on page 12 of the decision cannot be accurate:

> "Plaintiffs have not only failed to comply with the liberal pleading standards applicable to a consideration of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), they have also failed to meeting the stricter pleading standard under Fed.R.Civ.P. 9(b)"

Plaintiff adequately addressed the Rule 9(b) issues in her responsive pleadings to the motion to dismiss.  The court's reasoning cannot be said to have properly addressed that reasoning because of the exclusion of the actual information upon which plaintiff's claims of fraud are based.

Moreover, the proper remedy for a lack of particularity would certainly include a dismissal without prejudice so as to afford an opportunity to provide those particulars. However, as noted in plaintiff's submittals, the defendants' herein are corporate defendants and they have dominion and control over the information from which additional particulars could be found.  It was also noted that their claims for particularity did not prevent them from actually and formally "answering" plaintiff's claims, thus putting paid to the claim they needed additional particulars.

8.  Footnote 19

The final request for reconsideration concerns the following quoted portion of Footnote 19, pg. 15:

"A belief, no matter how incredible, that the WTC was destroyed using secret exotic weaponry, does not give rise to even a colorable claim for relief. All plaintiffs, as well as the attorney for the plaintiff here, are hereby warned that filing further successive untenable actions may result in the imposition of monetary or other serious sanctions."

It is respectfully submitted that based on the fundamental misapprehension of plaintiff's claims, as articulated hereinabove, the quoted portion of Footnote 19 should be deleted from the court's Memorandum Decision. The plaintiff is a materials engineering scientist who articulated in forensic detail the nature of her claims. Her actual claims were not mentioned by the court, hence the quoted portion of footnote 19 has no actual application to her. Moreover, the quoted portion of footnote 19 utterly eradicates all semblance of compliance with motion to dismiss protocol whereby, as noted above, a court must "accept as true all material factual allegations in the complaint," Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)), but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (citation omitted). Instead, the court has basically rejected plaintiff's forensic work, even without specifically referring to that work as the basis of her "information". The quoted part of footnote 19 clearly establishes that plaintiff merits the reconsideration she has requested.

Equally demonstrative of fundamental misapprehension is the court's reference to future claims that, by definition, fall outside the scope of the issues presented in this case and therefore should not be a part of the decisional framework. It is considered improper, inappropriate and an overreach to disparage what the party to this lawsuit and her counsel might do in future cases and controversies they might engage in, which is all the more

questionable since the basic requirement to treat plaintiff's claim as true has been openly breached.

## CONCLUSION

For all of the reasons set forth herein, this is a case that cries out for the granting of plaintiff's motion for reconsideration in its entirety; or, at a minimum, to change the "with prejudice" outcome to one of "without prejudice."  At a bare minimum, the decision should be corrected to remove all of the inaccuracies mentioned herein so as to pave the way for an orderly appeal.

Respectfully submitted,

THE PLAINTIFF

By  /s/ Jerry V. Leaphart____
Jerry V. Leaphart jl4468
JERRY V. LEAPHART & ASSOC., PC
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 - phone
(203) 825-6256 - fax
jsleaphart@cs.com

Dated:        Danbury, CT
              July 11, 2008

17

## <u>ELECTRONIC CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2008, a copy of the foregoing Motion was filed

electronically and served by mail on anyone unable to accept electronic filing.  Notice of

this filing will be sent by email to all parties by operation of the Court's electronic filing

system or by mail to anyone unable to accept electronic filing as indicated on the Notice

of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


      /s/ Jerry V. Leaphart<u>        </u>
Jerry V. Leaphart (jl4468)
JERRY V. LEAPHART & ASSOC., P.C.
8 West Street, Suite 203
Danbury, CT 06810
Tel. (203) 825-6265
Fax (203) 825-6256

MOLReconsid[1]

18

# EXHIBIT A

(Memorandum Decision dated June 26, 2008)