07cv 3314
(LAD)

# MANDATE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: AUG 0 5 2009

08-3799-cv
*Wood v. Applied Research Associates, et al.,*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### AMENDED SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to summary orders filed after January 1, 2007, is permitted and is governed by this Court's Local Rule 32.1 and Federal Rule of Appellate Procedure 32.1. In a brief or other paper in which a litigant cites a summary order, in each paragraph in which a citation appears, at least one citation must either be to the Federal Appendix or be accompanied by the notation: "(summary order)." A party citing a summary order must serve a copy of that summary order together with the paper in which the summary order is cited on any party not represented by counsel unless the summary order is available in an electronic database which is publicly accessible without payment of fee (such as the database available at http://www.ca2.uscourts.gov/). If no copy is served by reason of the availability of the order on such a database, the citation must include reference to that database and the docket number of the case in which the order was entered.

1   At a stated term of the United States Court of Appeals for the Second Circuit, held at the
2   Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on
3   the 16th day of July, two thousand nine.
4
5   PRESENT:
6
7           ROGER J. MINER,
8           DEBRA ANN LIVINGSTON,
9                   *Circuit Judges,*
10          DAVID G. TRAGER,*
11                  *District Judge.*
12
13   _____
14
15   JUDY WOOD, on behalf of the UNITED STATES
16   of AMERICA,
17                   *Plaintiff-Appellant,*
18
19           -v.-                                        No. 08-3799-cv
20
21   APPLIED RESEARCH ASSOCIATES, Inc., SCIENCE APPLICATIONS
22   INTERNATIONAL CORP., COMPUTER AIDED ENGINEERING ASSOCIATES,
23   Inc., DATASOURCE, Inc., GEOSTAATS, Inc., GILSANZ MURRAY STEFICEK, LLP,
24   HUGHES ASSOCIATES, Inc., AJMAI ABBASI, EDUARDO KAUSEL,
25   DAVID PARKS, DAVID SHARP, DANIELE VENEZANO, JOSEPH VAN DYCK,
26   KASPAR WILLIAM, ROLF JENSEN & ASSOCIATES, Inc.,



UNITED STATES COURT OF APPEALS
FILED
JUL 16 2009
Catherine O'Hagan Wolfe, Clerk
SECOND CIRCUIT

*The Honorable David G. Trager, of the District Court for the Eastern District of New York, sitting by designation.

ISSUED AS MANDATE:    AUG 0 4 2009

1   ROSENWASSER/GROSSMAN CONSULTING ENGINEERS, P.C.,
2   SIMPSON GUMPERTZ & HEGER, Inc., S.K. GHOSH ASSOCIATES, Inc.,
3   SKIDMORE OWINGS & MERRILL LLP, TENG & ASSOCIATES, Inc.,
4   UNDERWRITERS LABORATORIES, Inc., WISS, JANNEY, ELSTNER ASSOCIATES, Inc.,
5   and UNITED AIRLINES,
6               *Defendants-Appellees.*
7
8   BOEING, NUSTATS, AMERICAN AIRLINES and SILVERSTEIN PROPERTIES,
9               *Defendants.*

10
11
12
13                     Jerry V. Leaphart, Jerry V. Leaphart & Assocs., P.C.,
14                     Danbury, CT, *for Plaintiff-Appellant.*
15
16                     Patricia B. Gary (David T. Hatem, *of counsel*), Donovan
17                     Hatem LLP, Boston, MA; Gail D Zirkelbach, Jackson Kelly
18                     PLLC, Denver, CO, *for Defendants-Appellees.*
19
20
21       UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED

22   that the judgment of the District Court for the Southern District of New York is AFFIRMED.

23       Plaintiff-Appellant Dr. Judy Wood ("Wood") appeals from the June 26, 2008 decision of the

24   District Court for the Sorthern District of New York (Daniels, J.), dismissing Wood's *qui tam* suit

25   under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. Wood brings her FCA claims against

26   Defendants-Appellees Applied Research Associates, Inc., et al. (the "Contractor Defendants"),

27   various entities which provided services to the government in connection with the National Institute

28   of Standards and Technology's investigation of the collapse of the World Trade Center. The district

29   court dismissed Wood's claims for (1) want of subject matter jurisdiction under 31 U.S.C. §

30   3730(e)(4)(A), and (2) failure to state a claim under Fed. R. Civ. P. 12(b)(6) and plead fraud with

31   particularity under Fed. R. Civ. P. 9(b). *See Wood ex rel. United States v. Applied Research Assocs.,*

32   *Inc.*, No. 07-cv-3314, 2008 WL 2566728, at *3 (S.D.N.Y. June 26, 2008). On appeal, Wood

1    challenges both grounds for dismissal. We assume the parties' familiarity with the underlying facts,

2    procedural history, and the issues presented for review.

3            "So long as we are satisfied that we have Article III jurisdiction, we have discretion to decline

4    to resolve difficult jurisdictional questions." *Official Comm. of Unsecured Creditors of WorldCom,*

5    *Inc. v. S.E.C.*, 467 F.3d 73, 81 (2d Cir. 2006). In such a case, we may dispose of a case on the merits

6    while assuming "hypothetical jurisdiction." *See*, e.g., *Conyers v. Rossides*, 558 F.3d 137, 150 (2d

7    Cir. 2009) ("[M]indful that the question is one of statutory rather than constitutional jurisdiction, we

8    assume hypothetical jurisdiction over these claims, and we proceed to address the alternative

9    argument for dismissal offered below, namely, that judgment on the pleadings is appropriate as to

10    Conyers's constitutional claims."); *Guaylupo-Moya v. Gonzales*, 423 F.3d 121, 132 n.10 (2d Cir.

11    2005) ("Because the exhaustion requirement raises a question of statutory, rather than constitutional,

12    jurisdiction, we need not resolve [it] in this case and can dispose of [the petitioner's] argument on

13    its merits."). Because we agree that Wood's claims fall short of the pleading standard required by

14    Fed. R. Civ. P. 9(b), and furthermore, find that the district court did not abuse its discretion in

15    denying Wood leave to amend the Amended Complaint, we decline to reach the question of whether

16    the district court had subject matter jurisdiction under 31 U.S.C. § 3730(e)(4)(A).

17    **I. Pleading Standards**

18            The Supreme Court has recently articulated the standard applicable to the Contractor

19    Defendants' motions to dismiss:

20            To survive a motion to dismiss, a complaint must contain sufficient factual matter,
21            accepted as true, to state a claim to relief that is plausible on its face. A claim has
22            facial plausibility when the plaintiff pleads factual content that allows the court to
23            draw the reasonable inference that the defendant is liable for the misconduct alleged.
24            The plausibility standard is not akin to a probability requirement, but it asks for more
25            than a sheer possibility that a defendant has acted unlawfully. Where a complaint

1  pleads facts that are merely consistent with a defendant's liability, it stops short of
2  the line between possibility and plausibility of entitlement to relief.

4  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations and quotation marks omitted). The

5  "two working principles" underlying this standard are: (1) "the tenet that a court must accept as true

6  all of the allegations contained in a complaint is inapplicable to legal conclusions"; and (2) "only a

7  complaint that states a plausible claim for relief survives a motion to dismiss," and "where the

8  well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

9  complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1949-

10  50 (quoting Fed. R. Civ. P. 8(a)(2)).

11  Because "[i]t is self-evident that the FCA is an anti-fraud statute" and therefore "claims

12  brought under the FCA fall within the express scope of Rule 9(b)," *Gold v. Morrison-Knudsen Co.*,

13  68 F.3d 1475, 1476-77 (2d Cir. 1995), Wood's Amended Complaint must also meet the heightened

14  pleading standard of Fed R. Civ. P. 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a

15  party must state with particularity the circumstances constituting fraud or mistake." To satisfy the

16  pleading requirements of Rule 9(b), a complaint must "(1) specify the statements that the plaintiff

17  contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

18  made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25

19  F.3d 1124, 1128 (2d Cir. 1994). As we have explained:

20  The purpose of Rule 9(b) is threefold – it is designed to provide a defendant with fair
21  notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident
22  charges of wrongdoing, and to protect a defendant against the institution of a strike
23  suit. Thus, although Rule 9(b) permits knowledge to be averred generally, we have
24  repeatedly required plaintiffs to plead the factual basis which gives rise to a strong
25  inference of fraudulent intent. Essentially, while Rule 9(b) permits scienter to be
26  demonstrated by inference, this must not be mistaken for license to base claims of
27  fraud on speculation and conclusory allegations. An ample factual basis must be
28  supplied to support the charges.

1    *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal citations

2    omitted). "One of the [further] purposes of Rule 9(b) is to discourage the filing of complaints as a

3    pretext for discovery of unknown wrongs. [A relator's] contention, that discovery will unearth

4    information tending to prove his contention of fraud, is precisely what Rule 9(b) attempts to

5    discourage." *Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989) (internal citation and

6    quotation marks omitted).[1]

7           Wood asserts that the Contractor Defendants presented false claims to the United States, and

8    used false records or statements that were material to such claims, as well as financial obligations

9    owed by the Contractor Defendants to the United States, in violation of 31 U.S.C. § 3729. Amended

10   Complaint, ¶¶ 62-70. We have summarized the pertinent provisions of the FCA as follows:

11          Under the FCA, the United States, or private citizens acting on its behalf, may sue
12          to recover monies paid to a person who, among other things: "(1) knowingly
13          presents, or causes to be presented, to an officer or employee of the United States
14          Government or a member of the Armed Forces of the United States a false or
15          fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to
16          be made or used, a false record or statement to get a false or fraudulent claim paid or
17          approved by the Government; . . . or (7) knowingly makes, uses, or causes to be made
18          or used, a false record or statement to conceal, avoid, or decrease an obligation to pay
19          or transmit money or property to the Government." 31 U.S.C. § 3729.
20
21   *United States ex rel. Lissack v. Sakura Global Capital Markets, Inc.*, 377 F.3d 145, 152 (2d Cir.

---

[1] Wood seeks a relaxed pleading standard. She points out that "[d]espite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge," *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (1990), and then urges that this "is a main factor here and should be dispositive of the issue of particularity." Plaintiff's Br. 43. But *Wexner* also makes clear that "[t]his exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Id.* In any event, Wood does not assert any facts that are "peculiarly within the knowledge" of the Contractor Defendants other than those in the NCSTAR I report, which Wood concedes can be accessed online. Plaintiff's Br. 39 n.12.

1    2004) (ellipsis in original).[2]

2          At the outset, as the district court correctly observed, the Amended Complaint makes no

3    mention of any financial obligation that the Contractor Defendants owed to the government, and

4    moreover, does not specifically reference any false records or statements used to decrease such an

5    obligation. Thus, Wood's "reverse false claims" action, which is premised on "FCA liability for false

6    statements designed to conceal, reduce, or avoid an obligation to pay money or property to the

7    Government," *id.*, was appropriately dismissed under Fed. R. Civ. P. 9(b).

8          As for Wood's other claims, i.e., that the Contractor Defendants supplied false claims for

9    payment from the United States, as well as false statements and records material to such claims, the

10   Amended Complaint fails "to specify the time, place, speaker, and . . . even the content of the alleged

11   misrepresentations." *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986). In short, it "lacks the

12   'particulars' required by Rule 9(b)." *Id.*

13         Wood generally avers as follows:

14         These claims are based upon defendants' false claims and false statements
15    made in and pursuant to certain reports, meetings, decision-making procedures,
16    documentation and analysis of various types . . . for which defendants received
17    significant monetary compensation, all the while having . . . knowledge . . . that all
18    such documentation was either false, fraudulent, a sham and/or designed to obfuscate
19    the true and correct state of affairs . . . [T]he National Institute of Standards and
20    Technology [was] mislead by the defendants' fraudulent acts and/or omissions . . .
21         . . . Instead [of providing consulting and other services that would have
22    enabled NIST to carry out its statutory mandate,] defendants knowingly concealed,
23    or failed to disclose, or caused others to fail to disclose material information in
24    several reports filed in the public domain along with NCSTAR 1 . . . all of which

---

[2]In 2009, after Wood's complaint was filed, the various causes of action in 31 U.S.C. § 3729 were reorganized and restated. *See* Fraud Enforcement and Recovery Act, Pub. L. No. 111-21, 123 Stat. 1621 (2009). While some of these changes are retroactive, they do not change the analysis herein. For ease of presentation, we reference the previous version of 31 U.S.C. § 3729, on which the parties' briefing is predicated.

1    purported to satisfy, but intentionally did not satisfy, the mandate that NIST had
2    . . . . Instead, all such documentation serves soley to mislead, obfuscate and provide
3    a vehicle for the intended fraud; namely, that of steering NIST away from a
4    consideration of what caused the destruction of WTC 1,2; which, as elsewhere
5    elaborated upon, was the use on 9/11/01 of exotic weaponry known as directed
6    energy weapons.
7    . . . .
8    . . . [D]efendants . . . committed fraud in seeking to have NCSTAR 1 deceive
9    the public into not recognizing that WTC1,2 could not reasonably or possibly have
10   been destroyed in the manner seen absent the use of [directed energy weapons]. Some
11   of the defendants knew as much; other defendants . . . should have known.
12   As a result of defendants' false statements and false or fraudulent reports and
13   other submissions issued or delivered to NIST during the course of NIST's
14   investigation in the years of 2002 to 2005, defendants wrongfully obtained payments
15   from NIST which they knew or should have known they were not entitled to receive,
16   by virtue of the fraud they were then and there committing.
17
18   Amended Complaint, ¶¶ 2, 5, 13-14. This is drawn from the introductory "Nature of the Action"

19   section of the Amended Complaint, and yet this is *the most detailed* section of the Amended

20   Complaint. Indeed, nothing in the rest of the Amended Complaint sets forth with additional

21   particularity the false claims or statements at issue, or "the circumstances constituting fraud." Fed.

22   R. Civ. P. 9(b).

23   Instead, the Amended Complaint goes on to briefly describe each of the Contractor

24   Defendants, either with no specific allegations as to a given defendant's involvement, *see*, e.g.,

25   Amended Complaint, ¶¶ 23, 25, 26-27, or with vague or generalized allegations as to a given

26   defendant's involvement, *see*, e.g., *id.* ¶¶ 24 ("Between ARA and SAIC, some twenty-five (25)

27   persons were assigned to work on, by literally surrounding and, accordingly, controlling and

28   manipulating, NIST officials such that fraud . . . did . . . occur."); *id.* ¶ 29 ("That expertise [of

29   Defendant GeoStats, Inc.] was used to perpetrate fraud in the preparation of NCSTAR 1."); *id.* ¶ 30

30   ("That expertise [of Defendant Gilsanz Murry Steficek, LLP] could have been, but was not, used for

31   purposes of calling attention to the fact that the effects seen and left by the pattern of destruction of

1    WTC 1,2 was caused by [directed energy weapons]. Instead, defendant chose to use its expertise to

2    commit fraud based on either withholding information or manipulating information and by then

3    accepting payment improperly."); *id.* ¶¶ 31-41, 43 (containing nearly identical generalized

4    allegations for other Contractor Defendants). Finally, the Amended Complaint conclusorily recites

5    the elements of a cause of action under the FCA, *see* Amended Complaint, ¶¶ 62-70, and resorts to

6    further collective generalizations about the Contractor Defendants, *see,* e.g., ¶ 52 ("That modification

7    [of the scope of NIST's objective] was at the behest and with the urging, backing and/or combined

8    manipulative power of the defendants, acting singularly, collectively . . . and otherwise."); *id.* ¶ 56

9    ("The various cost reports, requisitions, billing statements and/or requests for reimbursement

10   submitted by the defendant NIST participants from and after 2002, through, at least, September,

11   2005, and, in many instances, continuing to the present, all contained false claims for reimbursement

12   and made false statements to NIST concerning work performed by them and/or consulting services

13   rendered to NIST *because the true nature and intent was to mislead NIST and to cause a false causal*

14   *statement concerning what caused the destruction of the WTC complex to occur.*" (emphasis added));

15   *id.* ¶¶ 59-60 (similar allegations).

16          These allegations are plainly insufficient under Rule 9(b). As the district court observed: the

17   Amended Complaint "do[es] not cite to a single identifiable record or billing submission they claim

18   to be false, or give a single example of when a purportedly false claim was presented for payment

19   by a particular defendant at a specific time." *Wood,* 2008 WL 2566728, at *5. Although scienter may

20   be demonstrated by inference under Rule 9(b), that is not a "license to base claims of fraud on

21   speculation and conclusory allegations." *O'Brien,* 936 F.2d at 676. While Wood may genuinely

22   believe that the analysis and information provided by the Contractor Defendants is incorrect, that

1    assertion – even accompanied by supporting evidence for Wood's own theory – does not warrant an

2    inference that the services provided by the Contractor Defendants, and claims for payment submitted

3    therewith, were fraudulent. We agree with the district court that the proposition that "NIST

4    ultimately failed to conclude, consistent with [Wood's] hypothesis, that the Twin Towers was

5    destroyed by the military's directed energy weapons," *Wood*, 2008 WL 2566728, at *4, falls short

6    of the "ample factual basis [needed] to support [Wood's] charges." *O'Brien*, 936 F.2d at 676.

7    Accordingly, we find that the district court appropriately dismissed Wood's Amended Complaint

8    for failure to comply with Fed. R. Civ. P. 9(b).

9    **II. Leave to Amend**

10    Wood seeks leave to amend the Amended Complaint to cure her failure to conform with Rule

11    9(b). "Although the decision of whether to allow plaintiffs to amend their complaint is left to the

12    sound discretion of the district court, there must be good reason to deny the motion. One good reason

13    to deny leave to amend is when such leave would be futile." *Acito v. IMCERA Group, Inc.*, 47 F.3d

14    47, 55 (2d Cir. 1995); *see also Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566,

15    App. A, 584 (2d Cir. 2005) ("Leave to amend may be denied following a Rule 9(b) dismissal if an

16    amendment would be futile."). The district court dismissed Wood's Amended Complaint with

17    prejudice, but did not address the request for leave to amend in Wood's briefing below. *See* J.A. 672.

18    Nonetheless, "[i]t is within the court's discretion to deny leave to amend implicitly by not addressing

19    the request when leave is requested informally in a brief filed in opposition to a motion to dismiss."

20    *In re Tamoxifen Citrate Antitrust Litigation*, 466 F.3d 187, 220 (2d Cir. 2006).

21    Our review of the record, as well as Wood's argument to this Court as to why leave to amend

22    should be granted, convince us that the district court acted within its discretion. Wood vaguely

1    asserts that she should be allowed to amend the Amended Complaint as follows:

2        Certainly, [Wood's] affidavits and other materials show that if a complaint were
3        intended to be highly detailed, rather than, ultimately, a form of "notice" then she
4        could have done that; namely, she could have provided a much more highly detailed
5        complaint all as is confirmed by her prior Affidavits and their attachments . . . .
6

7    Plaintiff's Br. 38. Again, in explaining the assertion that Wood "merits leave to further amend her

8    complaint to provide . . . available particularity," Wood does not explain what this particularity

9    might consist of, and merely argues that the Amended Complaint "tells us that the [Contractor

10   Defendants] purposely turned a blind eye towards the fraud of not explaining what caused the

11   destruction of the WTC, while purportedly doing just that." *Id.* 40-41. This is an inadequate basis

12   to disturb the district court's discretionary decision to deny Wood leave to amend. *See Brandt v.*

13   *Davis*, 191 F.3d 887, 893 (8th Cir. 1999) ("In Brandt's motion to amend before the district court, and

14   in his argument on appeal, he neglected to explain how he would amend the complaint to save the

15   claim. We therefore find no abuse of discretion in the district court's denial of his motion to amend."

16   (internal citation omitted)); *Doe v. Howe Military School*, 227 F.3d 981, 989 (7th Cir. 2000) (finding

17   that "the district court did not abuse its discretion in denying the Does' motions to amend the

18   pleadings" where their "motions did not state what specifically the Does planned to allege in their

19   amended pleadings"). Finally, Wood's suggested amendments in her reply brief come too late, *see,*

20   *e.g., EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 625 n.1 (2d Cir. 2007)

21   ("Although EDP did belatedly contend in its reply brief that the district court erred in its finding on

22   these elements, its failure to press those arguments in its opening brief waives them."), and, in any

23   event, are merely assertions in support of Wood's theory that directed energy weapons brought down

24   the Twin Towers, *see* Plaintiff's Reply Br. 30-32 – not specifics relating to fraudulent claims or

25   statements made by the Contractor Defendants, which are required to comply with Rule 9(b).

10

1    Accordingly, we find that the district court did not abuse its discretion in dismissing Wood's

2   Amended Complaint with prejudice.

3
4   **III. Sanctions**

5    Without formally appealing the district court's decision to the contrary, *see* S.A. 1248 n.15,

6   Contractor Defendants Simpson, Gumpertz & Hager, Inc. ("SGH") and Computer Aided

7   Engineering Associates, Inc. ("CAEA"), ask this Court to award them attorney's fees pursuant to 31

8   U.S.C. § 3730(d)(4). We review a district court's decision to grant attorney's fees under this

9   provision for abuse of discretion. *Mikes v. Straus*, 274 F.3d 687, 704 (2d Cir. 2001). Bearing "in

10   mind that an award of attorneys' fees is well suited to the daily operations of the district court

11   because such a decision may ultimately combine extensive factfinding ability with a large degree of

12   discretion," *id.*, and the failure of SGH and CAEA to mount a cross-appeal, we decline to disturb

13   the district court's exercise of discretion to warn, rather than sanction, Wood and her counsel.

14   **IV. Conclusion**

15    We have considered all of Wood's arguments bearing on the adequacy of the pleadings in

16   the Amended Complaint and Wood's request for leave to amend. We find them to be without merit,

17   and as such, the district court's dismissal of Wood's claim with prejudice pursuant to Fed. R. Civ.

18   P. 9(b) is AFFIRMED. Wood's motion to strike one of the two briefs filed by the Contractor

19   Defendants is DISMISSED as moot.

20
21
22                              FOR THE COURT:
23                              Catherine O'Hagan Wolfe, Clerk
24
25                              By:
26
27
                                         A TRUE COPY
                                Catherine O'Hagan Wolfe, Clerk
                                by
                                         DEPUTY CLERK